1

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)

2
*ron@consumersadvocates.com*
SKYE RESENDES (SBN 278511)

3
*skye@consumersadvocates.com*
ALEXIS WOOD (SBN 270200)

4
*alexis@consumersadvocates.com*
651 Arroyo Drive

5
San Diego, California 92103
Telephone:(619) 696-9006

6
Facsimile: (619) 564-6665

7
**LAW OFFICES OF DOUGLAS J. CAMPION, APC**
DOUGLAS J. CAMPION (SBN 75381)

8
*doug@djcampion.com*
409 Camino Del Rio South, Suite 303

9
San Diego, CA 92108
Telephone: (619) 299-2091

10
Facsimile: (619) 858-0034

11
***Attorneys for Plaintiff and the Proposed Class***

12

13

**UNITED STATES DISTRICT COURT**

14
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

15

16
SHYRIAA HENDERSON, on behalf of herself, all others similarly situated, and the general public,

Case No. 13-cv-1845-L (BLM)

17

18
**CLASS ACTION**

19
            Plaintiff,

20
    v.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION**

21

22
UNITED STATES AID FUNDS, INC. D/B/A USA FUNDS,

Honorable M. James Lorenz

23

24
            Defendant.

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................2

III.  ARGUMENT .......................................................................................8

    A.    The Proposed Class .................................................................8

    B. Telephone Consumer Protection Act ...........................................8

    C. The Standard for Certification .................................................10

      1. The Proposed Class of Persons Autodialed by or Received a Prerecorded Message Is Adequately Defined and Clearly Ascertainable ...................11

      2. Numerosity ........................................................................13

      3. Commonality ......................................................................14

        a. Injury Is a Common Question to the Class ...........................15

        b. Consent Is a Common Question to the Class..........................16

      4. Typicality ..........................................................................17

      5. Adequacy of Representation .................................................18

    D.    Hybrid Certification Under Rule 23(b)(2) and (b)(3) Should be Granted 19

      1. Rule 23(b)(2) .....................................................................19

      2. Rule 23(b)(3) .....................................................................20

        a. Common Issues Predominate.............................................20

        b. Plaintiff Will Show USA Funds' Liability by Common Evidence ......23

        c. The Prerequisite of Superiority is Satisfied .........................23

IV.   CONCLUSION...................................................................................25

i

# TABLE OF AUTHORITIES

**Cases**

*Ables v. JBC Legal Grp., P.C.*, 227 F.R.D. 541 (N.D. Cal. 2005) ....................................21

*Adams v. AllianceOne, Inc.*, No. 08-CV-248-JAH(WVG), 2011 WL 2066617 (S.D. Cal. May 25, 2011)...........................................................................................................9

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)....................................................20

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) .........................................................17

*Balasanyan v. Nordstrom, Inc.,* Nos. 3:11-cv-2609-JM(WMC), 3:10-CV-2671-JC(WMC), 2013 WL 4517821 (S.D. Cal. Aug. 12, 2013)....................................12

*Bellows v. NCO Fin. Sys.*, No. 3:07-cv-01413-W-AJB, 2008 4155361 (S.D. Cal. Sept. 5, 2008) ........................................................................................................................24

*Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D Ill. Dec. 31, 2012).7

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ....................................................18, 22

*Bridgeview Health Care Ctr., Ltd v. Clark*, No. 09 C 5601, 2013 WL 1154206 (N.D. Ill. Mar. 19, 2013) ................................................................................................................9

*Califano v. Yamaki*, 442 U.S. 682 (1979) ......................................................................10

*Californians for Disability Rights, Inc. v. Cal. DOT*, 249 F.R.D. 334 (N.D. Cal. 2008).18

*CE Design Ltd. V, Cy's Crabhouse N., Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009) ...............21

*Connelly v. Hilton Grand Vacations Co.*, No. 12CV599JLS(KSC), 2012 WL 2129364 (S.D. Cal. June 11, 2012)..................................................................................................9

*Eisen v Carlisle & Jacquelin*, 417 U.S. 156 (1974) ......................................................10

*Elliott v. ITT Corp.*, 150 F.R.D. 569 (N.D. Ill 1992)......................................................11

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ................................11, 14

*Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011)............................21

*Franklin v. City of Chicago*, 102 F.R.D. 944 (N.D. Ill. 1984) ........................................15

*Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330 (9th Cir. 1977)................13

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ...........................................11, 14, 17

*Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed.Appx. 598 (9th Cir. Sept. 2, 2011) ...........9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1988) ...................................14, 18, 20

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) .............................10, 17, 18

*Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) ...................17

*Hinman v. M&M Rental Center, Inc.*, 596 F. Supp. 2d 115 (N.D. Ill. 2009)..................21

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1988)................................13

*In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150 (N.D. Cal. 1991) ..............................10

*In re Ferrero Litig.*, 278 F.R.D. 552 (S.D. Cal. 2011) ................................................18, 20

*In re HiEnergy Techs., Inc. Sec. Litig.*, No. 8:04CV01226 DOCJTLX, 2006 WL 2780058 (C.D. Cal. Sept. 25, 2006) ....................................................................13

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012) ....7, 9

*Karen S. Little, L.L.C. v. Drury Inns, Inc.*, 306 S.W.3d 577 (Mo. Ct. App. 2010) ..........11

*Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wa. 2007) ....................................21

*Knutson v. Schwan's Home Service, Inc.*, No. 3:12-cv-0964, 2013 WL 4774763 (S.D. Cal. Sept. 5, 2013) ....................................................................13, 15, 18, 23, 25

*Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d. 1165 (N.D. Cal. 2010) .................................7

*Kristensen v. Credit Payment Servs.*, 2:12-CV-00528-APG, 2014 WL 1256035 (D. Nev. Mar. 26, 2014) .........................................................................................11

*LaDuke v. Nelson*, 762 F.2d 1318 (9th Cir. 1985).........................................................14

*Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72 (3rd 2011)...................24

*Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013).......................9, 11, 23

*Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674 (S.D. Fla. 2013) .22, 24

*McKenzie v. Fed. Express Corp.*, 275 F.R.D. 290 (C.D. Cal. 2011)................................10

*Mendoza v. Home Depot, U.S.A., Inc.*, No. CV 09-05843 SJO (JCx), 2010 WL 424679 (C.D. Cal. Jan. 21, 2010) ..................................................................................14

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012)....................20

*Mey v. Monitronics Int'l, Inc.*, 959 F. Supp. 2d 927 (N.D. W.Va. 2013)..........................7

iii

*Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036 (9th Cir. 2012)....11, 17, 20

*Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740 (2012) ...............................16, 21

*Montanez v. Gerber Childrenswear, LLC*, No. CV 09-7420 DSF (DTBx), 2011 WL
    6757875 (C.D. Cal. Dec. 15, 2011) .........................................................22

*Montgomergy v. Rumsfield*, 572 F.2d 250 (9th Cir. 1978) ...............................10

*Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482 (C.D. Cal. 2006)..................13

*Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689 (S.D. Fla. 2010).....................23

*Onley v. Job.com*, No. 1:12-CV-01724-LJO-SKO, 2013 WL 5476813 (E.D. Cal Sept.
    30, 2013) ...........................................................................................14

*Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08 C 5959, 2010 WL
    4931001 (N.D. Ill. Nov. 29, 2010) ...........................................................21

*Richmond v. Dart Indus., Inc*., 29 Cal. 3d 462 (1981)....................................11

*Rowe v. Education Credit Mgmt. Corp.*, 559 F.3d. 1028 (9th Cir. 2009) ....................3

*Santillan v. Ashcroft*, No. C 04-2686 MHP, 2004 WL 2297990 (N.D. Cal. Oct. 12,
    2004) ...............................................................................................12

*Savanna Grp., Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 WL 4734004 (N.D. Ill. Sept. 3,
    2013) ................................................................................................7

*Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319 (2004) .......................11

*Schwartz v. Upper Deck Co*., 183 F.R.D. 672 (S.D. Cal. 1999).......................11

*Shaw v. BAC Home Loans Servicing, LP*, No. 10cv2041 BTM(NLS), 2011 WL 6934434
    (S.D. Cal. Dec. 29, 2011) .....................................................................12

*Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389 (N.D. Ohio 2012) ..................16, 22

*Smith v. Microsoft Corp.*, No. 11-cv-1958 JLS (BGS), 2012 WL 297512 (S.D. Cal. July
    20, 2012) ...........................................................................................16

*Spencer v. Beavex, Inc*., No. 05-CV-1501 WQH (WMc), 2006 WL 6500597 (S.D. Cal.
    Dec. 15, 2006).....................................................................................13

*Staton v. Boeing Co*., 327 F.3d 938 (9th Cir. 2003) .................................13, 18

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 486 (C.D. Cal. 2012) .................24

iv

*Thompson v. Clear Channel Commc'ns., Inc.*, 247 F.R.D. 98 (C.D. Cal. 2007) ..............10

*Tourgeman v. Collins Fin. Servs.*, No. 08-CV-1392 JLS (NLS), 2011 WL 5025152 (S.D. Cal. Oct. 21, 2011) ......................................................................................................18

*United Steel v. ConocoPhillips Co.*, 593 F.3d 802 (9th Cir. 2010) .............................21

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)..........................21, 23

*Vietnam Veterans of Am. v. CIA*, 288 F.R.D. 192 (N.D. Cal. 2012) ...........................19

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...............................10, 15, 17, 20

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998)........................................................19

*Weeks v. Bareco Oil Co.*, 125 F.2d 84 (7th Cir. 1941) ................................................25

*Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223 (C.D. Cal. 2003) ..........24

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ...................24

*Wolph v. Acer Am. Corp.*, 272 F.R.D. 477 (N.D. Cal. 2011) .......................................12

*Yoshioka v. Charles Schwab Corp.*, No. C-11-1625 EMC, 2011 WL 6748984 (N.D. Cal. Dec. 22, 2011).............................................................................................................19

**Statutes**

47 U.C.S. § 227(b)(3).....................................................................................................23

47 U.S.C. § 227 ...............................................................................................................1

47 U.S.C. § 227(a)(1)........................................................................................................8

47 U.S.C. § 227(a)(1)(A)...................................................................................................9

47 U.S.C. § 227(b)(1)(A)(iii)................................................................................8, 21, 23

47 U.S.C. § 227(b)(3).....................................................................................................25

47 U.S.C. § 227(b)(3)(A)-(B).......................................................................................9, 10

47 U.S.C. § 227(b)(3)(A)-(C)...........................................................................................16

47 U.S.C. § 227(b)(3)(B).................................................................................................24

**Other Authorities**

C. Wright, et al., Federal Practice & Procedure - Civil § 1754 (2d ed. 1986) ................10

*Dish Network, LLC*, 28 F.C.C. Rcd. 6574 .................................................................6, 7

*Henderson v. United States Aid Funds, Inc.*, No. 13-CV-1845-L (BLM)
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF CLASS CERTIFICATION

*In Re Matter of Rules & Regulations Implementing the Tel. Consumers Prot. Act of 1991*, Declaratory Ruling, CG Docket No. 11-50, FC 13-54 (May 9, 2013) ..........9

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C.R. 12391 (Aug. 7, 1995) .........................................................9

NEWBERG ON CLASS ACTIONS §18.14 (4th ed. 2002) ....................................18

**Rules**

Fed. R. Civ. P. 23(a)...........................................................................................10

Fed. R. Civ. P. 23(a)(1)......................................................................................13

Fed. R. Civ. P. 23(a)(2)......................................................................................14

Fed. R. Civ. P. 23(a)(3)......................................................................................17

Fed. R. Civ. P. 23(a)(4)......................................................................................18

Fed. R. Civ. P. 23(b)(2).........................................................................1, 19, 20

Fed. R. Civ. P. 23(b)(3).........................................................................1, 20, 24

Fed. R. Civ. P. 23(c)(1)(C) ..................................................................................8

**Treatises**

5 James Wm. Moore, et al., Moore's Federal Practice ¶ 23.23[5][f] (3d ed. 1999).........14

5 James Wm. Moore, Moore's Federal Practice § 23.21[1], p. 23-57 (2001)..................12

H. Newberg, Newberg on Class Actions § 1115(b) (1st Ed. 1977) ................17

## I.    __INTRODUCTION__

Plaintiff Shyriaa Henderson ("Plaintiff" or "Henderson"), by and through her undersigned counsel, hereby respectfully moves this Court for an Order certifying this case as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3).[1]

This action easily satisfies Rule 23's requisite to class certification.  Through a common course of conduct, Defendant United States Aid Funds, Inc. d/b/a USA Funds ("Defendant" or "USA Funds"), a "guaranty agency" of federal student loans engaged the services of Sallie Mae, Inc., now known as Navient Solutions, Inc. ("Navient"), to service and collect defaulted student loans.  On behalf of USA Funds, either Navient itself or other third-party collection agencies (USA Funds' agents), obtained the telephone numbers of potentially thousands of individuals nationwide, without authorization, and thereafter used an automatic telephone dialing system and/or prerecorded voice message to repeatedly call each of those individuals on their cellular phones.  Through that conduct, Defendant not only harassed each member of the putative class, but repeatedly violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA"), thereby entitling those individuals to an identical calculation of statutory damages and uniform injunctive relief. *See generally* Complaint, (Dkt. No. 1) (citations to the Complaint are designated "¶ _").

USA Funds, through its agents, made all of the calls in the same manner and without the prior express consent of Plaintiff or the other members of the putative Class. Likewise, the injuries suffered by Plaintiff and the putative Class as a result of Defendant's conduct are identical, entitling each Class member to an equal amount of statutory damages.

The proposed class meets each of the requisites to certification under Federal Rules 23(b)(2) and (b)(3).  Plaintiff respectfully requests that the Court (1) certify the class; (2) name Plaintiff Henderson Class Representative; (3) appoint the Law Offices of Ronald A.

---

[1] Should the Court be inclined to deny Plaintiff's motion, for lack of discovery on third-parties, Plaintiff requests that the Court continue the instant motion until after completion of discovery on class wide issues, at which time Plaintiff will submit a fulsome memorandum of points and authorities in support of class certification.

*Henderson v. United States Aid Funds, Inc.,* No. 13-CV-1845-L (BLM)
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CLASS CERTIFICATION

Marron and the Law Office of Douglas J. Campion, APC as Class Counsel, (4) set a briefing schedule regarding the content and manner of class notice, and (5) provide all other relief that the Court deems reasonable and just.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff And The Class Received Phone Calls To Their Cellular Phones

On August 8, 2013, Plaintiff filed a class action complaint alleging that Defendant USA Funds violated the TCPA, thereby invading Plaintiff's privacy. *See* Dkt. No. 1. Beginning approximately 2009 and continuing through June 2013, Plaintiff received a number of unsolicited phone calls to cellular telephone attempting to collect payments on Plaintiff's federal student loans. *See* Dkt. No. 1, ¶ 11.  Plaintiff can prove that she did not provide prior express consent to be contacted on her cellular telephone by Defendant, or its agents, because Plaintiff did not have the same cell phone number at the time when she applied for the underlying student loans. *See* Dkt. No. 1, ¶ 12.  Plaintiff is informed and believes that Defendant, or its agents, obtained her cell phone number through "skip tracing" or "number trapping." *See* Dkt. No. 1, ¶ 13.

The Complaint alleges the phone calls received by Plaintiff were placed to Plaintiff's cellular telephone "via an 'automatic telephone dialing system,' ("ATDS") as defined by 47 U.S.C. § 227 (a)(1) and by using 'an artificial or prerecorded voice' system as prohibited by 47 U.S.C. § 227 (b)(1)(A), which had the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place telephone calls to Plaintiff's cellular telephone." *See* Dkt. No. 1, ¶¶ 14, 33, 38.  Because Plaintiff never expressly authorized, consented, or requested to receive the phone calls from Defendant or Defendant's agents, Plaintiff has brought this class action on behalf of herself and all others similarly situated who received phone calls from Defendant, or Defendant's agents, to their wireless telephone without consent.  *See* Dkt. No. 1, ¶¶ 20-31.

Discovery in this action commenced on January 27, 2014, when Plaintiff served Defendant with her First Set of Requests for Production of Documents and First Set of Interrogatories. *See* Marron Decl., ¶ 3. Defendant identified several third-party entities

*Henderson v. United States Aid Funds, Inc.,* No. 13-CV-1845-L (BLM)
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CLASS CERTIFICATION

"who may have handled Plaintiff's loans, including Pioneer Credit Recovery, GC Services, General Revenue Corporation, National Enterprise Systems, and NCO Group." *Id.* at ¶ 4, **Ex. 1.** After Plaintiff received Defendant's discovery responses, the parties began engaging in meet and confer discussions. USA Funds asserted that it did not make collection calls, but clarified its relationship with several third-party entities, with counsel for USA Funds stating that USA Funds purchased the claims to Plaintiff's loans on September 24, 2010 and October 22, 2010 and that the "servicer" for Plaintiff's loans is a different entity, Navient. *Id.* at ¶ 5, **Ex. 2**. On June 11, 2014, Plaintiff sent a subpoena to Navient seeking documents relating to collection calls on her student loan accounts. *See* Marron Decl., ¶ 6. Call logs received from Navient reveal that Navient, or its vendors, requested information from skip trace providers, thus evidencing that Plaintiff was called without prior express consent. *Id.*

**B.    USA Funds Hired Navient to "Service" Plaintiff's Loans and Navient in Turn Hired Third-Party Vendors to Place Collection Calls**

There are two student loans at issue in this case. Both are federal loans issued under the Federal Family Education Loan Program (FFELP). Plaintiff Henderson took out the first student loan in January of 1993. *See* Marron Decl., ¶ 7, **Ex. 3**. The second student loan was taken out in April of 2007. *Id.,* **Ex. 4**. Signet Bank was the lender of for the 1993 student loan (*id.* ¶ 8, **Ex. 3**) and Sallie Mae was the lender for the 2007 student loan (*id.*, **Ex. 4**). USA Funds is the "guaranty agency" for both of these loans. *Id.*at ¶ 9, **Ex. 5**.

Federal student loans under the FFELP are considered low risk for participating lenders because they are insured against default by the federal government.[2] To administer

---

[2] *See Rowe v. Education Credit Mgmt. Corp.*, 559 F.3d. 1028, 1030 (9th Cir. 2009) (providing background information on guaranty agencies and explaining that "[o]ne of the functions assigned to lenders and guaranty agencies under the FFELP regulations is collection on defaulted student loans. When a borrower defaults on a loan, the lender is required to engage in a series of 'due diligence' activities to try to get the borrower to repay the loan. 34 C.F.R. § 682.411. If the lender is unable to collect the debt despite complying with its due diligence requirements, the lender files a claim with the guaranty agency. *Id.* § 682.412(e)(2). The guaranty agency acts as a guarantor, paying the lender

*Henderson v. United States Aid Funds, Inc.,* No. 13-CV-1845-L (BLM)
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION

this insurance program, the federal government relies on "guaranty agencies." These agencies are either not-for-profit companies or agencies set up by a state. They receive federal subsidies to insure federal student loan lenders from the risk of default. Significantly, "when a federal borrower fails to repay his or her federal student loan for over 270 days, private lenders can file an insurance claim with a guaranty agency to recover 97 percent of the outstanding balance." Then, "the U.S. Department of Education ["DOE"] reimburses the guaranty agency for a percentage of the claim made through a process called reinsurance."[3]

The initial role of the guaranty agency is to implement "default aversion assistance to borrowers who fall 60 to 120 days behind on payments."[4] USA Funds apparently performed this role through its Borrower Connect In Touch program that "provides default prevention counseling to students." *See* Marron Decl., ¶ 10, **Ex. 2**. If, however, the student does go into default, then the lender can make a claim with the guaranty agency to recover 97% of the loss. This is exactly what happened in this case. Sallie Mae made a claim for the defaulted 2007 loan on September 1, 2010 (*id.* at ¶ 11, **Ex. 6**) and an apparent successor of Signet Bank made a claim for the defaulted 1993 loan in 2002. (*Id.*, **Ex. 7**).

Once a claim is made, the guaranty agency can purchase the rights to collect on the defaulted loan. This is also what happened here. USA Funds purchased "the claims from the loan holders on September 24, 2010 and October 22, 2010." *See* Marron Decl., ¶ 12, **Ex. 5**. When a guaranty agency purchases a defaulted loan, it has an incentive to collect on the outstanding balance. Because the federal government pays the guaranty agency most of the cost of the insurance claims submitted by the lenders, monies collected by the

---

the unpaid balance of the defaulted loan. The guaranty agency is then assigned the loan by the lender. *Id.* § 682.410(b)(5)(vi)(A). In turn, guaranty agencies have various agreements with the DOE.").

[3] Benjamin Miller, *Rethinking the Middleman: Federal Student Loan Guaranty Agencies*, NEW AMERICA FOUNDATION (July 2009), *available at* http://www.newamerica.net/files/nafmigration/Rethinking_the_Middleman_24pp_PDF.pdf.

[4] *Id.*

*Henderson v. United States Aid Funds, Inc.*, No. 13-CV-1845-L (BLM)
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION

guaranty agency go back the federal government.  However, the guaranty agency is able to retain "16 percent of any amounts they collect."[5] Therefore, USA Funds had an incentive to collect on Plaintiff's and the Class' defaulted student loan debt so that it could collect a commission from the DOE.

This year, Sallie Mae split into two entities: Sallie Mae and Navient. Through this split, Navient is now the new entity that services federal student loans on behalf of USA Funds. *See* Marron Decl., ¶ 13, **Ex. 2**.  Back in 2000, Sallie Mae purchased USA Group, which was the former parent company of USA Funds.[6] USA Funds and Sallie Mae/Navient now claim to be unrelated entities. However, some have criticized their relationship because it allows Sallie Mae and Navient to make substantial profits off of defaulted federal student loans.[7] These allegations are especially plausible because Sallie Mae and Navient also own several debt collection companies. In fact, at least 2 third-party debt collection companies that Defendant says "may have handled Plaintiff's loans" are believed to be subsidiaries of Sallie Mae and/or Navient. *Id.* at ¶14, **Ex. 1**.

**C.    USA Funds is Vicariously Liable for Collection Calls**

USA Funds' primary defense at this point has been that it cannot be held liable for the calls because USA Funds itself does not make collection calls. That argument fails.

---

[5] *Id.*

[6]  *See Company News; Sallie Mae Agrees to Buy USA Group for $770 Million*, NEW YORK TIMES (Jun. 16, 2000), *available at* http://www.nytimes.com/2000/06/16/business/company-news-sallie-mae-agrees-to-buy-usa-group-for-770-million.html.

[7] *See* Peter J. Reilly, *Does Sallie Mae Want Students to Default?*, FORBES (June 6, 2012), *available at* http://www.forbes.com/sites/peterjreilly/2012/06/06/does-sallie-mae-want-students-to-default/; *see also* Stephen Burd*, Friends in High Places Deliver Big for Sallie Mae Behind the Scenes*, HIGHER ED WATCH (May 9, 2007) *available at* http://higheredwatch.newamerica.net/blogs/2007/05/friends_in_high_places ("As Elizabeth Warren, a professor of bankruptcy law at Harvard Law School told 60 Minutes… 'Sallie Mae makes money if you pay back on time. And Sallie Mae makes money if you don't pay back on time.'").

*Henderson v. United States Aid Funds, Inc.*, No. 13-CV-1845-L (BLM)
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CLASS CERTIFICATION

Because USA Funds purchased the claims from the original loan holders on September 24, 2010 and October 22, 2010, USA Funds stepped into the role as Plaintiff's creditor at that time. In fact, USA Funds has acted as creditor in several bankruptcy proceedings involving the discharge of student loan debt. *See* Marron Decl., ¶ 15, **Ex. 8**. USA Funds, acting as the guarantor/creditor, then hired Sallie Mae to service and collect on Plaintiff's defaulted student loans. *Id.* at ¶ 16, **Ex. 1**. Accordingly, account notes produced by Navient list "United Student Aid Funds" as the client. *Id.* at ¶ 17, **Ex. 9**. Moreover, it makes sense for USA Funds to retain debt collection agencies because it receives commissions from the government for "rehabilitating" defaulted student loans. Sallie Mae would no longer be the underlying creditor because the loans went into default and it made an insurance claim to be reimbursed by USA Funds acting as the guaranty agency. *Id.* at ¶ 18, **Ex. 10**. Instead, Sallie Mae/Navient is simply acting as a debt collector and loan servicer. USA Funds, as the actual owner of Plaintiff's and the Class' loans, is however vicariously liable for the phone calls.

On May 9, 2013, the FCC issued a Declaratory Ruling as to the scope of "on behalf of" liability under the TCPA, wherein the FCC stated that "while a seller does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TPCA, it nonetheless may be held vicariously liable under federal common law principles of agency for violation of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *See In re Dish Network, LLC*, 28 F.C.C. Rcd. 6574 (the "FCC Declaratory Ruling"), ¶ 1; *see also* Marron Decl., ¶ 19, **Ex. 11** (FCC Letter dated July 17, 2014 and filed in *Palm Beach Gold Center-Boca, Inc. v. Sarris*, Case No. 13-14013, holding vicarious liability applies in TCPA actions and permits the plaintiff to recover damages from a principal for acts of its agent for violating the TCPA).    Thus, entities, such as USA Funds, can be held vicariously liable for the unlawful calls made by third parties (in this case Navient and collection agencies hired by Navient), for its benefit, if the third party had actual or apparent authority to make the unsolicited calls, or if the principal ratified the third parties' conduct. *See In re Dish Network, LLC*, 28 F.C.C. Rcd.

at 6588; *Savanna Grp., Inc. v. Trynex, Inc.*, 2013 WL 4734004, at *5 (N.D. Ill. Sept. 3, 2013); *see also Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d. 1165, 1170 (N.D. Cal. 2010); *Mey v. Monitronics Int'l, Inc.*, 959 F. Supp. 2d 927, 932-33 (N.D. W.Va. 2013).

Furthermore, liability under both an apparent authority and ratification theory will attach. Specifically, apparent authority exists as the calls received by Plaintiff and the Class explicitly stated that the calls were made "on behalf of USA Funds," leading the call recipient to reasonably believe that the caller was acting on USA Funds' behalf. *See Savanna Grp., Inc.*, 2013 WL 4734004, at *5 ("[a]pparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal.") (quoting *Dish Network, LLC*, 28 F.C.C. Rcd. at 6586).[8] Here, collection agencies, collecting Plaintiff and Class members' debt, would have access to USA Fund's records.

Thus, any argument by USA Funds that it cannot be held liable if it did not physically effectuate the calls is a "non-starter". *See Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748, at *1 (N.D Ill. Dec. 31, 2012). The FCC and Courts around the country have repeatedly held that the TCPA's prohibition against unsolicited calls imposes liability on those who physically "make" the improper calls, as well as those who are otherwise responsible for effectuating them. *See Dish Network,* 2013 WL 1934349, at *9; *see also In re Jiffy Lube Int'l, Inc.*, 847 F. Supp. 2d 1253, 1256-57 (S.D. Cal. 2012) ("case law and a reasonable reading of the statute indicate that [defendant] should not be allowed

---

[8] Relevant here, in determining whether a party acted with apparent authority, courts consider whether the principal (i) provided the caller access to information that it normally wouldn't release to third-parties (e.g., customer information), (ii) allowed the caller to use its trade name, (iii) "approved, wrote or reviewed the outside entity's telemarketing scripts," and (iv) "knew (or reasonably should have known) that the [caller] was violating the TCPA on the seller's behalf and . . . failed to take effective steps within its power to force the telemarketer to cease the conduct." *In re Dish Network, LLC*, 28 F.C.C. Rcd. at 6592-93 (terming these considerations as "illustrative examples"); *see also Savanna Grp.*, 2013 WL 473004. Based on discovery provided to date, each of these questions can be answered in the affirmative.

*Henderson v. United States Aid Funds, Inc.*, No. 13-CV-1845-L (BLM)
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION

to avoid TCPA liability merely because it hired a different firm to" make calls that violated the TCPA).

## III.    ARGUMENT

### A.    The Proposed Class

Plaintiff seeks certification of a nationwide class defined as follows:  All persons within the United States who received an unsolicited telephone call from Defendant or its agents on their paging service, cellular phone service, mobile radio service, radio common carrier service, through the use of an automatic telephone dialing system or artificial or pre-recorded voice from August 8, 2009 until the present.[9]  Dkt. No. 1, ¶ 21.

As demonstrated below, the proposed Class meets each of Rule 23's requisites to certification and therefore, the instant motion should be granted in its entirety.

### B.    Telephone Consumer Protection Act

Congress enacted the TCPA in 1991.  The TCPA combats the threat to privacy being caused by the automated calling practices at issue by declaring that:

> It shall be unlawful for any person within the United States, or any person outside the United States in the recipient is within the United States –
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice …
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).

The TCPA's prohibition at issue requires the calls to be made with an automated telephone dialing system ("ATDS"), which Congress defines as "equipment which as the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers" (47 U.S.C. § 227(a)(1)), or

---

[9] Class certification is a provisional order, Fed. R. Civ. P. 23(c)(1)(C), and Plaintiff respectfully reserves the right to seek to modify the class definition, by motion to the Court, should discovery reveal the need to tailor the scope of the class.

with an artificial or prerecorded voice (*id.* at § 227(a)(1)(A)). "The TCPA violations, if any, occurred when the messages [or calls] were *sent* [or made]…" *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 295 (N.D. Cal. 2013) (emphasis is original).

The Ninth Circuit has defined "express consent" to mean "clearly and unmistakably stated." *Satterfield*, 569 F.3d at 955. Prior express consent is an affirmative defense for which the defendant bears the burden of proof. *See Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed.Appx. 598, 599, n.1. (9th Cir. Sept. 2, 2011) ("express consent is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof"); *see also Connelly v. Hilton Grand Vacations Co.*, 2012 WL 2129364, at *3 (S.D. Cal. June 11, 2012); *Adams v. AllianceOne, Inc.*, , 2011 WL 2066617, at *1-2 (S.D. Cal. May 25, 2011). Further, even if a defendant had proof of consent, there would be uniformity in that consent such that resolving the issue of whether a defendant violated the TCPA by calling people who had not granted the defendant authorization to make those calls is a common question as to an entire class' TCPA claims. *See id.*

The TCPA does not limit liability to the entity that actually makes the calls. *See*, *e.g.*, *Bridgeview Health Care Ctr., Ltd v. Clark*, No. 09 C 5601, 2013 WL 1154206, at *4 (N.D. Ill. Mar. 19, 2013) ("The TCPA creates a form of vicarious liability making an entity liable when a third party sends unsolicited communications on its behalf in violation of the Act.") (citing *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C.R. 12391, 12407 (Aug. 7, 1995)); *see also In re Jiffy Lube Int'l, Inc.*, 847 F. Supp. 2d at 1258; *In Re Matter of Rules & Regulations Implementing the Tel. Consumers Prot. Act of 1991*, Declaratory Ruling, CG Docket No. 11-50, FC 13-54 (May 9, 2013).

The TCPA sets statutory damages in the amount of $500 per negligent violation and $1500 per willful violation, and provides for injunctive relief prohibiting the further transmission of such messages. *See* 47 U.S.C. § 227(b)(3)(A)-(B).

*Henderson v. United States Aid Funds, Inc.*, No. 13-CV-1845-L (BLM)
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CLASS CERTIFICATION

C.  <u>**The Standard for Certification**</u>

Rule 23 governs the certification of class actions and has as its main objectives the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudication. *See Califano v. Yamaki*, 442 U.S. 682, 700-01 (1979); C. Wright, et al., Federal Practice & Procedure - Civil § 1754 (2d ed. 1986). District courts are afforded broad discretion in determining whether an action should be certified. *Montgomergy v. Rumsfield*, 572 F.2d 250, 255 (9th Cir. 1978). Rule 23 outlines a two-step process for determining whether class certification is appropriate. First, Rule 23(a) sets forth four conjunctive prerequisites that must be met for any class: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). These requirements are referred to as numerosity, commonality, typicality, and adequacy. *See Thompson v. Clear Channel Commc'ns., Inc.*, 247 F.R.D. 98, 105 (C.D. Cal. 2007).

Once subdivision (a) is satisfied, the party seeking certification must demonstrate that the action falls into at least one of three categories under Rule 23(b). *See In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 153 (N.D. Cal. 1991). A plaintiff must show compliance with the prerequisites of Rule 23(a) under a rigorous analysis. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 (2011) ("*Dukes*"). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

"[I]t is well established that for purposes of class certification, the moving party does not need to establish a likelihood of prevailing on the merits." *McKenzie v. Fed. Express Corp.*, 275 F.R.D. 290, 297 (C.D. Cal. 2011). "Sometimes the issues are plain

enough from the pleading to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claims…." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). "[I]t remains relatively clear an ultimate adjudication on the merits of plaintiffs' claims is inappropriate, and any inquiry into the merits must be strictly limited to evaluating plaintiffs' allegations to determine whether they satisfy Rule 23." *Lee,* 289 F.R.D. at 294 (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011). "The Court may consider inadmissible evidence to determine class certification. 'On a motion for class certification, the Court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims. Therefore, the Federal Rules of Evidence take on a substantially reduced significance, as compared to a typical evidentiary hearing or trial.'" *Kristensen v. Credit Payment Servs.*, , 2014 WL 1256035, at *6 (D. Nev. Mar. 26, 2014) (citations omitted).

California also "has a public policy which encourages the use of the class action device." *Richmond v. Dart Indus., Inc.*, 29 Cal. 3d 462, 473 (1981); *Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319, 340 (2004) (same). Class actions are essential to enforce laws protecting consumers. Indeed, the Ninth Circuit recently affirmed class certification of a TCPA claim similar to this one in the case of *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036 (9th Cir. 2012). Other courts have recently certified TCPA class actions. *See e.g., Lee,* 289 F.R.D at 295. According to the court in *Karen S. Little, L.L.C. v. Drury Inns, Inc.*, 306 S.W.3d 577, 584 n. 5 (Mo. Ct. App. 2010), approximately fifty courts have certified TCPA class actions as of 2010.

### 1.    The Proposed Class of Persons Autodialed by or Received a Prerecorded Message Is Adequately Defined and Clearly Ascertainable

"Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999) (quoting *Elliott v. ITT Corp.*, 150 F.R.D. 569, 573-74 (N.D. Ill 1992)). "The class definition 'must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member." *Shaw v. BAC Home Loans*

*Servicing, LP*, 2011 WL 6934434, at *2 (S.D. Cal. Dec. 29, 2011) (citing *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011)).[10]  "[T]he identity of class members must be ascertainable by referenced to objective criteria."  5 James Wm. Moore, Moore's Federal Practice § 23.21[1], p. 23-57 (2001).  A class may be certified even though the court cannot identify every potential member at the moment of certification.  *See Santillan v. Ashcroft*, 2004 WL 2297990, at *3 (N.D. Cal. Oct. 12, 2004).

Class membership here may be readily determined by objective criteria, namely, (i) all persons throughout the United States who received, (ii) on their cellular phone, paging service, mobile radio service, or radio common carrier service (iii) an autodialed or prerecorded voice call, (iv) from USA Funds or its agents (v) between August 8, 2009 and the present.  *See Shaw*, 2011 WL 6934434, at *2.  The class may also self-identify by using the foregoing objective criteria.  *See Balasanyan*, 2013 WL 4517821, at *6.

To ascertain class members, Plaintiff will seek the outbound dial lists of Defendant's agents, including Navient and collection agencies hired by Navient, which lists contain the telephone numbers of persons called on behalf of Defendant on their telephone (including cell phones) by means of an autodialer and/or prerecorded voice.  Plaintiff's technology consultant will scrub the list for calls made to cellular telephones only, thus determining only the calls to persons within the class.  These calls will be cross-referenced with name and address information from Defendant' agents records, including their account records for each class member,   public records if necessary, reverse cellphone number look-up as needed and/or other means.  Such commonly used methods will be used to identify class members in this case, which is all that is required at the class certification stage.  *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 494-

---

[10]"A proposed class is ascertainable for class certification if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself as having a right to recover based on the description." *Balasanyan v. Nordstrom, Inc.*, 2013 WL 4517821, at *6 (S.D. Cal. Aug. 12, 2013).

495 (C.D. Cal. 2006) ("plaintiffs need only show that their proposed methods to identify the class are plausible.").

It is therefore administratively feasible for the parties to review Defendant's agents' documentation (i.e., the outbound dial list) in electronic searchable format, which is a limited, basic inquiry made relatively simply through the use of technology, to clearly ascertain and adequately define the class. *See Knutson v. Schwan's Home Service, Inc.*, 2013 WL 4774763, at *10 (S.D. Cal. Sept. 5, 2013); *Spencer v. Beavex, Inc.*, 2006 WL 6500597, at *7 (S.D. Cal. Dec. 15, 2006) ("[A] proposed class must be clearly defined so that it is administratively feasible for a court to determine whether a particular individual is a member.") (internal quotations omitted)).

### 2. Numerosity

Under Rule 23(a), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). The court may draw reasonable inferences from the facts before it to determine whether numerosity is satisfied. *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.5 (9th Cir. 1977). Numerosity is satisfied if a proposed class has at least 40 members. *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (citation omitted). Numerosity is also met when "the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large." *In re HiEnergy Techs., Inc. Sec. Litig.*, 2006 WL 2780058, at *3 (C.D. Cal. Sept. 25, 2006).

USA Funds acts as a guarantor of federal education loans in Arizona, Hawaii, the Pacific Islands, Indiana, Kansas, Maryland, Mississippi, Nevada, and Wyoming. *See* Marron Decl., ¶ 20, **Ex. 12**. According to National Student Loan Data System, the average default rate in 2010 for the guarantor USA Funds was 9% and the number of borrowers in default was 28, 949. *Id.* at ¶ 21, **Ex. 13**. In 2011, the average default rate for the guarantor USA Funds was 5.4% and the number of borrowers in default was 11,578. *Id.* at ¶ 22, **Ex. 14**. When borrowers fall into default, USA Funds hires Sallie Mae/Navient to service and collect on the defaulted student loans. *Id.* at ¶¶ 23-26, **Exs. 15-20**).

13

The Complaint alleges that there are several thousand class members Dkt. No. 1, ¶¶ 22, 33.  Therefore, the numerosity requirement is satisfied here because thousands of separate actions would be economically and judicially impracticable.  *See Mendoza v. Home Depot, U.S.A., Inc*., 2010 WL 424679, at *4 (C.D. Cal. Jan. 21, 2010) ("Given the large number of potential plaintiffs, the Court finds that the numerosity requirement of Rule 23(a) is readily satisfied.").  Thus, it is reasonable for the Court to find that numerosity is satisfied.

### 3.    Commonality

Rule 23(a)(2) requires that there be at least one common question of law of fact to certify a class.  A class has sufficient commonality "if there are questions of fact and law which are common to the class."  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1988) (quoting Fed. R. Civ. P. 23(a)(2)).  The commonality requirement is less rigorous than the companion requirements of Rule 23(b), and is construed permissively.  *Id.* at 1019; *see also Onley v. Job.com*, 2013 WL 5476813, at *10 (E.D. Cal Sept. 30, 2013). "All questions of fact and law need not be common to satisfy the rule."  *Id.*  Rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Id*.

Commonality focuses on whether certification will offer a more economical approach to resolving the underlying disputes than would individual litigation.  *Gen. Tel. Co. of Sw.*, 457 U.S. at 155.[11]  "Plaintiffs need not demonstrate that all questions are common to the class; [as there need only be]… 'a common core of salient facts coupled with disparate legal remedies within the class' are present."  *Ellis*, 285 F.R.D. at 506 (citing *Hanlon,* 150 F.3d at 1019-20).

Commonality requires that the "common contention of such a nature that it is capable of classwide resolution –which means that determination of its truth or falsity will

---

[11] Commonality exists where a lawsuit challenges a system-wide practice or policy that affects all of the class.  *LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985); *see also* Moore's Federal Practice ¶ 23.23[5][f] (citing *LaDuke*).

*Henderson v. United States Aid Funds, Inc.,* No. 13-CV-1845-L (BLM)
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CLASS CERTIFICATION

resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2545.  Where questions of law involve "standardized conduct of the defendants towards members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement…is usually met*." Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984).  Class certification is appropriate where the "classwide proceeding [will] generate common answers apt to drive resolution of the litigation." *Dukes*, 131 S. Ct. at 2551.

USA Funds and its agents have engaged in a common course of conduct towards Plaintiff and the Class members by making autodialed and/or prerecorded voice calls to their cell phones without prior express consent. Dkt. No. 1, ¶¶ 11-19, 23, 33, 38. Thus, there are several questions of law and fact common to the Class members, such as (1) whether within the four years prior to the filing of this Complaint, USA Funds or its agents placed unsolicited telephone calls to a telephone number assigned to a cellular telephone service using an automatic telephone dialing system or artificial or pre-recorded voice system; (2) whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and (3) whether USA Fund and its agents should be enjoined from engaging in such conduct in the future.  Dkt. No., ¶ 26(a)-(c). *See Ellison v. Steven Madden, LTD*, 11-CV-5935-PSG (AGRx), Dkt. No. 45, (C.D. Cal. Sept. 25, 2012) ("the material issue in the case, whether Defendant sent unsolicited, automated text message advertisements to Class members, is a question that is common to the entire class. Therefore, the shared attributes of the claim would be the main focus of the litigation."); *see also Knutson*, 2013 WL 4774763, at *7 ("The Court finds there are questions of law and fact common to the class, including : (1) whether Defendants used an ATDS or artificial/prerecorded voice, (2) to call (3) [Defendant's] customers' cell phones, (3) for non-emergency purposes, and (4) without the customers' prior express consent.")  This case is similar to the circumstances in *Ellison* and *Knutson*, where the Central District and Southern District found commonality was met.

      **a.**      **Injury Is a Common Question to the Class**

15

*Henderson v. United States Aid Funds, Inc.*, No. 13-CV-1845-L (BLM)
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CLASS CERTIFICATION

In regard to injury, Plaintiff alleges a single violation of the TCPA, which exists to redress privacy violations caused by the annoying and invasive transmission of unsolicited phone calls. *Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 745 (2012); *see also Smith v. Microsoft Corp.*, 2012 WL 297512, at *6 (S.D. Cal. July 20, 2012) (explaining that the TCPA protects privacy rights, and does not depend on economic injury); *Silbaugh*, 278 F.R.D. at 393 ("every court examining the pertinent language of the TCPA has concluded that a plaintiff does not have to prove that he was charged for a call to state a claim under the TCPA…"). The TCPA provides for statutory injunctive relief and monetary damages of $500 per violation, with the possibility of trebling those damages if a defendant's conduct was willful. 47 U.S.C. § 227(b)(3)(A)-(C). Here, each and every Class member suffered an identical invasion of privacy when their respective cellular phone received the phone call, and each Class member is entitled to a monetary penalty for the violation. There is no need to calculate damages for each Class member.

Since Plaintiff's claims arise from Defendants' uniform practice of employing agents to make autodialed and/or prerecorded voice calls to consumers' cell phones, all or substantially all of the issues of law and fact are common to the Class, and certifying the case as a class action will produce common answers sought by the parties, including Defendants. Further, additional discovery will permit Plaintiff to determine exactly how many autodialed and/or prerecorded calls Defendant's agents made during the class period to cell phones, as determined by Defendant's agents outbound dial list. Therefore, the commonality prerequisite is easily satisfied here.

**b.    Consent Is a Common Question to the Class**

In regard to consent, any subsequent "resolution" of this consent issue would, itself, constitute a common question of fact. *See Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 392-93 (N.D. Ohio 2012). Further, other courts have correctly pointed out that in TCPA cases such as this, when thousands of calls or texts are made as part of an "organized program," and when a defendant engaged in a "standardized course of

conduct," the commonality requirement is satisfied.  *See Hinman v. M & M Rental Ctr.,*
*Inc.*, 545 F. Supp. 2d 802, 806-807 (N.D. Ill. 2008) (collecting authorities).

### 4.    Typicality

Rule 23(a)(3) requires that the claims of the representative parties be typical of the
claims of the class.  The typicality requirement serves to "assure that the interest of the
named representative aligns with the interests of the class."  *Hanon*, 976 F.2d at 508.
Typicality refers to the *nature* of the claim or defense of the class representative and not
on facts surrounding the claim or defense.  *Id.* (italics added.)  A claim is typical if it
"arises from the same event or practice or course of conduct that gives rise to the claims
of other class members and … [is] based on the same legal theory."  H. Newberg,
Newberg on Class Actions § 1115(b) (1st Ed. 1977).[12]  Typicality is met if the claims
of each class member arise from the same "course of conduct," *Armstrong v. Davis*, 275
F.3d 849, 869 (9th Cir. 2001), and the defendant's liability turns on "similar legal
argument," *id.* at 868.  Typicality focuses on a comparison of the named plaintiff's claims
with those of the class.  *Id.* at 868-69.  "[T]he injuries [must] result from the same,
injurious course of conduct."  *Id.* at 869.

Plaintiff's TCPA claim is typical of those of the Class members.  Indeed, the harm
suffered by the Plaintiff is virtually identical to the harm suffered by the Class members,
in that their privacy was invaded by the agents of Defendant when Defendant's agents
autodialed and/or prerecorded voice calls were made to their cell phones. This case is
similar to *Meyer v. Portfolio Recovery Associates*, *LLC*, where the Ninth Circuit affirmed
provisional class certification of an autodialed TCPA case. 707 F.3d at 1041.  In addition,
a similar class was affirmed in *Knutson* wherein the court found that "Plaintiffs have
suffered the same or similar injury as the putative class members.  Plaintiffs assert they
received autodialed and/or prerecorded calls from Defendants without their prior express

---

[12] Typicality is a guidepost as to "whether the named plaintiff's claim and the class claims
are so interrelated that the interests of the class members will be fairly and adequately
protected in their absence.  *Dukes*, 131 S. Ct. at 2551 (citing *Gen. Tel. Co. of Sw.*, 457
U.S. at 157-158, n. 13).

*Henderson v. United States Aid Funds, Inc.,* No. 13-CV-1845-L (BLM)
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CLASS CERTIFICATION

consent, and the proposed class is defined to include individuals who received the same type of calls." *Knutson*, 2013 WL 4774763, at *8. Here, each Class member claims statutory damages for invasion of privacy that resulted from Defendants' practice of making such calls to telephone number using prohibited means (i.e., an ATDS or prerecorded voice) without prior express consent. Dkt. No. 1, ¶¶ 21, 33, 35, 42. Given USA Funds' common practice of hiring third parties to make autodialed and/or prerecorded calls to cell phones without evidence of prior express consent during the Class Period, there is no danger the Class Representative will be preoccupied with a unique defense. *See Hanon*, 976 F.2d at 508; *see also Ellis*, 285 F.R.D. at 501. Thus, the typicality requirement is also satisfied.

### 5.    Adequacy of Representation

Rule 23(a) also requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Due process requires as much. *See Hanlon*, 150 F.3d at 1020. "Adequate representation is usually presumed in the absence of contrary evidence." *Tourgeman v. Collins Fin. Servs.*, 2011 WL 5025152, at * 13 (S.D. Cal. Oct. 21, 2011).

"The Ninth Circuit set a two-prong test for this requirement: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *In re Ferrero Litig.*, 278 F.R.D. 552, 559 (S.D. Cal. 2011) (quoting *Staton*, 327 F.3d at 957). To destroy adequacy, any supposed conflict of interest "must go to the heart of the litigation, relating to the subject matter of the suit." NEWBERG ON CLASS ACTIONS §18.14 at 40-41 (4th ed. 2002); *accord Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975) (a supposed conflict must be "apparent, imminent, and on an issue at the very heart of the suit").

Here, there is no conflict of interest between the proposed Class Representative and her counsel, who all share an interest in establishing Defendant's liability. Further, Plaintiff shares the same interest of all Class members, comprised of consumers who were

18

all harmed in virtually the same way by Defendant agent's practices of sending autodialed
unsolicited without prior express consent, such that Plaintiff's claims are virtually co-
extensive with the class members.  Plaintiff is well-informed regarding the nature of this
action and is committed to actively participating in each litigation stage.  *See* Marron Decl.
¶ 27.  Plaintiff is committed to obtaining injunctive relief and monetary damages against
Defendant.  Accordingly, Plaintiff will fairly represent the interests of the Class members.
*Id.*  Plaintiff's counsel is unaware of any conflict of interest in this case.  *Id.*  Campion
Decl. ¶¶ 12-14.  Further, it is highly unlikely that a conflict would exist in this case, given
the common practice of Defendant, fixed statutory damages, and requested injunctive
relief.  *See Yoshioka v. Charles Schwab Corp.*, No. C-11-1625 EMC, 2011 WL 6748984,
at *5 (N.D. Cal. Dec. 22, 2011) ("apart from [plaintiff's] proposed incentive award,
[plaintiff] will receive the same relief as the class as a whole and there is no apparent
conflict of interest between [plaintiff] and the class.")  Plaintiff has retained competent
class counsel experienced in TCPA litigation and class action to represent the interests of
the Class.  *See* Marron Decl. ¶¶ 31-48 & Campion Decl. ¶ 3-11 outlining the qualifications
of proposed Class Counsel.

### D.  Hybrid Certification Under Rule 23(b)(2) and (b)(3) Should be Granted

Plaintiff seeks hybrid class certification pursuant to Federal Rule of Civil Procedure
23(b)(2) and (b)(3).  The TCPA permits injunctive relief as well as statutory damages.

### 1.    Rule 23(b)(2)

"Rule 23(b)(2) mandates class certification if 'the party opposing the class has acted
or refused to act on grounds that apply generally to the class, so that final injunctive relief
or corresponding declaratory relief is appropriate respecting the class as a whole.'"  *Ellis*,
285 F.R.D. at 535 (quoting Fed. R. Civ. P. 23(b)(2)).  "[I]t is sufficient if class members
complain of a pattern or practice that is generally applicable to the class as a whole. . . .
[e]ven if some class members have not been injured by the challenged practice . . . ."
*Vietnam Veterans of Am. v. CIA*, 288 F.R.D. 192, 212 (N.D. Cal. 2012) (quoting *Walters
v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)).  Plaintiff's proposed injunctive relief, an
order prohibiting Defendant from hiring agents to make autodialed and prerecorded calls

*Henderson v. United States Aid Funds, Inc.*, No. 13-CV-1845-L (BLM)
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CLASS CERTIFICATION

to consumers' cellular telephone numbers without prior express written consent, would benefit the entire class with each member benefiting from no future calls from Defendant's agents in violation of the TCPA.

Moreover, Plaintiff and each Class member were harmed in the same manner, and may continue to be harmed, in the absence of an injunction, because Defendant would otherwise be free to continue their illegal practice of hiring agents which utilize an autodialer and/or prerecorded voice to make calls to cell phones without prior express consent, in violation of the TCPA. *See* Dkt. No. 1, ¶ 14; *see also Meyer*, 707 F.3d at 1043-45 (affirming preliminary injunction in TCPA class action).

Plaintiff's requested remedy is the appropriate remedy for a class action under Rule 23(b)(2), which "applied only when a single injunctive or declaratory judgment would provide relief to each member of the class," *Dukes*, 131 S. Ct. at 2557, based upon Defendant's common practice of hiring agents to make unsolicited automated and/or prerecorded voice calls to consumers' cell phones. Therefore, class certification under Federal Rule of Civil Procedure 23(b)(2) is necessary and appropriate here.

### 2. Rule 23(b)(3)

#### a. Common Issues Predominate

Rule 23(b)(3) requires that the "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fairly and efficiently adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *In re Ferrero Litig.*, 278 F.R.D. at 559 (citing *Hanlon*, 150 F.3d at 1022).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (quoting *Amchem Prods., Inc. v Windsor*, 521 U.S. 591 (1997)). "Individual questions need not be absent." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012). "Court[s] look at common factual link[s] between all class members

20

*Henderson v. United States Aid Funds, Inc.*, No. 13-CV-1845-L (BLM)
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION

and the defendants for which the law provide a remedy." *Ables v. JBC Legal Grp., P.C.*, 227 F.R.D. 541, 547 (N.D. Cal. 2005). "Implicit in . . . the predominance test is . . . that the adjudication of common issue will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). "Generally, when a class challenges a uniform policy or practice, the validity of the policy or practice tends to be the predominant issue in the ensuing litigation." *CE Design Ltd. v, Cy's Crabhouse N., Inc.*, 259 F.R.D. 135, 142 (N.D. Ill. 2009).

When the plaintiff advances a theory of liability in its certification motion, the court should determine whether common issues predominate under this theory without evaluating the theory itself. *See United Steel v. ConocoPhillips Co.*, 593 F.3d 802, 808-09 (9th Cir. 2010). As the Supreme Court explained, the TCPA prohibits "the use of an automatic telephone dialing system . . . to call any cellular telephone[.]" *Mims*, 123 S. Ct. at 745. A violation of the TCPA is complete upon the transmission of the offending phone calls. *Hinman v. M&M Rental Center, Inc.*, 596 F. Supp. 2d 1152, 1158-59 (N.D. Ill. 2009). Therefore, Defendant's liability will be established if Defendant's agents (1) made a call (2) using an ATDS and/or prerecorded voice message. *See id.* Both of these questions can, and should be, answered on a class-wide basis.

Here, Plaintiff has identified Defendant's practice, whereby Defendant's agents, calls debtors, like Plaintiff, via an autodialer and/or pre-recorded voice message. Dkt. No. 1, ¶¶ 12, 14. Similarly, common legal and factual issues have been found to predominate where the class members' claims arose under the TCPA and where the claims focused on the defendants' practice of calling. *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 650-51 (W.D. Wa. 2007); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08 C 5959, 2010 WL 4931001, at *3 (N.D. Ill. Nov. 29, 2010). The predominance test "begin[s], of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). The elements of a TCPA claim are whether Defendant "made" calls to individuals cell phones using ATDS and/or prerecorded voice message. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

1   Plaintiff presents a cognizable, unified theory of liability: that Defendant's agents
2   made autodialed and/or prerecorded voice calls to collect on the debts owned by
3   individuals to which USA Fund was the guaranty agency who purchased the rights to
4   collect on the defaulted loan. Specifically, Defendant USA Funds, acting as the
5   guarantor/creditor, hired its agents Sallie Mae, now Navient, to service and collect on
6   Plaintiff's defaulted student loans.   Navient then hired other third party collection
7   agencies.  The third parties collecting on the defaulted loan acted on behalf of USA Funds.
8   Thus, the principal legal issue in this case is whether Defendant's agents' telephone calls
9   violated the TCPA.  This will be determined by a review of Defendant's agents' records.
10  The predominance of common legal and factual questions is evidenced in this case by the
11  nature of Plaintiff's TCPA claim that Defendant's agents made autodialed and/or
12  prerecorded voice calls to Plaintiff's cell phone and the cell phone of Class members
13  without their prior express consent.

14  The question of "prior express consent," an affirmative defense in this TCPA action,
15  does not present individualized issues.  Defendant and its' agents are alleged to have failed
16  to obtain prior express consent to make autodialed and/or prerecorded voice calls- an issue
17  that can be resolved classwide, through a review of Defendant's agents' records, in favor
18  of or against Defendant.  *See* Dkt. No., ¶ 17; *see Manno v. Healthcare Revenue Recovery*
19  *Grp., LLC,* 289 F.R.D. 674, 690 (S.D. Fla. 2013) (finding in a TCPA prerecorded calls
20  case that whether "class members consented *ipso facto* during the admission process – is
21  not an individualized issue defeating predominance, but is itself a question/defense
22  common to the class as a whole.")  Similarly, whether Defendant can prove prior express
23  consent is a common question to all Class members.  *Silbaugh*, 278 F.R.D. at 293.

24  It is well settled that "the determination of relief does not defeat predominance."
25  *Johns*, 280 F.R.D. at 559 (citing *Blackie*, 524 F.2d at 905).  Even where "there is evidence
26  that the named Plaintiff[] suffered more damages than many other class members . . .
27  differences in damages [still] do not prevent class certification."   *Montanez v. Gerber*
28  *Childrenswear, LLC*, 2011 WL 6757875, at *4 (C.D. Cal. Dec. 15, 2011) (citing *Blackie*,

*Henderson v. United States Aid Funds, Inc.,* No. 13-CV-1845-L (BLM)
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CLASS CERTIFICATION

524 F.2d at 905).   As the court in *Knutson* addressed, an "individualized" question regarding the number of calls each class member received "may be answered – at least in part – by resort to Defendants' records without the need for a multitude of mini-trials." *Knutson*, 2013 WL 4774763, at *10.   Accordingly, Plaintiff can use Defendant's agents' records - including outbound dial lists - to determine the number of calls made.   *See id;* *see also* 47 U.C.S. § 227(b)(3).

There is clear justification for handing this dispute under § 227(b)(1)(A)(iii) of the TCPA on a representative rather than individual basis.   The issues that make up Plaintiff's claim are common to the Class members, and all Class members have allegedly been injured in the same way, in the same manner, by Defendant's agents' common practice of making autodialed and/or prerecorded voice calls without prior express consent.   Through a class action, the Court may resolve at once important common questions to which all parties seek an answer, as explained above, thus serving the policy goal of judicial economy as explained by the Ninth Circuit.   *See Valentino*, 97 F.3d at 1234; ¶ 33.

> b.    *Plaintiff Will Show USA Funds' Liability by Common Evidence*

Where a plaintiff "may prove the essential issues in [the] case with common proof, . . . class-wide issues predominate over individualized issues." *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 697-98 (S.D. Fla. 2010). Here, because Plaintiff's claims can be proven by common evidence, predominance is satisfied.

Here, Plaintiff alleges (and further intends to offer evidence) that Defendant engaged in a practice whereby Defendant's agents made calls via ATDS and/or prerecorded voice message in a manner common to all recipients.   Thus, common evidence will be used to prove that Defendant engaged in a single course of conduct with respect to all Class members to establish class-wide liability.

Therefore, common issues predominate in this TCPA action.   *See Lee*, 289 F.R.D. at 295 ("however strong [defendants'] arguments on the merits may be for avoiding liability, there is no reason those issues cannot be properly decided on a class-wide basis, and plaintiff has otherwise satisfied the prerequisites for certification. . .").

> c.    *The Prerequisite of Superiority is Satisfied*

23

Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "This superiority requirement is met '[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis.'" *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 486 (C.D. Cal. 2012) (quoting *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)). "Given the small size of each class member's claim at issue here, class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the present action." *Id.*

"While nuisance calls. . . may not be the most egregious of wrongs policed by Congress, this Court cannot assume that individual suits [will] deter large commercial entities as effectively as aggregated class actions and that individuals would be as motivated—or even more motivated—to sue in the absence of the class action vehicle. There is little reason to believe that individual actions are automatically efficient; plaintiffs can still face protracted litigation when they sue individually." *Manno*, 289 F.R.D. at 690 (quoting *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 95 (3rd 2011).

Here, a class action is superior to numerous individual TCPA actions and thus serves the efficient and appropriate resolution to Defendant's alleged violations of the TCPA, which implicates the right of several thousand of persons throughout the nation *See* Marron Decl., ¶ 29, and will provide no difficulty in allocating fixed statutory damages under 47 U.S.C. § 227(b)(3)(B). It would avoid a multiplicity of actions and possible inconsistences in judgment. If multiple TCPA suits were filed, there would be a risk of inconsistent results arising from injunctive relief regarding the numerous consumers affected by Defendant's practices. *See*, *e.g.*, *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 236-37 (C.D. Cal. 2003) ("Where common questions 'predominate,' a class action can . . . avoid inconsistent outcomes . . ."); *see also Bellows v. NCO Fin. Sys.*, 2008 4155361, at *8 (S.D. Cal. Sept. 5, 2008) (holding in a TCPA action that the class action procedure is the superior mechanism for dispute resolution in such matter, as the

24

*Henderson v. United States Aid Funds, Inc.*, No. 13-CV-1845-L (BLM)
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION

alternative mechanism, permitting individual lawsuits for a small statutory penalty, would be costly and duplicative).  This class action is superior to numerous individual actions.

Certifying this case as a class action would reduce the burden on the courts that would arise from several thousands of separate, yet nearly identical TCPA claims; would avoid duplicate discovery requests; would provide an efficient method from prompt resolution of the issue regarding the propriety of Defendant's conduct; and would likely result in a more expedient recovery for Class members who would not have to seek individual legal representation once they were to become aware of their rights against USA Funds, if at all.  *See* Marron Decl., ¶ 30.  The Class members are individual debtors who are not likely able to successfully maintain a TCPA action against Defendant where the maximum statutory damages per negligent violation of the TCPA is only $500 per text message.  "To permit the defendants to contest liability with each claiming in a single, separate suit . . . would be almost equivalent to closing the door of justice to all small claimants." *Weeks v. Bareco Oil Co.*, 125 F.2d 84, 90 (7th Cir. 1941).  Thus, "[g]iven the relatively minimal amount of damages that an individual may recover in suing for violation of the TPCA, *see* 47 U.S.C. § 227(b)(3), . . . a class action would achieve Plaintiff['s] objective better than if class members were required to bring individual actions." *Knutson*, 2013 WL 4774763, at *10.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Shyriaa Henderson respectfully requests the Court grant Plaintiff's Motion for Class Certification under Rules 23(b)(2) and (b)(3) by certifying the proposed Class, appointing Shyriaa Henderson as Class Representative, and appointing her attorneys as Class Counsel.

Dated:      August 22, 2014          */s/ Ronald A. Marron*
                                    By: Ronald A. Marron
                                    **LAW OFFICES OF RONALD A. MARRON**
                                    RONALD A. MARRON

SKYE RESENDES
ALEXIS WOOD
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*/s/ Douglas J. Campion*

By: Douglas J. Campion

**LAW OFFICES OF DOUGLAS J. CAMPION, APC**

409 Camino Del Rio South, Suite 303

San Diego, CA 92108

*doug@djcampion.com*

Telephone: (619) 299-2091

Facsimile: (619) 858-0034

***Attorneys for Plaintiff and the Proposed Class***

*Henderson v. United States Aid Funds, Inc.*, No. 13-CV-1845-L (BLM)
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CLASS CERTIFICATION