1
2
3
4

UNITED STATES DISTRICT COURT

5

SOUTHERN DISTRICT OF CALIFORNIA

6
7   SHYRIAA HENDERSON, on behalf of   )   Case No. 13cv1845-JLS (BLM)
    herself, and all others similarly situated,   )
8                                          )   **ORDER GRANTING PLAINTIFF'S**
                   Plaintiff,              )   **MOTION TO COMPEL DEFENDANT'S**
9                                          )   **DISCOVERY RESPONSES**
                                           )
10  v.                                     )   [ECF No. 91]
                                           )
11  UNITED STUDENT AID FUNDS, INC.,        )
    D/B/A/ USA FUNDS,                      )
12                                         )
                   Defendant.              )
13                                         )
                                           )
14  ───────────────────────────────────   )

15          Currently before the Court is Plaintiff Shyriaa Henderson's June 5, 2015 motion to

16  compel further discovery responses [ECF No. 91 ("MTC")],  Defendant United Student Aid

17  Funds, Inc.'s ("USA Funds") June 19, 2015 opposition [ECF No. 92 ("Oppo.")], and Plaintiff's

18  June 26, 2015 reply [ECF No. 100 ("Reply")].  Having considered all of the briefing and

19  supporting documents presented, and for the reasons set forth below, Plaintiff's motion to

20  compel further discovery responses is **GRANTED.**

21                    **FACTUAL AND PROCEDURAL BACKGROUND**

22          On August 8, 2013, Plaintiff filed a class action complaint alleging that USA Funds

23  violated the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.* ("TCPA") by

24  contacting Plaintiff's cellular telephone and invading Plaintiff's privacy. See ECF No. 1. On

25  October 2, 2014, Plaintiff filed a First Amended Complaint ("FAC"), naming three new

26  Defendants: GC Services Limited Partnership ("GC Services"), National Enterprise Systems,

27  Inc. ("NES"), and Navient Solutions, Inc. ("Navient") (collectively "the newly added

28  Defendants").  See ECF No. 47.  Plaintiff's FAC alleges that beginning in 2010 and

continuing through June 2013, Plaintiff received unsolicited phone calls made on behalf of USA Funds to her wireless phone attempting to collect a debt.  Id. at 5.  Plaintiff claims that she did not provide USA Funds or its agents with prior express consent to contact her cellular telephone, and that they obtained her cellphone number from a third party by "trapping" such number.  Id. at 7-8.  Plaintiff further asserts that the phone calls were placed to her cellular telephone "via an 'automatic telephone dialing system,' . . . and by using 'an artificial or prerecorded voice' system . . . , which had the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place telephone calls to Plaintiff's cellular telephone."  Id. at 7.

Plaintiff further asserts in her FAC that USA Funds "acting as the guarantor/creditor of Plaintiff's student loans," hired Sallie Mae[1] to service and collect on Plaintiff's defaulted student loans.  Id. at 6.  Plaintiff claims that although USA Funds did not make collection calls to Plaintiff, USA Funds and/or Sallie Mae hired several collection agencies, including GC Services, NES, Pioneer Credit Recovery, General Revenue Corporation, and NCO Group, to collect on Plaintiff's loans by calling Plaintiff's cellular phone "on behalf of Defendant USA Funds."  Id.; see also id. at 8-9.  Plaintiff contends that USA Funds can be held vicariously liable for the unlawful calls made by third parties, such as Navient and collection agencies hired by Navient, if the third party had actual or apparent authority to make the unsolicited calls on behalf of USA Funds or if USA Funds ratified the third parties' conduct.  See id. at 6-7.

Plaintiff seeks to represent the following proposed class:

> all persons within the United States who received any unsolicited telephone calls from Defendants or Defendants' agents on their paging service, cellular phone service, mobile radio service, radio common carrier service, or other service for which they were charged for the call, through the use of any automatic telephone dialing system or artificial or pre-recorded voice system as set forth in 47 U.S.C. § 227(b)(1)(A)(3) or artificial or prerecorded voice, which telephone calls by Defendants or Defendants' agents were not made for emergency purposes or with the recipients' prior express consent within four years prior to the filing of this Complaint.

---

[1] In April 2014, Sallie Mae split into two entities: Sallie Mae and Navient, and Navient is the new entity that services federal student loans on behalf of USA Funds.  Id.

1  Id. at 8.

2     On October 6, 2014, Plaintiff served interrogatories and requests for production on

3  the newly added Defendants.  MTC at 8.  On October 24 and 27, 2014, the newly added

4  Defendants filed motions to dismiss for lack of subject matter jurisdiction, and their motions

5  were granted on April 8, 2015.  See ECF Nos. 55, 56, 60, 81.  On April 20, 2015, Plaintiff

6  served a Second Set of Interrogatories and Requests for Production of Documents on the

7  remaining defendant, USA Funds, and issued six subpoenas to the following nonparties

8  hired by USA Funds to collect on Plaintiff's loan: GC Services, General Revenue Corporation,

9  NES, Navient, NCO Group, Inc., and Pioneer Credit Recovery, Inc.   ECF No. 91-1,

10  Declaration of Alexis M. Wood ("Wood Decl.") at 3.

11                              **LEGAL STANDARD**

12     The Federal Rules of Civil Procedure generally allow for broad discovery, authorizing

13  parties to obtain discovery regarding "any nonprivileged matter that is relevant to any

14  party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Also, "[f]or good cause, the court may

15  order discovery of any matter relevant to the subject matter involved in the action."  Id.

16  Relevant information for discovery purposes includes any information "reasonably calculated

17  to lead to the discovery of admissible evidence," and need not be admissible at trial to be

18  discoverable.  Id.  There is no requirement that the information sought directly relate to a

19  particular issue in the case.  Rather, relevance encompasses "any matter that bears on, or

20  that reasonably could lead to other matter that could bear on, any issue that is or may be

21  [presented] in the case."  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

22  District courts have broad discretion to determine relevancy for discovery purposes.  See

23  Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).  Similarly, district courts have broad

24  discretion to limit discovery where the discovery sought is "unreasonably cumulative or

25  duplicative, or can be obtained from some other source that is more convenient, less

26  burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C).  Limits should be imposed

27  where the burden or expense of the proposed discovery outweighs the likely benefits.  Id.

28     A party may serve interrogatories that relate to any matter within the scope of

Rule 26(b).  Fed. R. Civ. P. 33(a).  "The grounds for objecting to an interrogatory must be stated with specificity," and any interrogatory not objected to must be answered fully in writing under oath.  Fed. R. Civ. P. 33(b).  Similarly, a party may request the production of any designated documents or electronically stored information within the scope of Rule 26(b).  Fed. R. Civ. P. 34(a).  "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons."   Fed. R. Civ. P. 34(b)(2)(B).   The responding party is responsible for all items in "the responding party's possession, custody, or control."  Fed. R. Civ. P. 34(a)(1).  However, actual possession, custody or control are not required; rather "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document."  Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995).

The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1).  Id. at 610.  Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining, and supporting its objections.  DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)).

The Ninth Circuit has explained that "[d]istrict courts have broad discretion to control the class certification process, and '[w]hether or not discovery will be permitted . . . lies within the sound discretion of the trial court.'"  Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 942 (9th Cir. 2009) (quoting Kamm v. Cal. City Dev. Co., 509 F.2d 205, 209 (9th Cir. 1975)).  "The plaintiff in a class action 'bears the burden of . . . showing that . . . discovery is likely to produce substantiation of the class allegations.' . . . Once this showing is made, it is an abuse of discretion to deny precertification discovery."  Perez v. Safelite Grp. Inc., 553 F. App'x 667, 668-69 (9th Cir. 2014), as amended on denial of reh'g and reh'g en banc (Mar. 7, 2014) (citing Mantolete v. Bolger, 767 F.2d 1416, 1424 (9th Cir.

1  1985) and Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1313 (9th Cir. 1977)).

2  Discovery in a putative class action at the pre-certification stage is generally limited
3  to such certification issues as the number of class members, the existence of common
4  questions, typicality of claims, and the representative's ability to represent the class.  See
5  Gusman v. Comcast Corp., 298 F.R.D. 592, 595 (S.D. Cal. 2014) (citation omitted); see also
6  Del Campo v. Kennedy, 236 F.R.D. 454, 459 (N.D. Cal. 2006) ("Prior to certification of a
7  class action, discovery is generally limited and in the discretion of the court.");
8  Oppenheimer Fund, Inc., 437 U.S. at 351 n.13 ("[D]iscovery often has been used to
9  illuminate issues upon which a district court must pass in deciding whether a suit should
10  proceed as a class action under Rule 23, such as numerosity, common questions, and
11  adequacy of representation." ).  "Although discovery on the merits is usually deferred until
12  it is certain that the case will proceed as a class action, the merits/certification distinction
13  is not always clear," because the facts that are relevant to the class determination
14  frequently overlap with the facts that are relevant to the merits of the case.  Gusman, 298
15  F.R.D. at 595 (citing Wal–Mart Stores Inc. v. Dukes, ––– U.S. –––, 131 S.Ct. 2541, 2551-52
16  (2011) (explaining that often the "rigorous analysis" under Federal Rule of Civil Procedure
17  23(a) "will entail some overlap with the merits of the plaintiff's underlying claim.  That
18  cannot be helped.").

19  **DISCUSSION**

20  Plaintiff moves to compel further responses to three interrogatories and six
21  document requests.[2]  See MTC.  Plaintiff's motion presents two issues.  First, whether
22  Plaintiff may obtain discovery on all collection vendors utilized by USA Funds or only on
23  those vendors that called Plaintiff.  See Oppo. at 6-7; Reply at 2-5.  Second, whether USA

24  ─────────────────

25  [2] Plaintiff summarizes the requests as seeking the following information: (1) "[i]dentification of the
26  vendors used for collection efforts on USA Funds' behalf"; (2) "[o]utbound dial list and reports of all telephone
    numbers called using a dialer on USA Funds' behalf"; (3) "[t]elephone number(s) each third-party vendor
27  utilized to contact debtors to collect on USA Funds' behalf"; (4) "[d]ocuments pertaining to USA Funds'
    affirmative defense of 'prior express consent'"; (5) "[a]greements with the third-party vendors used for
28  collection efforts on USA Funds' behalf and instructions provided to those vendors"; and (6) "[t]elephone dialing
    equipment utilized to make the phone calls on USA Funds' behalf."  MTC at 10.

1   Funds has "possession, custody or control" over the requested documents, or whether

2   Plaintiff needs to obtain the records by subpoena from the actual collection vendors. <u>See</u>

3   Oppo. at 7-9; Reply at 5-9.

4   **I.      Identification of the Vendors Who Did Not Call Plaintiff**

5        In Interrogatory No. 21, Plaintiff asked USA Funds to "IDENTIFY any other vendors

6   or third parties, in addition to the previously disclosed collection agencies who may have

7   handled the Plaintiff's loans . . . used during the RELEVANT TIME PERIOD to interact with

8   internal phone systems or external telecommunication networks, including but not limited

9   to any individual or company that provides outbound dialing services on YOUR behalf (*i.e.*

10  third parties who engaged in making collection efforts on YOUR behalf)."  Wood Decl.,

11  Exh. A at 12.  In its response, USA Funds raised a variety of objections and substantively

12  responded that it "[wa]s not currently aware of vendors that made collection calls to

13  Plaintiff, other than as previously identified."  <u>Id.</u>, Exh. C at 5.

14       Plaintiff seeks to compel USA Funds to "[i]dentify <u>all</u> vendors utilized during the

15  relevant class period to make collection calls on [] its behalf—not just those vendors that

16  collected on Plaintiff's account."  MTC at 10 (emphasis in original).  USA Funds argues that

17  information regarding collection vendors who did not call Plaintiff is irrelevant to the current

18  dispute because Plaintiff cannot serve as a class representative for individuals who received

19  calls from vendors that did not call Plaintiff.  Oppo. at 6-7.  Plaintiff disagrees and argues

20  that she can represent a class of individuals who received improper calls from any vendor

21  utilized by USA Funds, not just the specific vendors that called Plaintiff.[3]  Reply at 3-4.

22  Plaintiff explains that she needs the identities of all of the collection vendors utilized by USA

23  Funds during the class period so that she can establish the requirements of Federal Rule

24  of Civil Procedure ("FRCP") 23.  <u>See id.</u> at 4-5.

25  _____

26       [3] Plaintiff relies on <u>In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,</u>
    <u>Request of ACA Int'l for Clarification and Declaratory Ruling</u>, 23 FCC Rcd. 559 ¶¶ 9, 10 (Jan. 4, 2008), which
27  provides that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless
    number bears the responsibility for any violation of the Commission's rules.  Calls placed by a third party
28  collector on behalf of that creditor are treated as if the creditor itself placed the call."  Reply at 3-4.

Neither party cited any case law to support its argument regarding the appropriate scope of discovery–whether Plaintiff is entitled to discover the identities of all collection vendors utilized by USA Funds (or by Navient on its behalf) or only of the vendors who actually called Plaintiff. See Mot., Oppo., Reply. In a recent case from the Northern District of California, a district judge opined in a similar TCPA case that a plaintiff in a putative class action had statutory standing as to a defendant's third-party debt collector that did not call the plaintiff. Lofton v. Verizon Wireless (VAW) LLC, 2015 WL 1254681, at *4-5 (N.D. Cal. Mar. 18, 2015). The court also stated that "a defendant may be held vicariously liable for calls it does not directly initiate 'under federal common law principles of agency.'" Id. at 3 (quoting In re Joint Petition Filed by Dish Network, LLC, 28 FCC Rcd. 6574, 6584 (2013) and Thomas v. Taco Bell Corp., 582 Fed. App'x. 678, 679 (9th Cir. 2014)). In reaching this decision, the court reasoned that an individual could represent a class called by different third-party debt collectors if there is "substantial similarity between the conduct of each third-party debt collector at issue," but acknowledged that every case must be "evaluated independently and the relevant circumstances carefully scrutinized." Lofton, 2015 WL 1254681, at *4-5. Other district courts have reached similar conclusions, finding that discovery properly includes entities other than the specific entity that made the allegedly improper call or communication to the named plaintiff. See Bais Yaakov of Spring Valley v. Houghton Mifflin Harcourt Publishers, Inc., 36 F. Supp. 3d 417, 419, 421-22 (S.D.N.Y 2014) (permitting the plaintiff to obtain discovery regarding illegal advertisements "other than the one which it received" because "such discovery would be relevant to Plaintiff's future motion for class certification"); In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig., 2014 WL 316476, at *7 (N.D.W. Va. Jan. 28, 2014) (permitting discovery relating to dealers who did not make actionable phone calls because it is relevant to demonstrate whether the defendants or their agents violated the TCPA); Gilman v. ER Solutions, Inc., 2012 U.S. Dist. LEXIS 190602, at *10 (W.D. Wash. Feb. 3, 2012) (declining to grant the defendant's motion for a protective order as to the plaintiff's requests to identify any third parties the defendant retained to acquire debtors telephone numbers because the requests

1  are relevant to the plaintiffs' individual and class TCPA claims and FRCP 23(a)

2  requirements).

3        This Court finds the <u>Lofton</u> analysis and holding persuasive and applicable to the

4  instant case.  <u>See</u> <u>Lofton</u>, 2015 WL 1254681, at *3-5.  While the Court is not deciding

5  whether or not Plaintiff is an appropriate class representative nor whether or not there is

6  a certifiable class, the Court does find that given the broad scope of FRCP 26 discovery and

7  given that Plaintiff may be able to represent a class including individuals who were called

8  by third-party collection vendors that did not call Plaintiff, the discovery request seeks

9  relevant information.  The Court therefore **GRANTS** Plaintiff's motion to compel on this

10  issue.  USA Funds shall respond in full to Plaintiff's Interrogatory No. 21 and identify all of

11  the collection vendors USA Funds utilized to make calls on its behalf to any borrower during

12  the class period.

13  **II.    USA Funds' Control Over the Requested Documents and Information**

14        With regard to the remaining discovery requests, USA Funds' primary argument is

15  that it does not have possession, custody or control of any of the requested documents and

16  information.  <u>See</u> Oppo. at 7-9.  USA Funds argues that all of the documents are in the

17  possession of Navient or the individual collection vendors, not USA Funds, and that Plaintiff

18  should obtain the documents from those entities.  <u>Id.</u> at 8-9.  Plaintiff replies that USA

19  Funds has legal custody or control over the documents and should be required to obtain

20  the documents from Navient and the other collection vendors.  Reply at 6-9.  In arguing

21  this issue, both parties rely on the language of the Guarantee Services Agreement ("GSA"),

22  which governs the relationship between Navient and USA Funds.  <u>See</u> Oppo. at 3-4; Reply

23  at 6-8.  USA Funds relies primarily on Article III subsection A, which states that the parties

24  are independent entities who do not act as "agents (except as specifically set forth in this

25  Agreement), employees, partners, joint ventures or associates of one another."  Oppo. at

26  3; ECF No. 97 at 8.  Plaintiff responds by citing several provisions of the GSA which give

27  USA Funds the legal right to obtain a variety of documents, including, according to Plaintiff,

28  all of the requested discovery.  <u>See</u> Reply at 6-8.

1    The Federal Rules of Civil Procedure provide that a party responding to document
2    requests must do so based upon all items in "the responding party's possession, custody,
3    or control."   Fed. R. Civ. P. 34(a)(1).   "The fact that documents are in the physical
4    possession of a third party custodian does not eliminate the responsibility of a responding
5    party to search for and produce those documents when the party has the legal right to
6    obtain the documents on demand." MGA Entm't, Inc. v. Nat'l Prod. Ltd., 2012 WL 182158,
7    at *6 (C.D. Cal. Jan. 23, 2012) (citation omitted).   If a contract between two separate
8    entities expressly gives one entity the right to obtain the records from the other entity upon
9    demand, then the first entity has control over documents in the latter entity's possession.
10   See In re Citric Acid Litig., 191 F.3d 1090, 1107 (9th Cir. 1999) (when there is a contractual
11   relationship between two companies, in order for a party to compel one company to obtain
12   information from the other, "the contract governing the [] relationship" has to "expressly
13   give [] the right to obtain" the information in question); see also In re NCAA
14   Student-Athlete Name & Likeness Litig., 2012 WL 161240, at *3 (N.D. Cal. Jan. 17, 2012)
15   (holding that the NCAA does not have a "legal right" to acquire documents from its member
16   institutions because "[n]either the NCAA Constitution nor the Bylaws" grants the NCAA this
17   right).   A court will "look to that document and its interpretation to resolve the issue of
18   control." U.S. v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO, 870 F.2d 1450,
19   1452 (9th Cir. 1989); see also Doe v. AT & T W. Disability Benefits Program, 2012 WL
20   1669882, at *3-4 (N.D. Cal. May 14, 2012).   "The party seeking production of the
21   documents . . . bears the burden of proving that the opposing party has such control." Int'l
22   Union, 870 F.2d at 1452.

23       The Court has reviewed the GSA and finds that it gives USA Funds legal custody and
24   control over the requested documents.   Article III subsection J, entitled "Use and
25   Ownership of Information and Documentation," grants USA Funds ownership rights over
26   information generated through Navient's loan collection process as follows:

27       All documents, records, data and other materials containing specific Loan
         information that are used or generated by [Navient] solely in providing the
28       Services (the "Loan Specific Information") are and shall remain the property

-9-                                                                          13cv1845-JLS (BLM)

of USA Funds . . . .

ECF No. 97 at 14.  This provision also requires Navient to "promptly provide all such Loan Specific Information to USA Funds upon request."  Id. ████████████████████████████

████████████████████████████████████████████████████████████

███████████████████

█  ████████████████████████████████████████████████████

█  ████████████████████████████████████████████████

█  ████████████████████████████████████████████

████████████████████████████

████████  Further, in Article V subsection B, Navient also agrees to make the following data available to a variety of entities "acting at USA Funds' request or with USA Funds' authorization" or "upon prior written request of USA Funds":

> Data includes, but is not limited to, the Loan information collected and stored by [Navient] pertaining to the student, borrower, co-signors, school and lender applicable to each such Loan. **Data also includes Subcontracting Agreements with collection vendors** as long as the terms of such Subcontracting Agreements do not prohibit such disclosure to a third party such as USA Funds.  USA Funds may also request to view a copy of other Subcontracting Agreements on a contract-by-contract basis.

Id. at 21 (emphasis added).  ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████  See id. at 8-9.  Even Article III subsection A, entitled "Independent Contractor," which USA Funds relies upon for its argument, includes a statement that the two entities are not agents "except as specifically set forth in this Agreement."  See id. at 8; see also Oppo. at 3-4.  Accordingly, the Court finds that the GSA gives USA Funds legal custody and control over a substantial variety of documents created and/or maintained by Navient and collection vendors hired by Navient to collect on USA Funds' debts.  See Doe, 2012 WL 1669882, at *3-4 (finding that contractual provisions that grant the defendant "ownership rights over information and

documents" generated by the third party's services, access to the third party's information for "inspection or audits," and requirements for the third party to perform certain duties "for the defendant in case of litigation" demonstrated that the defendant had control over documents in the third party's possession); Rosie D. v. Romney, 256 F. Supp. 2d 115, 119 (D. Mass. 2003) ("[d]efendants have the right to control and obtain the documents that are in the possession of the various non-defendant agencies" when contractual provisions provide the defendant the right to examine and copy information from subcontractors).

In its opposition, USA Funds does not present any argument challenging the specific discovery requests. See Oppo. Rather, USA Funds relies solely on its argument that it does not have possession, custody or control of any of the documents.[4] Id. Since the Court has found that USA Funds does have legal custody and control over the documents and USA Funds does not present any additional argument regarding the specific discovery requests in its opposition to Plaintiff's motion, the Court may grant Plaintiff's motion without any further analysis. See In re Toys R Us Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig., 2010 WL 4942645, at *3 (C.D. Cal. July 29, 2010) (quoting Cotracom Commodity Trading Co. v. Seaboard Corp., 189 F.R.D. 655, 662 (D. Kan. 1999)) ("When ruling upon a motion to compel, the court generally considers those objections which have been timely asserted and relied upon in response to the motion. It generally deems objections initially raised but not relied upon in response to the motion as abandoned."); Hupp v. San Diego Cnty., 2014 WL 1404510, at *7 (S.D. Cal. Apr. 10, 2014) (citing Bryant v. Armstrong, 285 F.R.D. 596, 604 (S.D. Cal. 2012)) (addressing only the objections raised in a party's opposition to a motion to compel where the party raised multiple boilerplate

---

[4] The only additional argument that USA Funds mentions is "burden," but the argument is made in relation to the burden imposed by the subpoenas, not any burden related to USA Funds' response to Plaintiff's discovery. Oppo. at 9. In any event, USA Funds fails to provide any facts or evidence supporting this argument. The responding party carries the burden to demonstrate that the discovery is unduly burdensome. Pham v. Wal-Mart Stores, Inc., 2011 WL 5508832, at *3 (D. Nev. Nov. 09, 2011) (citing Residential Constructors, LLC v. Ace Prop. and Cas. Ins. Co., 2006 WL 3149362, at *9 (D. Nev. Nov. 1, 2006)). In order to satisfy this burden, USA Funds "must provide sufficient detail regarding the time, money and procedures required to produce the requested documents." Pham, 2011 WL 5508832, at *3. Because USA Funds did not submit any evidence establishing an undue burden, the Court overrules this argument.

1   objections in its initial responses to discovery requests, but did not support or explain the

2   objections in its opposition to a motion to compel); Dolquist v. Heartland Presbytery, 221

3   F.R.D. 564, 568 n.16 (D. Kan. 2004) ("objections initially raised but not relied upon in

4   response to a motion to compel are deemed abandoned").

5          Nevertheless, the Court has reviewed the types of information requested by Plaintiff

6   and finds that the GSA provides USA Funds with the legal authority to obtain the responsive

7   documents.  Outbound call lists, reports of telephone numbers called on USA Funds' behalf,

8   and telephone numbers used to contact debtors all constitute Loan Specific Information,

9   ██████████████████████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████████████████████

11  ███████████   See ECF No. 97 at 14-15, 17, 21-22.   Similarly, agreements with and

12  instructions to collection vendors fall within the scope of ████████████████████████

13  ██████████████████████████████████████████████████████████████████████

14  ██████████████████   See id. at 21.  Additionally, documents and information on prior

15  express consent[5] fall within the scope of Article III subsection J of the GSA. See id. at 14.

16  Finally, information on each vendor's telephone dialing equipment falls within the scope of

17  ██████████████████████████████████████████████████████████████████████

18  ███████████████   See id. at 8-9.

19         The Court also has reviewed the requests and finds that they are relevant to

20  Plaintiff's claims and class certification issues.  For example, Plaintiff's  request for the

21  outbound call list is reasonably calculated to identify the recipients and number of calls

22  made during the class period, and thus is relevant to establish FRCP 23 requirements of

23  numerosity and commonality.  See, e.g., Thrasher v. CMRE Fin. Servs., Inc., 2015 WL

24  _____

25         [5] Plaintiff clarifies in her motion that she only seeks production of prior express consent documents to
    counter USA Funds' affirmative defense and to take a FRCP 30(b)(6) deposition concerning such evidence. MTC
26  at 16.  Plaintiff also notes that USA Funds carries the burden to demonstrate prior express consent and that
    any privacy concerns can be addressed by a protective order. Id. 16-18.  USA Funds does not specifically
27  object to this request in its response and does not dispute that it carries the burden to show proof of prior
    express consent, but argues lack of control over the vendors' business information and that Plaintiff's requests
28  are burdensome. See Oppo. at 7-9.

1138469, at *2 (S.D. Cal. Mar. 13, 2015) (finding that the defendant's "outbound call list is reasonably calculated to identify the number and recipients of calls made during the class period" and "relevant to Rule 23 requirements"); Gaines v. Law Office of Patenaude & Felix, A.P.C., 2014 WL 3894348, at *2 (S.D. Cal. June 12, 2014) (citations omitted) (finding that "the outbound dial list is relevant to the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a), and is therefore discoverable."). Further, Plaintiff's request for the telephone numbers used to contact debtors is reasonably calculated to identify each instance of an improper call and directly relates to Plaintiff's individual and class TCPA claims. See Brodsky v. Humana, Inc., 2009 WL 1956450, at *2 (N.D. Ill. July 8, 2009) (finding telephone records for each telephone line used to send improper facsimile transmissions on the defendant's behalf relevant to the plaintiff's individual and class TCPA claims).

The Court also finds that Plaintiff's request for documents and information on prior express consent is relevant because USA Funds raised this defense in its answer and argues in its opposition that Plaintiff consented to the calls.[6] See ECF No. 49 at 5, 10-11; Oppo. at 2 n.2; Thrasher, 2015 WL 1138469, at *6 (noting that if defendant "intends to rely on its . . . affirmative defense of prior express consent at trial, then it has the burden to prove 'it had consent to call the phone numbers at issue, either via prior express consent or implied consent.'"); Grant v. Capital Mgmt. Serv., L.P., 449 Fed. Appx. 598, 600 n.1 (9th Cir. 2001) (stating that express consent is not an element of a TCPA claim but is an affirmative defense for which the defendant bears the burden of proof). Plaintiff's request for USA Funds' agreements with and instructions to collection vendors also relates to USA Funds' affirmative defense of prior express consent and other class certification issues, and meets FRCP 26's relevancy requirement. See Cabrera v. Gov't Emples. Ins. Co., 2014 U.S. Dist. LEXIS 90810, at *34 (S.D. Fla. July 3, 2014) (ordering the defendant to produce all

---

[6]    In its opposition, USA Funds states that "[d]iscovery has revealed that Henderson did provide consent to the calls at different points in time. Documentation reflecting this consent has been produced to Henderson. See, e.g., Bates No. NSISAC000183." Oppo. at 2 n.2.

manuals or documents containing policies and procedures relating to its vendor making subrogation calls using an artificial or prerecorded voice in a TCPA case). Finally, the Court finds that Plaintiff's request for information on each vendor's telephone dialing equipment is relevant to establish the basis of Plaintiff's individual and class TCPA claims–whether USA Funds' vendors used automatic telephone dialing system to call her or other putative class members' cellular telephones.   See Thrasher, 2015 WL 1138469, at *4; 47 U.S.C. § 227(b)(1)(A) (the TCPA prohibits a person from making any calls "using any automatic telephone dialing system or an artificial or prerecorded voice").  The Court thus grants Plaintiff's motion to compel and **ORDERS** USA Funds to produce all non-privileged, responsive documents requested in RFPs Nos. 67-72 and to respond in full to Plaintiff's Interrogatories Nos. 22 and 23.

## CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff may obtain discovery on all collection vendors USA Funds utilized to make calls on its behalf to any borrower during the class period, and that USA Funds has legal custody and control over the requested documents.  Accordingly, Plaintiff's motion is **GRANTED** and USA Funds is ordered to produce the information sought by **August 17, 2015.**

**IT IS SO ORDERED.**

DATED:  July 28, 2015

BARBARA L. MAJOR
United States Magistrate Judge