1  Ronald A. Marron (SBN 175650)
   ron@consumersadvocates.com
2  Alexis Wood (SBN 270200)
   alexis@consumersadvocates.com
3  Kas Gallucci (SBN 288709)
   kas@consumersadvocates.com
4  LAW OFFICES OF RONALD A. MARRON
5  651 Arroyo Drive
   San Diego, California 92103
6  Tel: 619.696.9006
   Fax: 619.564.6665
7
8  Benjamin H. Richman (Admitted *pro hac vice*)
   brichman@edelson.com
9  J. Dominick Larry (Admitted *pro hac vice*)
   nlarry@edelson.com
10 EDELSON PC
11 350 North LaSalle Street, 13th Floor
   Chicago, Illinois 60654
12 Tel: 312.589.6370
   Fax: 312.589.6378
13
14 *Attorneys for Plaintiff and the Proposed Class*

15             **UNITED STATES DISTRICT COURT**

16           **SOUTHERN DISTRICT OF CALIFORNIA**

17
   SHYRIAA HENDERSON, on behalf         CASE NO. 3:13-cv-1845-JLS-BLM
18 of herself and all others similarly    CLASS ACTION
   situated,
19                                        **PLAINTIFF'S RENEWED MOTION**
20             Plaintiff,                 **FOR CLASS CERTIFICATION**

21         vs.                            Hearing date:   July 7, 2016
                                          Time:           1:30 p.m.
22 UNITED STUDENT AID FUNDS,             Courtroom:      4A – 4th Floor
   INC. D/B/A UNITED STUDENT
23 AID FUNDS,
24
25             Defendant.
26
27
28

                                    1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

I.   INTRODUCTION ........................................................................................1

II.  BACKGROUND ...........................................................................................2

III. ARGUMENT.................................................................................................5

  A. The Proposed Class is Ascertainable.................................................7

  B. The Proposed Class Satisfies Rule 23(a)'s Requirements. ..............9

    1. The Class consists of millions of individuals...............................9

    2. Class members share common issues of law and fact. ..............10

      a. Whether the Collectors' dialing equipment constitutes an ATDS...........11

      as contemplated by the TCPA is a common question. .................11

      b. Whether USAF can demonstrate consent is a common question. ...........13

      c. Whether USAF is vicariously liable for the Collectors' calls is a ..........14

      common question. ........................................................................14

      d. Whether the Class suffered the same injuries is a common....................15

      question. .......................................................................................15

    3. Plaintiff's claims are typical of the proposed Class....................16

    4. Plaintiff and proposed Class Counsel will continue to fairly and adequately

    protect the interests of the proposed Class....................................17

  C.   The Proposed Class Satisfies Rule 23(b)(3)'s Requirements. .....................18

    1. Common questions of law and fact predominate. .......................19

    2. A class action is the superior method for resolving this case.....................21

      a. It would be prohibitively expensive for individual plaintiffs to .............22

i

prosecute their TCPA claims. .......................................................................22

b. No other litigation has already commenced...............................................23

c. Desirability of concentrating litigation to this forum. .............................24

d. Management difficulties do not exist.........................................................24

**CONCLUSION**.....................................................................................................25

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Abdeljalil v. Gen. Elec. Capital Corp.*,

4

    306 F.R.D. 303 (S.D. Cal. 2015) ................................................. 6, 8, 10, 11, 13

5

*Agne v. Papa John's Intern., Inc.*,

6

    286 F.R.D. 559 (W.D. Wash. 2012) ........................................................ 2, 14, 20

7

*Algarin v. Maybelline, LLC*,

8

    300 F.R.D. 444 (S.D. Cal. 2014) .............................................................7

9

*Amchem Prods., Inc. v. Windsor*,

10

    521 U.S. 591 (1997) ................................................................19

11

*Amgent Inc. v. CT Retirement Plans and Trust Funds*,

12

    133 S. Ct. 1184 (2013) ...........................................................19

13

*Barani v. Wells Fargo Bank, N.A.*, No. 12-cv-2999, 2014 WL 1389329 (S.D. Cal.

14

    Apr. 9, 2014) ...................................................................11

15

*Bateman v. Am. Multi-Cinema, Inc.*,

16

    623 F.3d 708 (9th Cir. 2010) ....................................................6

17

*Bee, Denning, Inc. v. Capital Alliance Grp.*,

18

    310 F.R.D. 614 (S.D. Cal. 2015) .............................................. 14, 15, 18, 19, 20

19

*Birchmeier v. Caribbean Cruise Line, Inc.*,

20

    302 F.R.D. 240 (N. D. Ill. 2014) ..............................................6

21

*Californians for Disability Rights, Inc. v. Cal. DOT*,

22

    249 F.R.D. 334 (N.D. Cal. 2008) .............................................17

23

*Carnegie v. Household Intern., Inc.*,

24

    376 F.3d 656 (7th Cir. 2004) ...................................................25

25

*CE Design v. Beaty Const., Inc.*,

26

    No. 07-cv-3340, 2009 WL 192481 (N.D. Ill. Jan. 26, 2009) ..............................16

27

28

*Connelly v. Hilton Grand Vacations Co., LLC*,
   294 F.R.D. 574 (S.D. Cal. 2013) ...........................................................6

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ............................................................22

*Demmick v. Cellco P'ship*,
   No. 06-cv-2163, 2010 WL 3636216 (D.N.J. Sept. 8, 2010)...............25

*Erica P. John Fund, Inc. v. Halliburton*,
   131 S. Ct. 2179 (2011)..................................................................6, 19

*Fraser v. Wal-Mart Stores, Inc.*,
   No. 13-cv-520, 2014 WL 7336673 (E.D. Cal. Dec. 24, 2014)...........24

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
   No. 07-cv-5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009).......1, 13

*Gen. Tel. Co. of S.W. v. Falcon*,
   457 U.S. 147 (1982)............................................................................10

*Grant v. Capital Mgmt. Servs., L.P.*,
   No. 10-cv-2471, 2013 WL 6499698 (S.D. Cal. Dec. 11, 2013).....11, 13

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................. 10, 16, 17, 18, 19

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) .............................................................16

*Holtzman v. Turza*,
   728 F.3d 682 (7th Cir. 2013) ..........................................................2, 6

*In re Ferrero Litig.*,
   278 F.R.D. 552 (S.D. Cal. 2011) .......................................................19

*In re: Cathode Ray Tub (CRT) Antitrust Litig.*,
   308 F.R.D. 606 (N.D. Cal. 2015).......................................................19

*Johnson v. Yahoo!, Inc.*,
   No. 14-cv-2028, 2016 WL 25711 (N.D. Ill. Jan. 4, 2016) ..................9

iv

*Klay v. Humana, Inc.*,
  382 F.3d 1241, 1251 (11th Cir. 2004) ..............................................24

*Kristensen v. Credit Payment Servs.*,
  12 F. Supp. 3d 1292 (D. Nev. 2014)...................................................6

*Landsman & Funk PC v. Skinder-Strauss Assocs.*,
  640 F.3d 72 (3rd Cir. 2011) ...............................................................22

*Lee v. Stonebridge Life Ins. Co.*,
  289 F.R.D. 292 (N.D. Cal. 2013).................................................6, 14

*Lehocky v. Tidel Techs., Inc.*,
  220 F.R.D. 491 (S.D. Tex. 2004) .......................................................24

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978) .............................................................17

*Lofton v. Verizon Wireless (VAW) LLC*,
  No. 13-cv-5655, 2015 WL 1254681 (N.D. Cal. Mar. 18, 2015) .........14

*Malta v. Fed. Home Loan Mortg. Corp.*,
  No. 10-cv-1290, 2013 W 444619 (S.D. Cal. Feb. 5, 2013)................11

*Malta v. Fed. Home Loan Mortg. Corp.*,
  No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 2013) .................16

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
  289 F.R.D. 674 (S.D. Fla. 2013) ...................................................7, 22

*Mendez v. C-Two Grp., Inc.*,
  No. 13-cv-5914, 2015 WL 8477487 (N.D. Cal. Dec. 10, 2015) ..................14, 15

*Meyer v. Portfolio Recovery Assocs., LLC*,
  707 F.3d 1036 (9th Cir. 2012) ..................................... 1, 13, 17, 25

*Murray v. GMAC Mortgage Corp.*,
  434 F.3d 948 (7th Cir. 2006) .............................................................23

*Oshana v. Coca-Cola Bottling Co.*,
  225 F.R.D. 575 (N.D. Ill. 2005)...........................................................7

v

*Parra v. Bashas', Inc.*,
  536 F.3d 975 (9th Cir. 2008) ..........................................................10
*Pierce v. County of Orange*,
  526 F.3d 1190 (9th Cir. 2008) ........................................................19
*Ramirez v. Trans Union, LLC*,
  301 F.R.D. 408 (N.D. Cal. 2014)....................................................23
*Santillan v. Ashcroft*,
  No. 04-cv-2686, 2004 WL 2297990 (N.D. Cal. Oct. 12, 2004)...........7
*Schwartz v. Upper Deck Co.*,
  183 F.R.D. 672 (S.D. Cal. 1999) .......................................................7
*Silbaugh v. Viking Magazine Servs.*,
  278 F.R.D. 389 (N.D. Ohio 2012) ...................................... 2, 13, 20, 21
*Smith v. Microsoft Corp.*,
  297 F.R.D. 464(S.D. Cal. 2014) .....................................................20
*Stemple v. QC Holdings, Inc.*,
  No. 12-cv-1997, 2014 WL 4409817 (S.D. Cal. Sept. 5, 2014) ............. 6, 8, 9, 11
*Tait v. BSH Home Appliances Corp.*,
  289 F.R.D. 466 (C.D. Cal. 2012)....................................................22
*Tourgeman v. Collins Fin. Servs.*,
  No. 08-CV-1392 JLS (NLS), 2011 WL 5025152 (S.D. Cal. Oct. 21, 2011) ......17
*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036, 2016 WL 1092414 (Mar. 22, 2016)..........................19
*Valentina v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ..........................................................21
*Vigus v. Southern Riverboat/Casino Cruise, Inc.*,
  274 F.R.D. 229 (S.D. Ill. 2011) ........................................................6
*Whitaker v. Bennett Law, PLLC*,
  No. 13-cv-3145, 2014 WL 5454398 (S.D. Cal. Oct. 27, 2014)................... 11, 13

vi

*Wolph v. Acer Am. Corp.*,
 272 F.R.D. 477 (N.D. Cal. 2011)........................................................20

*Zinser v. Accufix Research Inst., Inc.*,
 253 F.3d 1180 (9th Cir. 2001) ................................................. 18, 24

**Rules**

Fed. R. Civ. P. 23(a)(1)........................................................................9

Fed. R. Civ. P. 23(a)(2)......................................................................10

Fed. R. Civ. P. 23(a)(3)......................................................................16

Fed. R. Civ. P. 23(a)(4)......................................................................17

Fed. R. Civ. P. 23(b)(3)(A)–(D) .......................................................22

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014 (July 3, 2003).......................................3

In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Request of ACA Int'l for Clarification & Declaratory Ruling, 23 FCC Rcd. 559 (Jan. 4, 2008) ............................................... 20, 25

**Statutes**

47 U.S.C. §§ 227(b)(3)(A–C) ............................................................15

47 U.S.C. 227(a)(1).............................................................................12

**Other Authorities**

8 Newberg on Class Actions, § 24.25 (4th ed. 2013) ...........................16

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014 (July 3, 2003).......................................3

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Request of ACA Int'l for Clarification & Declaratory Ruling*, 23 FCC Rcd. 559 (Jan. 4, 2008) ............................................... 20, 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961 (July 10, 2015) .......................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.   **INTRODUCTION**

Plaintiff Shyriaa Henderson is one of the millions of people who took out student loans guaranteed by Defendant United Student Aid Funds, Inc. ("Defendant" or "USAF") under the Federal Family Education Loan Program ("FFELP"). She is also one of the millions to whom USAF made incessant, unauthorized calls to collect on those loans in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). As a result, she now seeks certification of a Class of those who, like her, were called by USAF's collection agents regarding FFELP loans, using predictive dialers, on a cellular phone numbers that they never gave consent to call.

The suitability of this case to class treatment is grounded in the uniformity of USAF's conduct: It worked with a single company (Navient Solutions, Inc. ("Navient"), and its predecessor) to service FFELP loans. That company used the same form contract to hire collection agencies to make the calls at issue, and those agencies all used functionally equivalent predictive dialers to make the calls. And despite numerous opportunities to do so—including in response to the Court's compelling orders—USAF has failed to identify a single instance of prior express consent to call Plaintiff or any other member of the proposed Class.

As such, this case follows in a long line of TCPA class actions throughout the country (including in this District) that have been properly certified in the face of uniform calling practices and the defendants' failure to adduce evidence of consent by absent class members. *See*, *e.g.*, *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (noting propriety of certification where defendant fails to "point to a single instance" where an individual falling within the class definition provided prior express consent to be called); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-cv-5953, 2009 WL 2581324, at *5 (N.D. Ill. Aug. 20, 2009) (holding that a defendant cannot "defeat class certification by asserting the vague possibility that some of the individuals on the anonymous lists may have perchance consented to receive the [communication]"); *See also Balbarin v. North Star*, No. 10

1

C 1846, 2011 WL 211013, at *1 (N.D. Ill. Jan. 21, 2011); *Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 393 (N.D. Ohio 2012); *Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012). *Cf. Holtzman v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Class certification is normal in litigation under [47 U.S.C.] § 227" because "the main questions, such as whether a given [communication] is an advertisement, are common to all recipients.").

Accordingly, Plaintiff respectfully requests that the Court certify the Class defined below under Rule 23(b)(3), appoint her as Class Representative for the Class, and appoint her lawyers as Class Counsel under Rule 23(g).

## II.   BACKGROUND

USAF is a "guarantor on the FFELP program," meaning that "in the event that the loan defaults, [USAF] will pay that default claim to the lender, and then . . . assume responsibility for that loan." (Marron Decl.,[1] Ex. 1 (Tharp Dep. Tr. at 12:5–16).) USAF becomes actively involved with FFELP loans in two circumstances. The first is when a loan becomes delinquent: "When a loan becomes 60 days or greater past due . . . the lender would file a request with the guarantor to help resolve the delinquency" and USAF would contract with Navient's corporate sibling, Student Assistance Corp., to "contact the borrower and makes arrangements for the borrower to bring the account current" and arrange for alternative payment options. (Ex. 1 at 13:3–22.) The second—at issue here—is when a loan defaults,[2] in which case USAF contracts with Navient, who then "contract[s] with outside collection agencies to pursue those loans for payment." (Ex. 1 at 15:8–14; *see also* Ex. 2 (Interrog. Resp.

---

[1] All references to numerical exhibit refer to the exhibits attached to the Declaration of Ronald A. Marron ("Marron Decl.") filed contemporaneously herewith.

[2] A default is distinct from delinquency insofar as a delinquent account is merely behind on payments, while a defaulted loan is one that has been delinquent for long enough to be declared "in default" by the lender, at which point the entire loan balance becomes due. *See Delinquency and Default*, FedLoan Servicing, https://myfedloan.org/manage-account/about-your-account/default-delinquency.shtml (last accessed Apr. 29, 2016).

No. 21 (identifying collections vendors used during class period).) The scope of the USAF-Navient calling operation is massive, with the FFELP default portfolio encompassing nearly $7 billion in loans. (*See* Ex. 1 (Tharp Dep Tr. at 12:22–23); Ex. 3 (Verbrugge Dep. Tr. at 44:7–19).)

To maximize the collections on billions of dollars in defaulted loans, Navient requires the collection agencies to employ a process called skip tracing, "another term for locating" new telephone numbers, which can include calling relatives and known acquaintances or using third party lookup services. (Ex. 3 (Verbrugge Dep. Tr. at 118:19–119:21); *id.* at 131:20–132:5 (noting that Navient audit guides require "vendors to skiptrace to obtain new telephone numbers."); s*ee also* Ex. 4 (2014 FFELP Audit Guide at §5(H).) Other than requiring do-not-call requests to be honored, and noting when a telephone number belongs to a deceased individual, neither Navient nor USAF place restrictions on the use of telephone numbers obtained through skip tracing. (*See* Ex. 3 (Verbrugge Dep. Tr. at 120:3–12.))

As a result of the massive scope of USAF's defaulted loan portfolio, Navient's requirement that collection agencies employ skip-tracing methods to obtain new telephone numbers for defaulted borrowers, and USAF's and Navient's minimal restrictions on the use of skip-traced numbers, millions of individuals have received calls on cellular telephone numbers they have never provided to USAF. (Declaration of Jeffrey A. Hansen ("Hansen Decl.") ¶¶ 44–45.) What's more, the vast majority of those numbers are called by collection agencies using "predictive dialers," "automated dialing system[s] that use[] a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14022 n.31 (July 3, 2003). (*See also* Hansen Decl. ¶ 34 (identifying predictive dialers used by 13 collectors).) Each of the dialers at issue here has substantially similar predictive technology, allowing USAF's agents

3

1    to maximize their collection efforts. (Hansen Decl. ¶¶ 31–34.)

2          One such borrower, called on her cellular telephone by collectors using

3    predictive dialers, is Plaintiff Shyriaa Henderson, who was called regarding two

4    FFELP loans guaranteed by USAF. (Exs. 5, 6.) Beginning in September 2010 and

5    continuing through August 2013, Plaintiff received numerous unauthorized phone

6    calls to her cellular telephone numbers ending in -0571, -3279, and -2464.

7    (Declaration of Shyriaa Henderson ("Henderson Decl.") ¶ 3.) Plaintiff did not

8    provide her wireless numbers to USAF before being called on them, and

9    furthermore, did not even have any of the wireless numbers called when she applied

10   for her FFELP loans. (*Id.*) Discovery has shown that the calls to Plaintiff on USAF's

11   behalf were made by five different vendors: Pioneer Credit Recovery, Inc., GC

12   Services Limited Partnership, General Revenue Corp., National Enterprise Systems,

13   Inc., and NCO Group, Inc." (*See* Ex. 7 (Resp. to Rog. 19) & 8 (account placement);

14   *see also* Ex. 3 (Verbrugge Dep. Tr. at 24:4–18).) Those calls to Plaintiff and the

15   Class were made with predictive dialers that each have largely identical capabilities,

16   including LiveVox, Ontario Systems – Guaranteed Contacts, Ontario Systems –

17   Contact Savvy, Noble, aQrate, DAKCS Qwikdial, Genesys/Soudbite, DPTS system,

18   and Interactive Intelligence. (Hansen Decl. ¶¶ 29–34.)

19         Plaintiff filed her putative class action on August 8, 2013, alleging that USAF

20   and its vendors' use of predictive dialers to call her violated the TCPA's restriction

21   on using an ATDS to call a cellular telephone without consent, and that USAF was

22   liable for that conduct. (Dkt. 1.) Discovery has since shown this case to be ideally

23   suited for class certification. Each and every defaulted FFELP loan during the

24   relevant time period was serviced by Navient or its predecessor Sallie Mae, Inc. (*See*

25   Ex. 9 (Fifth Restated and Amended Guarantee Services Agreement for USAF; Ex.

26   1 (Tharp Tr. at 11:18–22 (noting Navient as sole servicer).) Moreover, each call

27   placed to a putative Class member was made by a collection agency pursuant to a

28   uniform agreement with Navient. (*Id.*) Finally, each of the agencies at issue used a

4

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

1  predictive dialer with substantially similar functionality and capacity, meaning that

2  each putative Class member received a call using an ATDS.

3         Accordingly, Plaintiff Henderson now seeks certification of the Class defined

4  below, which will allow the Court to determine USAF's liability to millions of

5  individuals under the TCPA using common evidence.

6  **III.   ARGUMENT**

7         Plaintiff seeks certification of the following Class under Fed. R. Civ. P. 23(a)

8  and 23(b)(3):

9         All individuals in the United States who defaulted on an FFELP loan
   guaranteed by USA Funds and were called: (1) by General Revenue
10        Corp., National Enterprise Systems, Pioneer Credit Recovery, Inc.,
   Allied Interstate LLC, Coast Professionals Inc., Delta Management
11        Associates, Inc., Enhanced Recovery Co. LLC, Enterprise Recovery
   Sys., Inc., Collecto Inc d/b/a EOS CCA, Financial Management
12        Systems, Valentine & Kebartas, Inc., West Asset Management,
   Windham Professionals Inc.;[3] (2) relating to that defaulted FFELP loan;
13        (3) using the LiveVox,[4] Ontario Systems – Guaranteed Contacts,
14        Ontario Systems – Contact Savvy, Noble Systems , aQrate, DAKCS
   Qwikdial, Genesys/Soundbite, DPTS system, or Interactive Intelligence
15        predictive dialers;[5] (4) on a cellular telephone number not provided on
   a loan application; (5) after August 8, 2009.[6]
16

17        Rule 23 provides that a "class action may be maintained if two conditions are

18

19

20

21  ───────────────

   [3]  The aforementioned companies are hereafter referred to as the "Collectors."
22   [4]  Specifically excluded from the term "LiveVox … predictive dialer" is LiveVox's
   Human Call Initiator (or HCI) system.
23   [5]  The aforementioned pieces of dialing equipment are referred to as the "Dialers."
   [6]  Excluded from the Class are the following persons: (1) any Judge or Magistrate
24  presiding over this action and members of their families; (2) Defendant, its
   subsidiaries, parents, successors, predecessors, and any entity in which Defendant
25  or its parents have a controlling interest, and its current or former employees,
   officers, and directors; (3) persons who properly execute and file a timely request
26  for exclusion from the Class; (4) persons whose claims in this matter have been
   finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and
27  Defendant's counsel; and (6) the legal representatives, successors, and assigns of
   any such excluded persons.

28

met—the suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it must also fit into one of the three categories described in subdivision (b)." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). Rule 23(b)(3) requires a plaintiff to show that common question of law or fact predominate over any issues affecting only individual members of the proposed class, and that maintaining the lawsuit as a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3); *see also Erica P. John Fund, Inc. v. Halliburton*, 131 S. Ct. 2179, 2184 (2011).

Notably, courts throughout the country, including within this District, have regularly certified classes asserting TCPA claims like those at issue here. *See*, *e.g.*, *Stemple v. QC Holdings, Inc.*, No. 12-cv-1997, 2014 WL 4409817 (S.D. Cal. Sept. 5, 2014) (certifying TCPA class action against payday lender); *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303 (S.D. Cal. 2015) (certifying TCPA class action against bank); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013) (TCPA text message class); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292 (D. Nev. 2014) (TCPA text message class); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N. D. Ill. 2014) (TCPA prerecorded voice class); *see also Holtzman*, 728 F.3d at 684 ("Class certification is normal in litigation under [47 U.S.C.] § 227" because "the main questions, such as whether a given [communication] is an advertisement, are common to all recipients.").

In those instances where TCPA classes have not been certified, individual issues of consent have predominated. For example, certification has been denied where (unlike here) the plaintiff fails to propose a viable method for avoiding individual inquiries into the varied forms and scope of class members' consent to be called. *See*, *e.g.*, *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 578 (S.D. Cal. 2013); *Vigus v. Southern Riverboat/Casino Cruise, Inc.*, 274 F.R.D. 229, 237 (S.D. Ill. 2011) (denying certification where proposed class was "not a list of homogenously unconsenting recipients."). By contrast, when (as in this case) the

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

proposed class definition "weed[s] out those individuals who may have consented to be called," "the Court will not have to inquire as to whether each putative class member may be subject to an independent consent defense," and certification is typically granted. *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 686 (S.D. Fla. 2013).

## A.   The Proposed Class is Ascertainable.

As an initial matter and "[t]hough not explicitly stated in Rule 23, courts have held that the class must be adequately defined and clearly ascertainable . . . ." *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 454 (S.D. Cal. 2014) (collecting cases). "Although the exact identities of the class members need not be specified at the class certification stage, 'the proposed class must be sufficiently definite in order to demonstrate that the class actually exists.'" *Stemple*, 2014 WL 4409817, at *4 (quoting *Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 580 (N.D. Ill. 2005)); *see also Santillan v. Ashcroft*, No. 04-cv-2686, 2004 WL 2297990, at *3 (N.D. Cal. Oct. 12, 2004). Put differently, it must be "administratively feasible for the court to determine whether a particular individual is a member." *Algarin*, 300 F.R.D. at 454 (internal citations and quotations omitted); *see also  Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679–80 (S.D. Cal. 1999) ("[A]n identifiable class exists if its members can be ascertained by reference to objective criteria, but not if membership is contingent on a prospective member's state of mind.").

Here, the proposed Class is ascertainable and avoids the common pitfalls because its definition is specific, objective, and not dependent on USAF's ultimate liability. Specifically, whether any given individual is a member of the proposed Class can be determined by answering five objective, yes-or-no questions:

(1)   Did the Collectors place a call to the individual's cell phone number?

(2)   Did the Collector use the Dialers to place the call?

(3)   Did the call relate to a FFELP loan guaranteed by USAF on which the individual defaulted?

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

(4)     Was the cell phone number called provided on a loan application?

(5)     Was the call made on or after August 8, 2009?

Further, each of these questions can be answered by reference to computerized records maintained by USAF, Navient, and the Collectors. (*See*, *e.g.*, Ex. 3 (Verbrugge Dep. Tr. at 21:18–24:20 (describing information available in Navient's EAGLE recordkeeping system)); Exs. 10, 11, 12 (Declarations from National Enterprise Systems, Inc., Windham Professionals, Inc. and LiveVox, Inc., respectively); Ex. 8.) And on top of that, each individual class member can be identified by name, social security number, address(es), telephone number(s), and other demographic data within USAF's and Navient's own records as well. (*See*, *e.g.*, Exs. 5, 6; Ex. 13 (transaction history).

Courts in this District and elsewhere routinely find TCPA classes based on objective membership criteria like these to be ascertainable. For instance, in *Abdeljalil v. Gen. Elec. Cap. Corp.*, 306 F.R.D. 303 (S.D. Cal. Mar. 26, 2015), The Honorable John A. Houston certified a class of individuals who (1) received at least two calls on their cell phones; (2) using an ATDS or prerecorded voice; (3) during a specific time period; (4) who were not customers at the time of the calls; (5) where the defendant's account notes contained specific terminology designating that the individual called was not the account holder. Finding that "class members likely can be determined by objective criteria based on defendant's business records," and that "class members will likely be able to identify whether they received prerecorded calls from defendant," Judge Houston rejected the defendant's contention that the class was unascertainable. *Id.* at 308. Judge Houston also found the defendant's challenges to the plaintiff's four-step, records-review-based process for identifying class members "for the most part, premature and speculative," and an insufficient reason to deny certification. *Id.* at 308 n.4.

Likewise, in *Stemple*, The Honorable Cynthia Bashant certified a class of individuals who were called after their cell phone numbers were listed as references

8

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

or employers on a loan application, and who did not separately provide those numbers to the defendant. *See* 2014 WL 4409817. After noting that ascertainability does not require actual identification of class members, Judge Bashant found that the proposed class definition was sufficient because it was "definite enough that it [was] administratively feasible for the Court to ascertain whether an individual [was] a member of the class." *Id.* at 8 (quoting *GM Sign, Inc.*, 2009 WL 2581324, at *4.

In line with *Abdeljalil* and *Stemple*, the Class here is readily ascertainable because the definition is objective and precise, and will allow the Court to identify whether any given individual is a member. Although "[n]othing more is required," *Johnson v. Yahoo!, Inc.*, No. 14-cv-2028, 2016 WL 25711, at *2 (N.D. Ill. Jan. 4, 2016), Plaintiff can go the extra step here and, in fact, identify Class members by name, address and even social security number from within Defendant's records. *Cf. Stemple*, 2014 WL 4409817, at *4.

**B.    The Proposed Class Satisfies Rule 23(a)'s Requirements.**

Next, the proposed Class also satisfies each of Rule 23(a)'s prerequisites to certification. As explained below, the proposed Class includes millions of individuals (numerosity) who share several common legal and factual questions that can be answered for the Class as a whole based upon common proof (commonality). Further, Plaintiff's claims are typical of those of the other members of the Class (typicality), and she and her counsel are more than adequate to represent the interests of the absent members of the Class (adequacy).

**1.    The Class consists of millions of individuals.**

First, Rule 23(a)(1) requires that a class be so numerous that "joinder of all members [would be] impracticable." Fed. R. Civ. P. 23(a)(1). "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Stemple*, 2014 WL 4409817, at *4 (internal quotations omitted).

Here, given the millions of unique cellular telephone numbers called by

9

USAF's vendors, (Hansen Decl., ¶¶ 41–45), and the pervasive skip tracing practices utilized by them, (Ex. 4 (2014 FFELP audit guide, Section H "skip activity"); Ex. 3 (Verbrugge Dep. at 118:9–22, 119:14–19, 131:20–132:5); *see also*, *e.g.*, Ex. 14 (exemplar Collector contract between Pioneer Credit Recovery, Inc. and Sallie Mae, Inc. PL-3PARTY PRODUCITON005529 at ¶ 5)), there is no question that more than 40 individuals fall within the proposed Class definition. *See Abdeljalil v. Gen. Elec. Cap. Corp.*, 306 F.R.D. 303, 308 (S.D. Cal. 2015) ("Based on the record presented,"—which included a showing that defendant had more than 340 million account holders and a third party "made 2% of [defendant's] calls . . . using an automated dialer"—"it is clearly reasonable that at least 40 class members can be identified from defendant's 340 million account holders."). In fact, Defendant does not dispute that numerosity is satisfied in this case. (*See* Dkt. No. 136 at 2.)

### 2.   Class members share common issues of law and fact.

Next, Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[,]'" *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157 (1982)), however, "[a]ll questions of law and fact need not be common to satisfy the rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* The common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2545. Moreover, "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008).

Given that cases such as this one almost always arise from standardized

10

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

conduct—the alleged practice of placing calls to cellular telephones using an ATDS—Courts within this District routinely find commonality satisfied in TCPA class actions, especially those involving the use of an ATDS or prerecorded voice to call consumers' cellular phones. *See*, *e.g.*, *Whitaker v. Bennett Law, PLLC*, No. 13-cv-3145, 2014 WL 5454398, at *5 (S.D. Cal. Oct. 27, 2014) (finding "core issue" of "whether . . . an ATDS or prerecorded or artificial voice message [was used] to make unsolicited calls" was "common to all putative class members, and its resolution [was] central to the validity of each of their claims"); *Grant v. Capital Mgmt. Servs., L.P.*, No. 10-cv-2471, 2013 WL 6499698, at *3 (S.D. Cal. Dec. 11, 2013) (common questions include "(1) whether the class member received a telephone call to the class member's cellular telephone from Defendant; (2) whether Defendant used an automated telephone dialing system in violation of the TCPA; (3) whether Defendant utilized a prerecorded or artificial device; and (4) whether Defendant had express consent to call the class member's cellular telephone."); *see also Barani v. Wells Fargo Bank, N.A.*, No. 12-cv-2999, 2014 WL 1389329, at *2 (S.D. Cal. Apr. 9, 2014); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 W 444619, at *2 (S.D. Cal. Feb. 5, 2013); *Abdeljalil*, 306 F.R.D. at 308–09 (S.D. Cal. 2015); *Stemple*, 2014 WL 4409817, at *8–9.

This case is no different. Here, as with numerous other autodialer class actions under the TCPA, the claims of Plaintiff and the members of the proposed Class all arise from a single common contention: that USAF violated the TCPA by having its vendors use an ATDS to make collection calls to their cellular telephones without consent. USAF's uniform conduct gives rise to several common questions, the answers to which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551.

a.   Whether the Collectors' dialing equipment constitutes an ATDS as contemplated by the TCPA is a common question.

The first common question is whether the calls at issue were placed with equipment

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

that meets the statutory definition of an ATDS.[7] Here, all nine dialers at issue have substantially similar underlying functionality, and each has been described as a "predictive dialer." (Hansen Decl. ¶¶ 29–34.)[8] Both the Ninth Circuit and the FCC have recognized that predictive dialers fit the TCPA's definition of an ATDS:

> The FCC further defined "automatic telephone dialing system" to include predictive dialers. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 18 FCC Rcd. 14014, 14091–93 (July 3, 2003). "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Id.* at 14091. "As one commenter points out, the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective. The basic function of such equipment, however, has not changed—the *capacity* to dial numbers without human intervention." *Id.* at 14092. PRA's predictive dialers fall

---

[7] An ATDS refers to "equipment which has the capacity—(A) to store or produce numbers to be called, using a random or sequential number generator, and (B) to dial such numbers." 47 U.S.C. § 227(a)(1); *see also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961, 7974 (July 10, 2015) (clarifying that an ATDS "need only have the 'capacity' to dial random and sequential numbers . . . [not] the 'present ability' to do so").

[8] *See also* Ex. 15 (USAF-3DPARTY0000002); Ex. 16 (USAF0000040); Ex. 17 (NSI-GRC0000031 ("The Guaranteed Contacts product is a predictive dialer …."); Ex. 18 (PL-3PARTY PRODUCTION000179 / NES – 00101; PL-3PARTY PRODUCTION000182 / NES – 000104); PL-3PARTY PRODUCTION000193-194 / NES – 000115-116); Ex. 19 (USAF-3DPARTY00101 (describing aQrate dialer as a "Predictive dialer system" with "Outbound Predictive Dialing" functionality)); Ex. 20 (PL-3PARTY PRODUCTION005662 / ALLIED_00019); Ex. 21 (PL-3PARTY PRODUCTION006897 / ERS00204); Ex. 22 (PL-3PARTY PRODUCTION006241 / Coast000095); Ex. 23 (PL-3PARTY PRODUCTION010025 / EOS 000457); Ex. 24 (PL-3PARTY PRODUCTION019614 & PL-3PARTY PRODUCTION019617); Ex. 25 (NSI-GRC-PCR000027 & NSI-GRC-PCR000044); *see also* Ex. 26(Noble Dialer pdf); https://www.dakcs.com/solutions/predictive-dialing-software/ (last visited on May 4, 2016; http://www.genesys.com/soundbite/hosted-dialer/core-features (last visited on May 4, 2016.

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

squarely within the FCC's definition of "automatic telephone dialing system."

*Meyer*, 707 F.3d at 1043. Because each dialer used to call the Class is a predictive dialer, the question of whether they satisfy the TCPA's ATDS requirement can be answered uniformly, and in the affirmative. *See, e.g.*, *Abdeljalil*, 306 F.R.D. at 308–09; *Whitaker*, 2014 WL 5454398, at *5; *Grant*, 2013 WL 6499698, at *3.

> b. <u>Whether USAF can demonstrate consent is a common question.</u>

A second common question for the Class as a whole is whether USAF had prior express consent to place (through the Collectors) the calls at issue. Here, the only evidence of prior express consent USAF has provided would come from the provision of a cellular telephone number on student loan applications. (For example, USAF has produced the original promissory notes for Ms. Henderson (which provide numbers different than the cellular numbers called by the Collectors), Exs. 5 and 6.) The Class definition, however, excludes individuals who were called solely on numbers provided on loan applications. Thus, by excluding from the Class individuals for whom USAF arguably documented prior express consent to call, the argument that individualized inquiries into consent will be necessary is untenable.

As courts considering certification of TCPA claims have repeatedly stated, a defendant cannot "defeat class certification by asserting the vague possibility that some of the individuals on the anonymous lists may have perchance consented to receive the [communication.]" *G.M. Sign., Inc.*, 2009 WL 2581324, at *5 (collecting cases). In *Meyer*, the Ninth Circuit recognized that where the defendant fails to "point to a single instance" where an individual *falling within the class definition* provided prior express consent to be called, individual issues of consent do not defeat commonality. *Meyer*, 707 F.3d at 1042; *see also Balbarin*, 2011 WL 211013, at *1 (finding consent to be a common issue where class definition "exclude[d] individuals who provided their numbers to either defendant or the original creditor."); *see also Silbaugh v.*, 278 F.R.D. at 393 ("Having produced no evidence

13

that any individual consented to receive the [calls in question] . . . [a] defendant is unable to realistically argue that individual issues regarding consent outweigh . . . commonality."); *Agne*, 286 F.R.D. at 567 (mere "speculation that [proposed class members] may have given their express consent to receive [calls] is not sufficient to defeat class certification."); *Kristensen*, 12 F. Supp. 3d at 1307 ("[C]ourts should ignore a defendant's argument that proving consent necessitates individualized inquiries in the absence of any evidence that express consent was actually given.")

Because the proposed Class definition excludes those individuals who provided prior express consent, consent can be commonly found lacking.

c.   <u>Whether USAF is vicariously liable for the Collectors' calls is a common question.</u>

A third common question is whether USAF is vicariously liable for the unlawful calls to the Class. Courts analyzing vicarious liability in putative TCPA class actions regularly find it to be a common question, due to the uniformity of the relationship between the alleged principal and agent, vis-à-vis the proposed Class members. *See*, *e.g.*, *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 628 (S.D. Cal. 2015) (Bashant, J.) (finding common question regarding defendant's vicarious liability to predominate over individualized issues); *Mendez v. C-Two Grp., Inc.*, No. 13-cv-5914, 2015 WL 8477487, at *4 (N.D. Cal. Dec. 10, 2015) (noting regularity of courts finding commonality where questions presented include use of an ATDS, vicarious liability, and prior express consent) (citing *Lee*, 289 F.R.D. at 294–94); *see also Lofton v. Verizon Wireless (VAW) LLC*, No. 13-cv-5655, 2015 WL 1254681, at *5 (N.D. Cal. Mar. 18, 2015) (finding named plaintiff to have standing to assert claims on behalf of putative class where "[a] *single* defendant . . . [stood] accused of similar vicarious TCPA violations made against a class of individuals by its purported agents.") (emphasis in original).

Here, USAF's liability to each member of the Class will depend on whether it can be vicariously liable for its agents' conduct. In this case, that question can be

14

answered uniformly (in the affirmative)[9] for a variety of reasons. First, USAF contracted exclusively with Navient (and its predecessors Sallie Mae, and before that USA Group) to "service" USAF-guaranteed loans. (Ex. 9.) Moreover, Navient employed standardized contracts with the Collectors. (*See* Ex. 3 (Verbrugge Dep. Tr. at 149:6–151:11); Exs. 14, 27-37 (various NSI vendor contracts).) Thus, regardless of which Collector called a given Class member, the facts and circumstances governing USAF's involvement in the alleged misconduct (and its ultimate liability for the calls) are the same. Accordingly, USAF's vicarious liability presents a common question, which will be answered for the Class as a whole. *See Bee, Denning, Inc.*, 310 F.R.D. at 628; *Mendez*, 2015 WL 8477487, at *4.

> d.   Whether the Class suffered the same injuries is a common question.

A fourth common question is whether USAF's standardized conduct resulted in an injury entitling each Class member to statutory damages under the TCPA. Where, as here, a defendant uses the same equipment to place substantially similar calls to class members without their consent, all class members suffer the same injury. *See, e.g.*, *Birchmeier*, 302 F.R.D. at 251 (where class members, by definition, "received the same calls . . . made by or for one of the defendants, using the same . . . technology," there was "a common alleged injury presenting a common question.") Under the TCPA, this injury results in an identical measure of statutory damages. 47 U.S.C. §§ 227(b)(3)(A–C). Thus, calculating damages for each Class member is not a difficult task and requires nothing more than simple multiplication. Whether their injury entitles them to statutory damages, and whether USAF's conduct was willful or knowing, presents another question common to the Class.

In short, common questions loom over this case, any one of which alone satisfies Rule 23(a)(2). *See Wal-Mart*, 131 S. Ct. at 2562 (noting that "even a single

---

[9]  Indeed, USAF and Navient have gone so far as to commingle their document productions in this action, which—in conjunction with its other conduct—makes clear that it they can and do act on each other's behalf. (*See* Dkt. No. 136 at 1–2.)

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

common question will do") (citation and internal quotations omitted).

### 3.   Plaintiff's claims are typical of the proposed Class.

Next, Rule 23(a)(3) requires that a putative class representative have "claims or defenses that are typical of the claims or defenses of the class." *See* Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Stemple*, 2014 WL 4409817, at *5 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The typicality requirement is 'permissive' and requires only that the named plaintiff's claims 'are reasonably coextensive with those of the absent class members.'" *Stemple*, 2014 WL 4409817, at *5 (quoting *Hanlon*, 150 F.3d at 1020); *see also* 8 Newberg on Class Actions, § 24.25 (4th ed. 2013) (typicality "does not mean that the claims of the class representative[s] must be identical or substantially identical to those of the absent class members."). In the TCPA context, courts consistently find a named plaintiff's claims typical when the class's claims are "based upon the same legal theory, *i.e.*, violation of the TCPA." *CE Design v. Beaty Const., Inc.*, No. 07-cv-3340, 2009 WL 192481, at *5 (N.D. Ill. Jan. 26, 2009); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 WL 444619, at *2 (S.D. Cal. Feb. 2013) (finding plaintiff's claim typical when it "[arose] from the same factual basis as that of the class," and utilized the same legal theory under the TCPA).

Because USAF's standardized conduct gives rise to all claims in this action— which are based on a single legal theory—Henderson's claims are typical of those of her fellow Class members. Like the other Class members, Henderson defaulted on a FFELP loan guaranteed by USAF, was called by Collectors regarding that defaulted loan, using the Dialers, on a cellular telephone number that she had not provided on a loan application. (*See* Exs. 38 & 39; Ex. 7 (Interrog. Resp. No.3; Ex. 1 (Tharp Dep. Tr. at 133:6–16; Exs. 5 & 6; Ex. 13; Ex. 3 (Verbrugge Dep. Tr. at

16

21:18–24:20.) As a result Henderson's and the Class's claims arise from an identical legal theory—that USAF is liable for its Collectors' violations of the TCPA.

Accordingly, there can be no serious dispute that Henderson's claims are typical of the Class's. *See Meyer*, 707 F.3d at 1041 ("[R]epresentative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.") (internal quotations omitted). *See also Knutson v Schwan's Home Serv., Inc.*, No. 13-cv-0964, 2013 WL 4774763, at *8 (S.D. Cal. Sept. 5, 2013) ("Plaintiffs have suffered the same or similar injury as the putative class members," where they "assert[ed] they received autodialed and/or prerecorded calls from Defendants without their prior express consent, and the proposed class [was] defined to include individuals who received the same type of calls.").

## 4.   <u>Plaintiff and proposed Class Counsel will continue to fairly and adequately protect the interests of the proposed Class.</u>

Finally, Rule 23(a)(4) requires that the representative plaintiff "will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). "Adequate representation is usually presumed in the absence of contrary evidence." *Tourgeman v. Collins Fin. Servs.*, 2011 WL 5025152, at * 13 (S.D. Cal. Oct. 21, 2011). "Resolution of two questions determines legal adequacy: (1) [whether] the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) [whether] the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class[.]" *Hanlon*, 150 F.3d at 1010 (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

Plaintiff readily meets the adequacy requirement. As noted above, she has suffered the same injury as her fellow Class members—the receipt of autodialed calls on a cellular number she did not provide to USAF or any of its Collectors. Thus, she has the same interests as the other members: putting an end to Defendant's unlawful calling practices and obtaining the other relief to which she and the Class are entitled under the TCPA. She has no hidden agendas or conflicts of interest that

render her inadequate to represent the Class. Moreover, she has demonstrated her commitment to pursuing her claims on the Class's behalf by assisting her attorneys with the investigation of this matter and preparation of her complaint, providing her attorneys with documentation to support her claims, assisting in discovery, and otherwise being actively involved in all aspects of the litigation. (Henderson Decl., ¶¶ 4–6.) Thus, through her continued participation in the case, Henderson more than satisfies the adequacy requirement. *Hanlon*, 150 F.3d at 1010.

As to Rule 23(g)'s requirement that a court certifying a class also appoint class counsel, Proposed Class Counsel—Benjamin H. Richman of Edelson PC, and Ronald A. Marron of the Law Offices of Ronald A. Marron—easily satisfy the adequacy requirement. In particular, Plaintiff's counsel have regularly engaged in major complex litigation and have extensive experience in consumer class actions involving consumer privacy and technology in general, and TCPA claims in particular. (*See* Edelson PC Firm Resume, attached as Exhibit A to the Declaration of Benjamin H. Richman, filed contemporaneously herewith; *see also* Marron Decl.)

For these reasons, Plaintiff's counsel have been—and will continue to be—adequate counsel for the Class, and should be appointed pursuant to Fed. R. Civ. P. 23(g). *See Bee, Denning, Inc.*, 310 F.R.D. at 627 (finding class counsel adequate in TCPA case where they "provided undisputed documentation of their experience litigating consumer class actions in general, and TCPA class actions in particular, to demonstrate their competency.") (citing *Knutson*, 2013 WL 4774763, at *8).

## C.     The Proposed Class Satisfies Rule 23(b)(3)'s Requirements.

In addition to Rule 23(a)'s requirements, the proponent of class certification must show that a proposed class falls within at least one of the three subsections of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Here, Plaintiff seeks certification of the Class under Rule 23(b)(3), which provides for class treatment where: (1) questions of law and fact common to the class predominate over any questions affecting only individuals, and (2) the class action

mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Pierce v. County of Orange*, 526 F.3d 1190, 1197 n.5 (9th Cir. 2008). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be best served by settling their differences in a single action." *In re Ferrero Litig.*, 278 F.R.D. 552, 559 (S.D. Cal. 2011) (citing *Hanlon*, 150 F.3d at 1022)).

### 1.   <u>Common questions of law and fact predominate.</u>

The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997), and is met where the common questions of law or fact "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance tests the balance between common questions, where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof," and individual ones, which call for "evidence that varies from member to member." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 2016 WL 1092414, at *7 (Mar. 22, 2016) (citations and internal quotations omitted). Although determining whether questions of law or fact predominate "begins, of course, with the elements of the underlying cause of action," *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011), "proving predominance does not require plaintiffs to prove that every element of a claim is subject to classwide proof: they need only show that common questions predominate over questions affecting only individual class members." *In re: Cathode Ray Tub (CRT) Antitrust Litig.*, 308 F.R.D. 606, 612 (N.D. Cal. 2015) (citing *Amgent Inc. v. CT Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1196 (2013)). The predominance requirement "is satisfied when a common nucleus of facts and law is the central feature of the litigation, and when 'Plaintiffs have shown there are plausible classwide methods of proof available to prove their claims.'" *Bee, Denning, Inc.*, 310 F.R.D. at 628 (quoting *Wolph v. Acer Am. Corp.*,

272 F.R.D. 477, 487 (N.D. Cal. 2011)).

Here, common issues predominate because each element of Plaintiff's and the Class's claims can be proven by common evidence. As described above, each Class member was called with functionally equivalent predictive dialers, meaning that the ATDS element of the Class's claims is resolved uniformly. (Hansen Decl. ¶¶29–34.) The next element of the Class's TCPA claims—whether each member received the calls on cellular number—will likewise lack any individual issues, because the Class definition is limited to persons who received calls on cellular telephone numbers. Finally, in a TCPA action such as this one, individualized damages are a non-issue given that the TCPA provides for a uniform measure of statutory damages. *See Birchmeier*, 302 F.R.D. at 243 ("[D]efendants' contention about calculation of individual damages is a non-issue in terms of predominance. Plaintiffs are asking only for statutory damages, which eliminates individual variations.").

Nor does the issue of consent raise individual questions that predominate over the common ones. Although "debt collectors bear the burden of proving consent," *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 472 (S.D. Cal. 2014) (Sammartino, J.) (citing *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Request of ACA Int'l for Clarification & Declaratory Ruling,* 23 FCC Rcd. 559, 565 (Jan. 4, 2008)), when evidence of consent is uniformly absent, it is a common question capable of class-wide resolution. *See Balbarin*, 2011 WL 211013, at *1 (finding consent to be a common issue where class definition "exclude[d] individuals who provided their numbers to either defendant or the original creditor"); *see also Silbaugh*, 278 F.R.D. at 393 ("Having produced no evidence that any individual consented to receive the [calls in question] . . . [a] defendant is unable to realistically argue that individual issues regarding consent outweigh . . . commonality."); *Agne*, 286 F.R.D. at 567 (mere "speculation that [proposed class members] may have given their express consent to receive [calls] is not sufficient to defeat class certification."); *Bee, Denning, Inc.*, 310 F.R.D. at 629 ("Where a party

20

has not submitted any evidence of . . . express consent, courts will not presume that resolving such issues requires individualized inquiries.") (collecting cases).

As explained above, the proposed Class here consists only of those individuals for whom USAF has absolutely no evidence of prior express consent. Stated differently, the only evidence of consent that USAF has offered in this case is that certain of its debtors provided their phone numbers on their loan applications—those individuals and phone numbers have been expressly excluded from the Class. As such, there is "no evidence that any [member of the Class] consented to receive the [calls]" and USAF "is unable to realistically argue that individual issues regarding consent outweigh commonality." *Silbaugh*, 278 F.R.D. at 394; *see also Johnson*, 2016 WL 25711, at *7 (finding predominance met where defendant had "not presented specific evidence showing that a significant percentage of the putative class" consented to receive text messages by agreeing to terms of service, and noting that "an opposition based on theory, not evidence, is not a weighty objection."); *Kristensen*, 12 F. Supp. 3d at 1307 ("[C]ourts should ignore a defendant's argument that proving consent necessitates individualized inquiries in the absence of any evidence that express consent was actually given.").

Accordingly, because Plaintiff has defined the Class in a narrow fashion that avoids the presence of any individualized issues, the numerous common issues facing the Class predominate.

### 2. A class action is the superior method for resolving this case.

Rule 23(b)(3)'s superiority requirement seeks to assure that a class action is the "most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175–76 (9th Cir. 2010). "'Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation,' and it is superior 'if no realistic alternative exists.'" *Stemple*, 2014 WL 4409817, at *6 (quoting *Valentina v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996)).

In assessing the desirability of class-wide litigation, the Court considers the following factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D). Thus, "[t]his superiority requirement is met '[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis.'" *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 486 (C.D. Cal. 2012) (quoting *Wolin, LLC*, 617 F.3d at 1175).

a.   It would be prohibitively expensive for individual plaintiffs to prosecute their TCPA claims.

As courts nationwide have recognized, while "the TCPA [has] built-in incentives for aggrieved plaintiffs to litigate individually . . . it does not follow that such claims are inappropriate for class treatment." *Manno,* 289 F.R.D. at 690 (citing *Landsman & Funk PC v. Skinder-Strauss Assocs.,* 640 F.3d 72, 94–95 (3rd Cir. 2011); *see also Knutson*, 2013 WL 4774763, at *10 ("Given the relatively minimal amount of damages that an individual may recover in suing for violation of the TCPA . . . the Court finds a class action would achieve Plaintiffs' objective better than if class members were required to bring individual actions.") (citing *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001). "While nuisance calls from debt collectors may not be 'the most egregious of wrongs policed by Congress,' [the courts should not] assume 'that individual suits [will] deter large commercial entities as effectively as aggregated class actions and that individuals would be as motivated—or even more motivated— to sue in the absence of the class action vehicle.'" *Manno*, 289 F.R.D. at 690 (quoting *Landsman & Funk PC*, 640 F.3d at 95).

In that light, there's no question a class action is the superior method for

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

resolving this controversy. Plaintiff's and the Class's claims involve identical alleged violations of the TCPA and are subject to generalized proof. Moreover, absent a class action, most members would find the cost of litigating their claims—which are statutorily limited to a maximum of $500 (or $1,500) per call—to be prohibitive. To be sure, given the small amount of damages relative to the resources necessary to litigate these claims, it is unlikely any significant number of Class members would be able to obtain redress for USAF's misconduct, or that USAF would be deterred from proceeding with that same conduct.

By way of example, Ms. Henderson has litigated this matter for almost three years, served several sets of written discovery requests, taken numerous depositions, engaged in extensive discovery motion practice, served multiple third-party subpoenas, and engaged an expert. Furthermore, just as Plaintiff must ultimately prove at trial that the Collectors' dialers satisfy the ATDS requirements, an individual plaintiff too would need to prove the use of an ATDS used to make calls, which is prohibitively difficult and costly for an individual plaintiffs as it generally requires the engagement of an expert to analyze the system and refute evidence put forth that the dialer is not an ATDS.  Thus, the idea that an individual plaintiff could take on such tasks, which have been absolutely necessary to the prosecution of the case, is not realistic. *See, e.g., Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("When a few class members' injuries prove to be substantial, they may opt out and litigate independently. Only when all or almost all of the claims are likely to be large enough to justify individual litigation is it wise to reject class treatment altogether.") (citations omitted).

And of course, prosecution of thousands of identical claims would be judicially inefficient. *See Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 424 (N.D. Cal. 2014) ("It is more efficient to adjudicate the claims as a class action rather than thousands of individual actions.").

        b.   <u>No other litigation has already commenced.</u>

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

The superiority requirement "is [also] intended to serve the purpose of assuring judicial economy and reducing the possibility of multiple lawsuits." *Zinser,* 253 F.3d at 1191 (citation and internal quotation marks omitted). Thus, a class action may be inappropriate if multiple actions are already pending due to the risk of inconsistent judgments. *Id.* (citation and internal quotation marks omitted). The prior existence of multiple suits could also signal that individual actions are sufficient. *Id.* (citation and internal quotation marks omitted). Here, there are no other class cases pending against USAF for its unlawful collection calls, and only a single individual action, *see Shaw v. Navient Corp.*, No. 15-cv-2028 (M.D. Fla.); thus, this factor supports certification.

c.    Desirability of concentrating litigation to this forum.

Further, "it is desirable to concentrate claims in a particular forum when that forum has already handled several preliminary matters." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 533 U.S. 639 (2008). Thus, because this case has been pending for almost three years in this District, with numerous motions decided by this Court and The Honorable Barbara L. Major, continued litigation in this forum is superior to litigation dispersed throughout the country. *See also Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 510–11 (S.D. Tex. 2004) ("[T]he value of concentrating litigation in this forum is great as the Court has already made several rulings in this case thus far.").

d.    Management difficulties do not exist.

"The Ninth Circuit, along with at least seven other circuits, has held that there is a presumption against dismissing a class action on manageability grounds or that such dismissals or typically disfavored." *Fraser v. Wal-Mart Stores, Inc.*, No. 13-cv-520, 2014 WL 7336673, at *8 (E.D. Cal. Dec. 24, 2014) (collecting authorities); *compare Zinser*, 253 F.3d at 1192 (only "when the complexities of class action treatment outweigh the benefits of considering common issues in one trial, [is] class action treatment [] not the 'superior' method of adjudication.") (citations omitted).

24

In any event, the management of this class action "would create relatively" fewer, rather than "more[,] management problems than any other alternative." *Demmick v. Cellco P'ship*, No. 06-cv-2163, 2010 WL 3636216, at *10 (D.N.J. Sept. 8, 2010). The class device will allow millions of individuals to resolve their disputes with USAF in a single proceeding, on the basis of the same evidence that would otherwise have to be presented time and again in individual actions. *See Carnegie v. Household Intern., Inc.*, 376 F.3d 656, 660–61 (7th Cir. 2004) ("The more claimants there are, the more likely a class action is to yield substantial economies in litigation."). Moreover, there is no indication of any of the massive "unwield[iness]" necessary before the class device "can be pronounced an inferior alternative . . . to no litigation at all." *Id.* That is because USAF, as a debt collector, has wholly failed to satisfy its burden to demonstrate evidence of prior express consent to make the calls at issue, *see* 2008 Order at 565; *Meyer,* 707 F.3d at 1042, meaning that no individualized consent inquiry is necessary. And, the class notice process (and judgment distribution process, should it come), will be administratively simple, as USAF's and Navient's own records provide the information necessary to contact Class members. (*See*, *e.g.*, Exs. 5 & 6; Ex. 8.)

## CONCLUSION

For the reasons stated above, Plaintiff Shyriaa Henderson respectfully requests that the Court enter an order certifying the proposed Class pursuant to Fed. R. Civ. P. 23(b)(3); naming her as the representative for the Class; naming her counsel, Benjamin H. Richman of Edelson PC and Ronald A. Marron of the Law Offices of Ronald A. Marron as Class Counsel pursuant to Fed. R. Civ. P. 23(g); and entering any such other relief as the Court deems reasonable and just.

**SHYRIAA HENDERSON**, individually and on behalf of all others similarly situated,

Date: May 4, 2016          By: *Ronald A. Marron*

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

Ronald A. Marron (SBN 175650)
ron@consumersadvocates.com
Alexis Wood (SBN 270200)
alexis@consumersadvocates.com
Kas Gallucci (SBN 288709)
kas@consumersadvocates.com
LAW OFFICES OF RONALD A. MARRON
651 Arroyo Drive
San Diego, California 92103
Tel: 619.696.9006
Fax: 619.564.6665

Benjamin H. Richman (Admitted *pro hac vice*)
brichman@edelson.com
J. Dominick Larry (Admitted *pro hac vice*)
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

26