Vedder Price (CA), LLP
Lisa M. Simonetti (State Bar No. 165996)
lsimonetti@vedderprice.com
1925 Century Park East, Suite 1900
Los Angeles, California 90067
T:  +1 (424) 204 7700
F:  +1 (424) 204 7702

Vedder Price P.C.
Andrew M. Barrios (admitted pro hac vice)
abarrios@vedderprice.com
Bryan K. Clark (admitted pro hac vice)
bclark@vedderprice.com
222 N. LaSalle Street
Chicago, Illinois 60601
T: + (312) 609-7500
F: + (312) 609-5005

Attorneys for Defendant
UNITED STUDENT AID FUNDS, INC.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHYRIAA HENDERSON,<br><br>                Plaintiff,<br><br>        v.<br><br>UNITED STUDENT AID FUNDS,<br>INC.,<br><br>                Defendant. | Case No. 3:13-cv-1845<br><br>**DEFENDANT UNITED STUDENT AID FUNDS, INC.'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>Hearing date:   September 29, 2016<br>Time:               1:30 p.m.<br>Location:         Courtroom 4A |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     BACKGROUND .................................................................................. 4

        A.      Henderson .......................................................................... 5

        B.      USAF, NSI, And The Collectors ........................................ 5

        C.      The Instant Action ............................................................. 6

        D.      The Motion and Hansen's Declaration ............................... 7

III.    ARGUMENT ....................................................................................... 9

        A.      Contrary To The Positions Asserted By Hansen, Whose
                Testimony Should Be Stricken, Henderon's Proposed Class Is
                Not Ascertainable ............................................................. 11

                1.  Whether The Collectors Placed A Call To the
                    Individual's Cell Phone Number ............................... 12

                2.  Whether The Collector Used [An ATDS] To Place The
                    Call .......................................................................... 14

        B.      Henderson Does Not Demonstrate Commonality Under Rule
                23(A)(2) Or Predominance Under Rule 23(B)(3) ........................ 16

                1.  Whether The [Telephone Systems] Constitute ATDS
                    As Contemplated By The TCPA ............................... 17

                2.  Whether USAF Can Demonstrate Consent ........................ 18

                3.  Whether USAF Is Vicariously Liable For The
                    Collectors' Calls ....................................................... 20

                4.  Whether The Class Suffered The Same Injuries ................ 22

        C.      Likewise, Henderson Does Not Establish Superiority Under
                Rule 23(B)(3) .................................................................... 23

IV.     CONCLUSION ................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

Abdeljalil v. Gen. Elec. Cap. Corp.,
 306 F.R.D. 303 (S.D. Cal. March 26, 2015)........................................................15

Adelson v. U.S. Legal Support, Inc.,
 715 F. Supp. 2d 1265 (S.D. Fla. 2010)..............................................................23

Amchem Products, Inc. v. Windsor,
 521 U.S 591 (1997)..............................................................................................16

Andrews v. Chevy Chase Bank,
 545 F.3d 570 (7th Cir. 2008) ..............................................................................25

Blair v. CBE Group, Inc.,
 09 F.R.D. 621 (S.D. Cal. 2015) ..........................................................................18

Buslepp v. Improv Miami, Inc., No. 12-60171-CIV-COHN/SELTZER,
 2012 U.S. Dist. LEXIS 148527 (S.D. Fla. Oct. 16, 2012) ..................................17

Carrera v. Bayer Corp.,
 727 F.3d 300 (3d Cir. 2013) .........................................................................11, 14

Comcast Corp. v. Behrend,
 133 S. Ct. 1426 (2013)..........................................................................................9

Connelly v. Hilton Grand Vacations Co., LLC,
 94 F.R.D. 574 (S.D. Cal. 2013) ..........................................................................18

Dixon v. Monterey Fin. Servs.,
 2016 U.S. Dist. LEXIS 82601 (N.D. Cal. June 24, 2015)..............................19, 20

Duran v. U.S. Bank National Assn.,
 59 Cal. 4th 1 (Cal. 2014).....................................................................................24

Ebling v. ClearSpring Loan Servs., Inc.,
 06 F. Supp. 3d 1002 (D. Minn. 2015) .................................................................19

Eisen v. Carlisle & Jacquelin,
 417 U.S. 156 (1974)..............................................................................................23

Galindo v. Hous. Auth., No. CV 12-2449-GW(JCGx),
 2013 U.S. Dist. LEXIS 189523 (C.D. Cal. July 18, 2013) ................................11

Gannon v. Network Tel. Servs., Inc., Case No. 12-9777,
 013 WL 2450199 (C.D. Cal. June 5, 2013).........................................................18

Gartin v. S&M NuTec LLC,
 245 F.R.D. 429 (C.D. Cal. 2007).........................................................................24

General Telephone Co. of Southwest v. Falcon,
 457 U.S. 147 (1982)................................................................................................2

Gessele v. Jack in the Box, Inc., No. 3:10-cv-960-ST,
 013 U.S. Dist. LEXIS 51941 (D. Or. Jan. 28, 2013)...........................................10

Glauser v. GroupMe, Inc., No. C 11-2584 PJH,
    2015 U.S. Dist. LEXIS 14001 (N.D. Cal. Feb. 4, 2015) .......................................17

Gomez v. Campbell-Ewald Co.,
    768 F.3d 871 (9th Cir. 2014) ......................................................................20, 22

Heffelfinger v. Elec. Data Sys. Corp.,
    2008 U.S. Dist. LEXIS 5296 (C.D. Cal. Jan. 7, 2008) .......................................19

Hickey v. Great W. Mortgage Corp.,
    1995 U.S. Dist. LEXIS 3357 (N.D. Ill. Mar. 17, 1995) ....................................21

Hill v. Homeward Residential, Inc.,
    99 F.3d 544 (6th Cir. 2015) ...........................................................................19

Holley v. Crank,
    400 F.3d 667 (9th Cir. 2005) ...........................................................................20

In re NJOY Consumer Class Action Litig.,
    120 F. Supp. 3d 1050 (C.D. Cal. 2015) .......................................................2, 10

In re Optical Disk Drive Antitrust Litig.,
    303 F.R.D. 311 (N.D. Cal. 2014) ....................................................................10

Johns v. Bayer Corp.,
    280 F.R.D. 551 (S.D. Cal. 2012) .....................................................................11

Johnston v. HBO Film Mgmt. Inc.,
    265 F.3d 178 (3d Cir. 2001) ...........................................................................23

Kamar v. RadioShack Corp.,
    375 Fed. Appx. 734 (9th Cir. 2010) ................................................................19

Karle v. Southwest Credit Sys., No. 14-30058-MGM,
    2015 U.S. Dist. LEXIS 112500 (D. Mass. June 22, 2015)..................................17

Legg v. Voice Media Group, Inc., Case No. 13-62044-CIV,
    2014 U.S. Dist. LEXIS 61322 (S.D. Fla. May 2, 2014).....................................15

Levy v. Receivables Performance Mgmt., LLC,
    972 F. Supp. 2d 409 (E.D.N.Y. 2013) .............................................................18

Marcus v. BMW of N. Am., LLC,
    687 F.3d 583 (3d Cir. 2012) ...........................................................................11

O'Brien v. J.I. Kislak Mortg. Corp.,
    934 F. Supp. 1348 (S.D. Fla. 1996) ................................................................21

O'Connor v. Boeing N. Am., Inc.,
    184 F.R.D. 311 (C.D. Cal. 1998).....................................................................11

Pannaci v. A1 Solar Power, Inc.,
    2015 U.S. Dist. LEXIS 77294 (C.D. Cal. June 15, 2015)...................................21

Perez v. State Farm Mut. Auto. Ins. Co.,
    628 Fed. Appx. 534 (9th Cir. 2016) ................................................................16

Ratnayake v. Farmers Ins. Exch., No. 2:11-cv-01668-APG-CWH,
    2015 U.S. Dist. LEXIS 25868 (D. Nev. Feb. 27, 2015)....................................10

Reardon v. Uber Techs., Inc.,
  115 F. Supp. 3d 1090 (N.D. Cal. 2015) ................................................. 18
Roth v. CHA Hollywood Med. Ctr., L.P., No. 2:12-CV- 07559-ODW,
  2013 WL 5775129 (C.D. Cal. Oct. 25, 2013) ........................................ 11
Sanchez v. Wal Mart Stores, Inc., No. 2:06-CV-02573-JAM-KJM,
  2009 U.S. Dist. LEXIS 48428 (E.D. Cal. May 28, 2009) ...................... 11
Saunders v. NCO Fin. Sys.,
  10 F. Supp. 2d 464 (E.D.N.Y. 2012) ..................................................... 18
Sherman v. Yahoo! Inc., No. 13cv0041-GPC-WVG,
  2015 U.S. Dist. LEXIS 167177 (S.D. Cal. Dec. 14, 2015) .................... 17
Shook v. Bd. of County Comm'rs,
  543 F.3d 597 (10th Cir. 2008) .............................................................. 23
Spokeo, Inc. v. Robins,
  136 S. Ct. 1540 (2016) ......................................................................... 22
Strauss v. CBE Grp., Inc., No. 15-62026-CIV-COHN/SELTZER,
  2016 U.S. Dist. LEXIS 65587 (S.D. Fla. Mar. 23, 2016) ...................... 3
Thomas v. Taco Bell Corp.,
  879 F. Supp. 2d 1079 (C.D. Cal. 2012) ............................................... 20
Tourgeman v. Collins Fin. Servs., No. 08-CV-1392 JLS (NLS),
  2011 U.S. Dist. LEXIS 122422 (S.D. Cal. Oct. 21. 2011) ...................... 9
Wal-Mart Stores, Inc. v. Dukes,
  131 S. Ct. 2541 (2011) ............................................................. 2, 9, 16, 24
Wang v. Chinese Daily News,
  737 F.3d 538 (9th Cir. 2013) ................................................................ 16
Zinser v. Accufix Research Inst., Inc.,
  253 F.3d 1180 (9th Cir. 2001) .............................................................. 24

**Statutes**

47 U.S.C. § 227, et seq. ...........................................................................passim

**Rules**

Fed. R. Civ. P. 23.....................................................................................passim

# I.    INTRODUCTION

Defendant United Student Aid Funds, Inc. ("USAF") is a non-profit guaranty agency working with federally insured student loans under the Federal Family Education Loan Program ("FFELP").  USAF has a contract with non-party Navient Solutions, Inc. ("NSI"), a servicer of student loans, for various forms of servicing work (the "USAF Agreement").  NSI, in turn, has contracts with separate companies, which perform collections work for NSI on behalf of USAF, including by making telephone calls to borrowers on defaulted loans.

In her First Amended Complaint (the "Amended Complaint"), plaintiff Shyriaa Henderson ("Henderson") brings purported class action claims against USAF under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA").  The TCPA prohibits, among other things, making a call to a cellular telephone through the use of an automated telephone dialing system (an "ATDS") without the called party's "prior express consent."  Here, Henderson contends that USAF has vicarious liability under the TCPA for calls made to her and a supposed class of persons — allegedly without the requisite consent — regarding the defaulted amounts on their FFELP loans.  Accordingly, Henderson seeks, in her Renewed Motion for Class Certification (the "Motion"), to certify a class comprised of:

> All individuals in the United States who defaulted on a FFELP loan guaranteed by USA Funds and were called: (1) by General Revenue Corp., National Enterprise Systems, Pioneer Credit Recovery, Inc., Allied Interstate LLC, Coast Professionals Inc., Delta Management Associates, Inc., Enhanced Recovery Co. LLC, Enterprise Recovery Sy., Inc., Collecto Inc d/b/a EOS CCA, Financial Management Systems, Valentine & Kebartas, Inc., West Asset Management, Windham Professionals Inc. [collectively, the "Collectors"]; (2) relating to that defaulted FFELP loan; (3) using the LiveVox, Ontario Systems – Guaranteed Contacts, Ontario Systems – Contact Savvy, Noble Systems, aQrate, DAKCS Qwikdial, Genesys/Soundbite, DPTS system, or Interactive Intelligence [collectively, the "Telephone

Systems"] predictive dialers; (4) on a cellular telephone number not provided on a loan application; (5) after August 8, 2009.

(Motion, p. 5).

In the Motion, Henderson contends that this is a straightforward case and that the Court should follow the "long line" of TCPA cases that have been "regularly" and "routinely" certified as class actions. (Motion at pp. 1,6, 8.) As explained below, however, this case is anything but "routine," and Henderson does not come close to meeting the requirements for certification under Rule 23 of the Federal Rules of Civil Procedure. Indeed, given the varying and complicated facts that truly are at issue here, the unnecessarily complicated procedural posture and the entirely unsupported submission made by Henderson's proposed expert, Jeffrey Hansen ("Hansen"), the Motion plainly fails the "rigorous analysis" that applies to a request for certification. See, e.g., Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (stating that a trial court must be satisfied, "after a rigorous analysis," that the requirements have been met); accord In re NJOY Consumer Class Action Litig., 120 F. Supp. 3d 1050, 1084 (C.D. Cal. 2015) (citing General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160-61 (1982)). The Court therefore should deny the Motion on multiple grounds.

First, Henderson's proposed class is not ascertainable. Hansen contends in his declaration (the "Hansen Declaration") that the class can be easily ascertained by reference to the Collectors' voluminous call records. This is obviously not so. As an initial matter, the call records would simply reflect all of the calls made by the Collectors during the extensive class period, without regard to, for example, whether an ATDS was used to make a particular call or whether a phone number was listed in a loan application. Moreover, based on various human and system factors, the call records demonstrably are not reliable for the purpose of ascertainability. (See accompanying Declaration of Jerry Kaufman ("Kaufman

Declaration").)  Further, and importantly, Hansen is glaringly unqualified to proffer any expert opinions here whatsoever.  Indeed, Hansen's work is routinely criticized and rejected by courts, including in a very recent decision, <u>Strauss v. CBE Grp., Inc.</u>, No. 15-62026-CIV-COHN/SELTZER, 2016 U.S. Dist. LEXIS 65587, at *5–7 (S.D. Fla. Mar. 23, 2016), where he purported to make essentially the same arguments he makes here.  (<u>See</u> accompanying Declaration of Margaret A. Daley ("Daley Declaration"); <u>see also</u> USAF's concurrently filed Motion to Strike Expert Declaration of Jeffrey Hansen.)

Second, Henderson does not, and cannot, demonstrate commonality or predominance.  In the Motion, Henderson states four "common" questions that supposedly are suitable for class treatment:  (1) whether the Collectors' Telephone Systems constitute ATDS as contemplated by the TCPA; (2) whether USAF can demonstrate consent; (3) whether USAF is vicariously liable for the Collectors' calls; and (4) whether the class suffered the same injuries.  Contrary to Henderson's assertions, these issues raise numerous, highly individualized facts with respect to calls made by the 13 Collectors over an almost seven-year period.  For instance, in order to resolve the issue of whether the Telephone Systems could be construed as ATDS, Henderson would have to undertake a specialized, technical examination of all of the equipment used by each Collector to make the calls, going back to August 8, 2009.  Similarly, the issue of consent clearly is highly individualized.  While Henderson attempts to eliminate this issue through her class definition  — i.e., by referencing phone numbers not listed in loan applications — the law is clear that consent may be given at any time and by any means.  Thus, conversations or other communications with the Collectors come into play.  Further, on the issue of vicarious liability, Henderson would have to demonstrate an agency relationship between USAF and the Collectors for all of the calls made, including with respect to specific instructions as to the manner and means of making those specific calls.

1    <u>Finally</u>, Henderson cannot demonstrate that class treatment is the superior

2  means of adjudicating these claims.  Instead, there are significant manageability

3  problems that would turn class litigation into an unreasonably expensive and time-

4  consuming undertaking, including based on the necessity of reviewing the calling

5  practices of 13 separate Collectors over an extended timeframe.  Moreover,

6  declining to certify a class here will not preclude individual class members from

7  pursuing their claims.  The statutory damage amounts provided — $500 per

8  incident for negligent behavior and up to $1,500 per incident for willful behavior,

9  47 U.S.C. § 227(b)(3) — were intended to give TCPA plaintiffs sufficient incentive

10  to bring their claims on an individual basis.  Thus, a class action is not the superior

11  method.

12    Very simply, Henderson has not met the requirements of Rule 23.  As a

13  result, the Motion should be denied.

14                    **II.    BACKGROUND**

15        **A.    Henderson**

16    Henderson applied for and received a FFELP loan in order to attend Prairie

17  View A&M University in 1993.  Henderson's loan became delinquent in 2002, and

18  she defaulted in 2003.  She rehabilitated her loan in 2004.  Henderson applied for

19  and received a second FFELP student loan in April 2007 to attend the University of

20  Phoenix.  Ms. Henderson again became delinquent on her student loan account in

21  2009, and she defaulted again in 2010.  Her student loan account remains in default.

22  Henderson received calls from five collection companies on behalf of USAF:

23  Pioneer Credit Recovery, GC Services, LP ("GCS"), General Revenue Corp.,

24  National Enterprise Systems ("NES") and NCO Group (now TSI).  (Declaration of

25  Kevin Tharp, ¶¶ 3-5.)

26

27

28

## B.    USAF, NSI And The Collectors

FFELP is a student loan program funded through a public/private partnership to enable a student or his or her parents to pay the costs of the student's attendance at postsecondary schools.  See 34 C.F.R. § 682.100(a).  USAF guarantees FFELP loans. (Deposition of Kevin Tharp ("Tharp Dep.") 12:5-7.)  As a guarantor, USAF is responsible for paying claims to lenders in the event of a default on a FFELP loan and then assuming responsibility for the loan.  (Id.12:6-16.)  USAF is a non-profit entity and its limited staff is devoted to ensuring compliance with the extensive federal regulations governing FFELP guarantors.  See 34 C.F.R. § 682.400, et seq.

The FFELP regulations expressly contemplate that guarantors will "contract or otherwise delegate the performance of its functions under the [Higher Education Act] and this part to a servicing agency or other party."  34 C.F.R. § 682.203(a). The Secretary of Education can bar contracts with certain third-party servicers who have been found not to meet the requirements of the FFELP regulations, but guarantors are generally free to enter into relationships with servicers and loan collectors at their discretion.  34 C.F.R. § 682.416(f).

Accordingly, USAF contracts with NSI to handle its loan servicing operations.  (Tharp Dep. 13:9-22.)  NSI handles numerous tasks for USAF, such as status management, customer assistance, call center services, loan disbursement services, defaulted portfolio management and post claims assistance, bankruptcy portfolio management, system support, technology, administrative and financial tasks, policy communications and support, document storage and retrieval, and forms printing and distribution.  (See Motion at Exh. 9, Fifth Restated and Amended Guarantee Services Agreement for United Student Aid Funds, Inc., Exh. A.)  Further, NSI is responsible for "[d]etermin[ing] the selection of collection vendors [the Collectors]. . . enter[ing] into contracts with selected collection vendors, determin[ing] the account placements to those vendors [and] manag[ing] vendor relationships."  (Id. at Exh. 9, p. 27, sec. 5.)  USAF itself does not enter into

any agreement with those Collectors; NSI "has the right to subcontract any or all Services to be provided under this Agreement to any third party," including "[d]efaulted portfolio management." (Id. at Exh. 9, p. 7.)  From August 8, 2009 to the present, NSI has retained 21 separate companies to make collection calls on student loans guaranteed by USAF.  The Collectors are 13 of those companies.

USAF has extremely minimal interactions with the Collectors, and has no meaningful control over NSI's selection of Collectors.  The only regular point of contact between USAF and the Collectors is when USAF conducts federally mandated audits.  (Tharp Dep. 53:24-54:3.)  But the auditing is not directed to calling issues and TCPA claims like those at issue in this case.  Rather, it is focused on numerous factors that are considered when assessing FFELP compliance.  USAF does not use its auditing procedures to track the number of calls, learn about Collectors' calling practices, learn about Collectors' call records or learn about Collectors' dialer technology.  (Id. 39:12-18; 67-68; 79; 88:18-23.)  Also, the results of these audits do not give USAF the power to alter the practices of the Collectors.  (See generally id. 65-67(describing what happens if a problem is revealed in the audit process).)  USAF also has no legally enforceable right to retain or terminate Collectors.  (See id. 91-93 (explaining that NSI, and not USAF, has the ability to decide which companies are used).)

### C.      The Instant Action

Henderson filed a Complaint for Damages and Injunctive Relief on August 8, 2013, asserting claims against USAF for herself and a putative class under the TCPA.  Through the course of discovery, USAF provided the names of the 21 companies retained by NSI to make calls during the alleged class period.  (Id. 123:17-124:1.)

On October 2, 2014, Henderson filed the Amended Complaint, which named NSI and two collection companies, NES and GCS, as defendants, along with NSI.

However, Henderson is a resident of New Jersey and, for purposes of personal jurisdiction, the newly-added defendants were either incorporated or maintained their principal places of business in Delaware, Texas, Ohio and Virginia. Accordingly, on April 8, 2015, the Court granted motions to dismiss filed by NSI, GCS and NES based on lack of personal jurisdiction.  USAF consequently remains the only defendant, while the calling practices of the non-defendant Collectors are at issue.  Had Henderson filed her action in federal court in New Jersey, jurisdiction would have been established.

Also through discovery, Henderson has obtained call records and various documents related to the Telephone Systems.  Notably, many of the Collectors deny that their Telephone Systems could be ATDS.  Instead, they maintain that the calls at issue were made manually.  (Declaration of Lisa M. Simonetti, ¶¶ 2-4, Exhs. A-C.)  Henderson has not deposed any of the Collectors, nor does she apparently intend to do so, and the discovery cutoff is October 24, 2016.

### D.  The Motion And Hansen's Declaration

On May 4, 2016, Henderson filed the Motion, which relies heavily on the Hansen Declaration.  Henderson cites Hansen's testimony in her effort to establish that:  (1) each of the Telephone Systems is an ATDS within the meaning of the TCPA; and (2) the proposed class is ascertainable by reference to the Collectors' call records.  (Hansen Decl., ¶¶ 16-17.)  The first point is critical to establishing the commonality and predominance.  The second point is critical to establishing ascertainability and manageability.

As set forth in the Kaufman Declaration, the Daley Declaration and the Motion to Strike, Hansen is entirely unqualified and his testimony is so deeply flawed that it is entirely unreliable and should be rejected.  USAF will not reiterate the contents of the Kaufman Declaration, the Daley Declaration and the Motion to Strike here, but the following points are of particular note:

1.     Hansen is completely lacking in any knowledge, skill, experience, training or education relevant to this case.  Hansen did not graduate from college and has never authored a single article on the technical specifications of an ATDS. (See generally Hansen Declaration, Exh. A; Deposition of Jeffrey A. Hansen ("Hansen Dep.") 10:15-12:14.)  Indeed, Hansen's education is limited to vocational schools and alleged certifications.  (Id.)

2.     Hansen lacks the professional experience to opine on the ATDS and class identification issues.  Although Hansen claims to have had extensive experience with dialing systems (Hansen Declaration,¶¶ 7-9), his only professional experience in telecommunications before becoming an expert witness was doing side work for HomeyTel, a sole proprietorship run by a man, Conrad Braun, who has been imprisoned on multiple occasions for fraud, blackmail and trespass. (Daley Declaration, ¶¶ 57-69.)

3.     At this time, Hansen's only relevant experience in telecommunications is his work as a part-time expert witness, which Hansen does in his spare time when he is not working at his full-time job running fiber optic cables for HP.

4.     As stated in his declaration, Hansen's analysis of the ATDS issue is "a simple process."  (Hansen Declaration,¶ 28.)  In fact, it is so "simple" that it consists only of reading documents describing the Telephone Systems to see if those documents described functionality that he ascribes to an ATDS.  (Hansen Declaration,¶ 29)  Also, Hansen stated in his deposition that his skill set is not unique, even claiming that "anyone with some — with the training to be a computer technician or a network technician, they should have the ability to set up a phone system with no problem."  (Hansen Dep. 23:12-15.)

5.     The documents that Hansen reviewed were either general in nature (patents, news articles, etc.) or do not address the systems used by the Collectors. Most importantly, none of the documents he cites provide any information on the

1  specific features, capabilities and configurations of the telephone systems at the

2  time the calls at issue were made.  (Kaufman Declaration, ¶ 24.)

3        6.      Hansen's analysis regarding the class identification issues is similarly

4  flawed, relying upon call records produced by the Collectors that demonstrably

5  contain numerous errors, duplications, inconsistencies and inaccuracies, or are

6  simply incomplete.  (Kaufman Declaration, ¶ 77.)

7                              **III.   ARGUMENT**

8        A party seeking to have an action certified for class treatment must satisfy

9  the four requirements of Rule 23(a): "(1) The class is so numerous that joinder of

10 all members is impracticable; (2) there are questions of law or fact common to the

11 class; (3) the claims or defenses of the representative parties are typical of the

12 claims and defenses of the class; and (4) the representative parties will fairly and

13 adequately protect the interests of the class." Fed. R. Civ. P. 23(a); Dukes, 564

14 U.S. at 345; see also Tourgeman v. Collins Fin. Servs., No. 08-CV-1392 JLS

15 (NLS),  2011 U.S. Dist. LEXIS 122422, at *8 (S.D. Cal. Oct. 21. 2011) ("A party

16 seeking to certify a class bears the burden of demonstrating that each of the four

17 requirements of Rule 23(a) . . . are met.").  The named plaintiff must also satisfy

18 "through evidentiary proof" at least one of the provisions of Rule 23(b).  Comcast

19 Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013); see also Tourgeman, 2011 U.S.

20 Dist. LEXIS 122422, at *8 (explaining that class actions must satisfy "at least one

21 of the requirements of Rule 23(b)").  Here, Henderson seeks certification under

22 Rule 23(b)(3), which requires a finding by the Court that "the questions of law or

23 fact common to class members predominate over any questions affecting only

24 individual members, and that a class action is superior to other available methods

25 for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3);

26 Comcast, 133 S. Ct. at 1432.

27

28

1    As noted above, a request for class certification is subject to "rigorous

2    analysis." Dukes, 564 U.S. at 351.  Indeed, the Ninth Circuit has emphasized that

3    "Rule 23 does not set forth a mere pleading standard" and the "party seeking class

4    certification must affirmatively demonstrate his compliance with the Rule."  In re

5    NJOY Consumer Class Action Litig., 120 F. Supp. 3d 1050, 1084 (C.D. Cal. 2015);

6    In re Optical Disk Drive Antitrust Litig., 303 F.R.D. 311, 319, n.5 (N.D. Cal. 2014).

7    Thus, rather than relying on the allegations of the plaintiff's complaint or the

8    arguments asserted in a motion, the party seeking class certification must "be

9    prepared to prove that there are in fact sufficiently numerous parties, common

10   questions of law or fact, etc."  In re NJOY Consumer Class Action Litig., 120 F.

11   Supp. 3d at 1084 (emphasis added); see also Gessele v. Jack in the Box, Inc., No.

12   3:10-cv-960-ST, 2013 U.S. Dist. LEXIS 51941, at *91–92 (D. Or. Jan. 28, 2013)

13   ("[T]he court's 'rigorous analysis' under FRCP 23 frequently 'will entail some

14   overlap with the merits of the plaintiff's underlying claim.  That cannot be helped.'

15   To determine whether class certification is proper, the court may consider material

16   beyond the pleadings and require supplemental evidentiary submissions by the

17   parties."); Ratnayake v. Farmers Ins. Exch., No. 2:11-cv-01668-APG-CWH, 2015

18   U.S. Dist. LEXIS 25868, at *7–8 (D. Nev. Feb. 27, 2015) (internal quotation marks

19   omitted) ("A party seeking class certification must affirmatively demonstrate his

20   compliance with the Rule.  Going beyond the pleadings is necessary, as a court

21   must understand the claims, defenses, relevant facts, and applicable substantive law

22   in order to make a meaningful determination of the certification issues.").

23   Here, for the multiple reasons discussed below, Henderson's request for

24   certification cannot withstand this Court's rigorous analysis.  Therefore, the Motion

25   should be denied.

26

27

28

### A. Contrary To The Positions Asserted By Hansen, Whose Testimony Should Be Stricken, Henderson's Proposed Class Is Not Ascertainable.

"A class definition should be 'precise, objective, and presently ascertainable,' that is, the class must be 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'" Roth v. CHA Hollywood Med. Ctr., L.P., No. 2:12-CV- 07559-ODW, 2013 WL 5775129, *4 (C.D. Cal. Oct. 25, 2013) (quoting O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998)).  "[C]lass treatment is not appropriate if 'the court must determine the merits of an individual claim to determine who is a member of the class.'" Id. at *5 (quoting Johns v. Bayer Corp., 280 F.R.D. 551, 555 (S.D. Cal. 2012)).

Moreover, a "defendant has a similar, if not the same, due process right to challenge the proof used to demonstrate class membership as it does to challenge the elements of a plaintiff's claim." Carrera v. Bayer Corp., 727 F.3d 300, 307 (3d Cir. 2013) (citing Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 593 (3d Cir. 2012)).  The ascertainability test ensures "due process by requiring that a defendant be able to test the reliability of the evidence submitted to prove class membership." Id.  Indeed, "[a] defendant in a class action has a due process right to raise individual challenges and defenses to claims, and a class action cannot be certified in a way that eviscerates this right or masks individual issues." Carrera, 727 F.3d at 307; accord Galindo v. Hous. Auth., No. CV 12-2449-GW(JCGx), 2013 U.S. Dist. LEXIS 189523, at *8 (C.D. Cal. July 18, 2013) (explaining that resolving claims "on a class-wide basis while not allowing [d]efendants to present . . . defenses on an individual basis would . . . pose due process problems"); Sanchez v. Wal Mart Stores, Inc., No. 2:06-CV-02573-JAM-KJM, 2009 U.S. Dist. LEXIS 48428, at *13 (E.D. Cal. May 28, 2009) ("Given the numerous individualized inquiries required to adjudicate the claims brought on behalf of the putative class, any attempt to try these claims on a classwide basis would deprive Defendants of their due process

1    right to a fair trial, including the right to present 'every available defense' to those

2    claims.").

3          Here, Henderson asserts that her proposed class is ascertainable because it

4    can be determined by answering objective, "yes-or-no" questions.  But these

5    questions actually show the inherent difficulties and individualized issues involved

6    in ascertaining the proposed class.

### 1.    Whether The Collectors Placed A Call To The Individual's Cell Phone Number.

8          In connection with this question, Henderson contends that the information

9    can be easily obtained by reference to the records of USAF, NSI and the Collectors.

10   (See Motion at p. 8.)  Further, Hansen asserts that he has already begun using these

11   records to identify members of the proposed class.  (Hansen Declaration, ¶¶ 41-44.)

12   However, his proposed process is indefensibly oversimplified.  Indeed, as an initial

13   matter, the call records would reflect all of the calls made by the Collectors during

14   the extensive class period, without regard to, for example, whether an ATDS was

15   used to make a particular call or whether a phone number was listed in a loan

16   application.  Indeed, Hansen has no proposal whatsoever as to how to determine

17   whether a person listed a number on a loan application.  These, of course, are

18   elements of Henderson's class definition.

19         Moreover, the call records simply are insufficient for that Hansen's proposes.

20   Instead, the records produced by the Collectors contain numerous errors,

21   duplications, inconsistencies, inaccuracies or are incomplete.  As explained in the

22   Kaufman Declaration, a call record is a formatted data record of a call event that

23   incorporates information generated by the Collector's system, by the user (agent) of

24   the system and by the carrier network to which the Collector's system is connected.

25   But human and machine misinterpretations of events, data entry inaccuracies,

26   processing errors, limitations on information exchanged between the Collector's

27   systems and the Carrier's network, and system software and hardware flaws can

28

create and contribute to errors, duplications, inconsistencies, inaccuracies, anomalies and other problems in the call record.  Accordingly, the call records produced by the Collectors in this matter contain at least the following impediments to their use in support of ascertaining the proposed class:

- Under some systems, call events will produce as many as three records.  No single record provides all of the information needed to make a determination of calling activity, call disposition, call length, start time, end time, etc. Consequently, this information can only be determined through an extensive manual analysis of all of the call records.  This would involve first identifying all the call records (two or three) generated for the call event and then calculating the required information — which Hansen does not purport to have done.  This task is also necessary in order to avoid over counting the actual number of call events.  (Kaufman Declaration, ¶¶ 79-83.)

- Relatedly, some Collector's call records contain duplicates of each call record.  The records would consequently need to be de-duplicated before any meaningful analysis could be conducted, another task which Hansen does not claim to have even attempted.  (Kaufman Declaration,¶ 84.)

- The formats, content and the names of the data fields of the call records produced by each Collector are different.  For example, some include a "SESSION ID" data field, while others include "Call Start Time," "Call End Time" and "Call Duration" fields.  Some contain only a "Date of Activity," while others lack even call disposition information (i.e., whether a call was connected, answered, etc.).  This information is essential to understanding whether a call ever rang.  (Kaufman Declaration, ¶ 85.)

- The various systems generate call records with different formats.  Hansen does not claim to have made any effort to have devised a method for

standardizing the form and scope of the information included in the various call records.  (Kaufman Declaration,¶ 85.)

- Additional common call record errors include those caused by defective data, data not generated, data entry errors, data not collected, lost data, data not properly processed, misinterpreted data, hardware and software faults and system incompatibilities.  Examples of these include conflicting data regarding validity of the phone number or calls recorded as "Unanswered" that nonetheless have a duration of several minutes.  (Kaufman Declaration,¶¶ 88-96.)

- Finally, some of the call records are simply missing.  For example, where a given system generates three call records for each call event, but only two are available, one is clearly missing.  (Kaufman Declaration,¶ 97.)

Accordingly, to fully "test the reliability of the evidence submitted to prove class membership," Carrera., 727 F.3d at 307, much more information would have to be provided, and specifically from the Collectors themselves.  Setting aside Hansen's glib conclusions, the Collectors operate the Telephone Systems, and would have the best knowledge of the records.  Hansen did not interview any of the Collectors, however, and Henderson has deposed none.  Thus, very simply, Henderson fails the test of ascertainability.  Allowing a class action to proceed based on the highly flawed and unsupported review proposed by Henderson would "eviscerate" USAF's due process rights and "mask individual issues," which is improper.

### 2.     Whether The Collector Used [An ATDS] To Place The Call.

Henderson's second "yes-or-no" question is similarly infirm.  Hansen attempts to avoid the individualized nature of this question by making the blanket assertion that all of the Telephone Systems are ATDS.  But that is not so — Henderson even acknowledges this in the Motion, noting that the "vast majority"

1   (but not all) of the numbers were called using an ATDS (Motion at p. 3) — and it is

2   improper for Hansen to attempt to make that determination simply by reviewing

3   general information regarding the Telephone Systems.

4         As noted above, none of the documents that Hansen reviewed provide any

5   information on the exact configuration and capabilities of the specific system(s)

6   used to make the calls at issue.  (Kaufman Declaration, ¶¶ 65-76.)  Also, some

7   Collectors produced documents on multiple systems, but did not identify the

8   specific systems and the capabilities used to make each of the calls at issue.

9   (Kaufman Declaration,¶¶ 30-64.)  Additionally, some of the Telephone Systems

10   may have been configured for predictive and/or manual only dial operation.

11   (Kaufman Declaration,¶¶ 18, 22, 24, 29, 32, 36, 38, 43, 44, 56, 61, 63.)  Plainly,

12   this type of cursory and generalized review is of no value.  See Legg v. Voice

13   Media Group, Inc., Case No. 13-62044-CIV, 2014 U.S. Dist. LEXIS 61322, *15

14   (S.D. Fla. May 2, 2014) (stating that review of a "client handbook, standing alone,

15   provides an insufficient basis for… [expert's] opinion regarding the capabilities of

16   VMG's systems…. [expert] cannot even say whether Phaz2's own equipment

17   conforms to the specifications discussed in its handbook").

18         Finally, the cases cited by Henderson to support her position on

19   ascertainability are clearly distinguishable.  For instance, in Abdeljalil v. Gen. Elec.

20   Cap. Corp., 306 F.R.D. 303, 308 (S.D. Cal. March 26, 2015), the court needed to

21   look only at a set of defendant's business records to determine by objective criteria

22   who was a member of the class, and there was no meaningful challenge to those

23   records.  Here, as set forth above, class membership cannot be determined without

24   extensive information from the Collectors, who are not before this Court and who

25   Henderson has not deposed.

26

27

28

### B.    Henderson Does Not Demonstrate Commonality Under Rule 23(A)(2) Or Predominance Under Rule 23(B)(3)

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury.  This does not mean merely that they have all suffered a violation of the same provision of law."  <u>Dukes</u>, 564 U.S. at 349-50 (internal quotation marks and citation omitted).  The claims must depend upon a common contention, and "[t]hat common contention, moreover, must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  <u>Id.</u> at 350.  "What matters to class certification . . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."  <u>Id.</u>; <u>see also</u> <u>Perez v. State Farm Mut. Auto. Ins. Co.</u>, 628 Fed. Appx. 534, 535 (9th Cir. 2016) (same); <u>Wang v. Chinese Daily News</u>, 737 F.3d 538, 543 (9th Cir. 2013) (noting that "any competently crafted class complaint literally raises common questions").

Moreover, to demonstrate predominance, a class plaintiff must establish that "questions of law or fact common to the class members predominate over any question affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  The Supreme Court has held that, although the predominance requirement of Rule 23(b)(3) overlaps in some ways with the commonality requirement of Rule 23(a), it is "far more demanding" because it "tests whether the proposed [classes are] sufficiently cohesive to warrant adjudication by representation."  <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S 591, 623-24 (1997).  Where liability determinations will be "individual and fact-intensive," predominance cannot be established.  <u>Id</u>

1    Here, Henderson argues that there are four "common" questions that are

2    adequate to establish commonality and predominance.  However, upon appropriate

3    examination, not even one is capable of classwide resolution.

### 1.    Whether The [Telephone Systems] Constitute ATDS As Contemplated By The TCPA.

As a matter of law, plaintiff bears the burden of proving use of an ATDS on a

TCPA claim.  See, e.g., Buslepp v. Improv Miami, Inc., No. 12-60171-CIV-

COHN/SELTZER, 2012 U.S. Dist. LEXIS 148527, at *6 (S.D. Fla. Oct. 16, 2012)

(explaining that plaintiff "confuse[d] the burden of proof" in arguing that defendant

could not provide evidence that it did not use an autodialer because "[i]t is

[p]laintiff who must show, as an element of his claim, that [d]efendant used an

ATDS in December 2011"); Karle v. Southwest Credit Sys., No. 14-30058-MGM,

2015 U.S. Dist. LEXIS 112500, at *19 (D. Mass. June 22, 2015) (granting

summary judgment because plaintiff "fail[ed] to meet her burden with respect to"

the "necessary" autodialer element).  This is an issue that involves highly technical

facts, specific to the system used to make the calls at a given point in time.  See,

e.g., Sherman v. Yahoo! Inc., No. 13cv0041-GPC-WVG, 2015 U.S. Dist. LEXIS

167177, at *15 (S.D. Cal. Dec. 14, 2015) (denying defendant's motion for summary

judgment because plaintiff raised a genuine issue of fact as to whether defendant's

system was an ATDS); Glauser v. GroupMe, Inc., No. C 11-2584 PJH, 2015 U.S.

Dist. LEXIS 14001, at *20 (N.D. Cal. Feb. 4, 2015) (granting summary judgment

for defendant because plaintiff failed to raise a genuine issue of fact as to whether

defendant's system was an ATDS).

Here, as noted above, many, if not all, of the Collectors deny using ATDS to

make the calls at issue.  Thus, Henderson very clearly will have to carry the burden

of disproving those denials, for every call made by every Collector — through a

highly individualized, highly technical examination of every piece of equipment

used by the Collectors — going back to August 8, 2009.

### 2.   Whether USAF Can Demonstrate Consent.

As a matter of settled law, a person gives "prior express consent" under the TCPA when she provides her telephone number, and that consent also applies to another company calling for purposes of collections.  See., e.g., Reardon v. Uber Techs., Inc., 115 F. Supp. 3d 1090, 1098 (N.D. Cal. 2015) ("Express consent can be demonstrated when the called party gives her wireless number to the person initiating the phone call 'without instructions to the contrary.'"); Levy v. Receivables Performance Mgmt., LLC, 972 F. Supp. 2d 409, 419 (E.D.N.Y. 2013) (explaining that provision of consent to a creditor constitutes provision of consent to its collection agent, too); Saunders v. NCO Fin. Sys., 910 F. Supp. 2d 464, 467 (E.D.N.Y. 2012) (citing cases) ("Here, plaintiff concedes that by listing only his cell phone number with PACER, he gave both PACER and NCO, its collection agent, 'prior express consent.'  This is a concession that plaintiff must make, as the authorities are almost unanimous in holding that voluntarily furnishing a cellphone number to a vendor or other contractual counterparty constitutes express consent.").

Against this background, courts routinely deny class certification in cases, such as this, where resolution of the issue of consent inherently requires an individualized inquiry.  See, e.g., Blair v. CBE Group, Inc., 309 F.R.D. 621, 631 (S.D. Cal. 2015) ("[T]he issue of consent requires extensive individual inquiries into whether each class member gave 'express consent' by providing their wireless number to the underlying creditor."); Connelly v. Hilton Grand Vacations Co., LLC, 294 F.R.D. 574, 578 (S.D. Cal. 2013) ("The context of class members' interactions with… [defendant] is sufficiently varied to provide dissimilar opportunities for the expression of consent….  It is likely that each individual received a different amount of information regarding how his cell phone number would be used and there is at least a non-trivial possibility that some class members expressed consent in a manner that was colored by these circumstances"); Gannon v. Network Tel. Servs., Inc., Case No. 12-9777, 2013 WL 2450199 (C.D. Cal. June

5, 2013) (denying certification because issue of consent demanded individual inquiry into each potential member's consent and court "would have to hold 'mini-trials' to determine who received unauthorized text messages).

In the Motion, Henderson seeks to avoid this issue by excluding from the class those individuals who provided their cell phone numbers on their loan applications.  (Motion at p. 13.)  This supposed limitation, in itself, clearly raises an individualized issue, as every supposed members' application would have to be reviewed.  (Simonetti Declaration, ¶ 5, Ex. D.)  Plainly, however, this is not the only means by which an individual could consent.  See, e.g., Hill v. Homeward Residential, Inc., 799 F.3d 544, 551 (6th Cir. 2015) ("[T]he FCC never uses the words initial or original before 'transaction.'  It instead says that the debtor has given his consent when he gives his number 'during the transaction' that involves the debt (i.e., 'regarding the debt').") (citation omitted)); Ebling v. ClearSpring Loan Servs., Inc., 106 F. Supp. 3d 1002, 1005 n.3 (D. Minn. 2015) ("The phrase 'during the transaction' is not limited to the initial contact between creditor and debtor.").  The Collectors were making phone calls to the defaulted borrowers and, thus, were talking with at least some of them (Henderson simply did not answer the calls).  During those conversations, borrowers certainly could have given consent to call their cell phones, and they also could have contacted NSI with updated information.  (Deposition of Mark VerBrugge, 85:2-86:10; 89:12-20; 117:9-25.)[1]

---

[1]  Further, it should be noted that, by purporting to eliminate the consent issue from the class definition, Henderson has rendered that definition "fail-safe."  As the Ninth Circuit has stated, "'[t]he fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established.'"  Dixon v. Monterey Fin. Servs., No. 15-cv-03298-MMC, 2016 U.S. Dist. LEXIS 82601, at *12 (N.D. Cal. June 24, 2015) (citing Kamar v. RadioShack Corp., 375 Fed. Appx. 734, 736 (9th Cir. 2010)).  In other words, "members would be bound only by a judgment favorable to plaintiffs but not by an adverse judgment."  Heffelfinger v. Elec. Data Sys. Corp., 2008 U.S. Dist. LEXIS 5296, 2008 WL 8128621, at *10

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

### 3. Whether USAF Is Vicariously Liable For The Collectors' Calls.

The TCPA itself is silent as to the imposition of vicarious liability.  Gomez v. Campbell-Ewald Co., 768 F.3d 871, 877 (9th Cir. 2014); see generally 47 U.S.C. § 227, et seq.  Courts in the Ninth Circuit therefore have followed guidance from the Federal Communications Commission (the "FCC"), the TCPA's implementing agency and, in particular, a Declaratory Ruling issued by the FCC in 2013.  In that Declaratory Ruling, the FCC found that "federal common law principles of agency" should apply to the analysis of vicarious liability under the TCPA.  In re Dish Network, LLC, 28 F.C.C. Rcd. 6574, 6574 ¶ 1 (2013); see also Gomez, 768 F.3d at 879 ("[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller.").

It is fundamental that "[p]rincipals are liable for the torts of their agents committed within the scope of their agency."  Holley v. Crank, 400 F.3d 667, 673 (9th Cir. 2005).  "[F]or an agency relationship to exist, a principal must consent to the agent acting on his behalf and subject to his control, and the agent must consent to act for the principal."  Id.  "Agency means more than mere passive permission; it involves request, instruction, or command."  Thomas v. Taco Bell Corp., 879 F. Supp. 2d 1079, 1085 (C.D. Cal. 2012) aff'd, 582 F. App'x 678 (9th Cir. 2014) (emphasis added).  In the TCPA context, however, control over the entity is not enough – control over the disputed communication also is required.  See Thomas, 879 F. Supp. 2d at 1084 ("To succeed on this vicarious liability theory, [plaintiff] must demonstrate that these entities acted as an agent of [defendant]: that [defendant] controlled or had the right to control them and, more specifically, the

---

(C.D. Cal. Jan. 7, 2008), aff'd and remanded, 492 Fed. Appx. 710 (9th Cir. 2012).  Accordingly, courts routinely find such class definitions to be improper.  Id.; see also Dixon, 2016 U.S. Dist. LEXIS 82601, at *13 (explaining that plaintiff's proposed class was "a fail-safe class, and, as such, [was] improper").

manner and means of the text message campaign they conducted.") (emphasis added); <u>see also</u> <u>Pannaci v. A1 Solar Power, Inc.</u>, No. 15-cv-00532, 2015 U.S. Dist. LEXIS 77294, at *20 (C.D. Cal. June 15, 2015) ("To establish an agency relationship, Plaintiff must show that [Defendant] 'controlled or had the right to control' [the calling party]—specifically, the 'manner and means of the calls conducted  by [the calling party].").

As USAF will demonstrate through a motion for summary judgment, no agency relationship does, or could, exist here between USAF and the Collectors. Nevertheless, for purposes of class treatment of the instant claims, Henderson would have to attempt to prove such a relationship with respect to all of the calls made by all of the Collectors over the past seven years.  Further, and importantly, she would have to try to submit that proof at the detailed level of control over the "manner and means" of making the calls during that span of time.  This would be an inherently individualized inquiry, and courts routinely deny certification of cases involving questions of agency.  <u>See</u> <u>O'Brien v. J.I. Kislak Mortg. Corp.</u>, 934 F. Supp. 1348, 1348 (S.D. Fla. 1996) (denying certification where plaintiffs "would have to show that every correspondent or closing party was an agent of… [defendant] for all loans not originated by… [defendant] so that the correspondent or closing party's acts are imputed to… [defendant, and s]uch an analysis would require an individualized determination of whether an agency relationship existed for each particular loan transaction"); <u>Hickey v. Great W. Mortgage Corp.</u>, No. 94 C 3638, 1995 U.S. Dist. LEXIS 3357 (N.D. Ill. Mar. 17, 1995) ("If an individualized inquiry must be conducted to determine whether a closing person is an agent of the lender in a particular case, and thus whether the challenged fee is…

1  [defendant's] finance charge in a particular case, individual issues clearly

2  predominate over common issues").[2]

3  **4.  Whether The Class Suffered The Same Injuries.**

4  In the Motion, Henderson assumes the same injuries across the proposed

5  class because the Collectors supposedly used "the same equipment to place

6  substantially similar calls."  (Motion at p. 15) (emphasis added).  As detailed above,

7  Henderson, through Hansen, actually has no basis for making this statement.

8  Hansen has not performed an analysis of any of the Telephone Systems, nor is he

9  qualified to do so.

10  Furthermore, and importantly, the call records will not provide proof of

11  common injury.  For instance, analysis of the Collectors' call records confirm that

12  numerous attempted calls did not result in any actual connection.  (See Kaufman

13  Declaration,¶¶ 86-96).  To the extent that no connection actually occurred, the

14  called party did not suffer, and could not have suffered, the "concrete and

15  particularized" harm necessary to plead an injury in fact and, therefore, would lack

16  Article III standing.  Statutory damages alone — such as those provided for by the

17  TCPA — will not suffice.  See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1550, 194

18  L. Ed. 2d 635, 646 (2016).  Indeed, a phone that does not ring is of no consequence

19  at all.

20  Moreover, as detailed above, an individualized, manual inquiry is needed to

21  determine the accuracy of the call records — i.e., whether the putative class

22  member was the recipient of connected calls and, if so, how many.  Also, at a

23  minimum: (1) the records for call events whose documentation is spread out over as

24  many as three different entries would have to be consolidated; (2) duplicates would

25  have to be eliminated; and (3) widely varying data sets would have to be

26  _____

27  [2]  Henderson cites several cases in the Motion, arguing that her position on
    vicarious liability is supported.  However, none of those cases involve the analysis

28  required under Gomez.

1   standardized.  And such an inquiry would not even account for the anomalies,

2   errors and missing data described above.  Thus, this, too, is not a common question.

3       **C.    Likewise, Henderson Does Not Establish Superiority Under Rule 23(B)(3).**

4       "Superiority" demands more than a suggestion that a class action is one

5   available means for resolving the claims at issue – it must be "the best available

6   method[] for the fair and efficient adjudication of the controversy." Johnston v.

7   HBO Film Mgmt. Inc., 265 F.3d 178, 194 (3d Cir. 2001).  In assessing superiority,

8   a court should evaluate "the difficulties likely to be encountered in the management

9   of a class action," including "the whole range of practical problems that may render

10  the class action format inappropriate for a particular suit." Eisen v. Carlisle &

11  Jacquelin, 417 U.S. 156, 164 (1974).  The consideration of manageability is

12  "committed to the district court's discretion particularly 'because [district courts]

13  "generally [have] a greater familiarity and expertise" with the "practical . . . and

14  primarily . . . factual" problems of administering a lawsuit "than [do the] court[s] of

15  appeals." Adelson v. U.S. Legal Support, Inc., 715 F. Supp. 2d 1265, 1274 (S.D.

16  Fla. 2010) (denying class certification where it would result in an unreasonably

17  expensive and time-consuming undertaking to determine individualized

18  circumstances that would burden the court, defendants and third-parties).  "[I]f

19  redressing the class members' injuries requires time-consuming inquiry into

20  individual circumstances or characteristics of class members or groups of class

21  members, 'the suit could become unmanageable and little value would be gained in

22  proceeding as a class action.'" Shook v. Bd. of County Comm'rs, 543 F.3d 597,

23  604 (10th Cir. 2008).

24      Here, for all of the reasons stated above, Henderson cannot demonstrate

25  superiority.  On a class basis, this would be a sprawling, complex matter, involving

26  highly individualized issues with respect to the Collectors' calling practices over an

27

28

1    almost seven year period.  What Henderson really suggests throughout her Motion

2    is an end run around these issues, but she cannot escape Rule 23's requirements.

3         Indeed, in addition to all of the obstacles already addressed, Henderson

4    notably fails to provide a plan for class management or proof of damages.  Courts

5    routinely deny class certification when no class management plan is set forth.  See

6    Gartin v. S&M NuTec LLC, 245 F.R.D. 429, 441 (C.D. Cal. 2007) (requiring

7    plaintiffs to provide a trial plan when seeking class certification); see also Zinser v.

8    Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001) (requiring

9    plaintiffs to demonstrate "a suitable and realistic plan for trial of the class claims");

10   Duran v. U.S. Bank National Assn., 59 Cal. 4th 1, 27, 58 (Cal. 2014) (stating that

11   "[c]lass certification is appropriate only if . . . individual questions can be managed

12   with an appropriate trial plan," and remanding to the trial court to assess "whether

13   there is a trial plan that can properly address both common and individual issues if

14   the case were to proceed as a class action"); Dukes, 564 U.S. at 361.  As set forth

15   above on pp. 12-14, the Collectors' call records in no way can be considered

16   reliable with respect to damages issues (e.g., they reflect calls that do not ring;

17   contain duplicate, missing and erroneous entries).

18        Further, without so much as mentioning these issues, Henderson asserts only

19   that class certification is appropriate because "[i]t would be prohibitively expensive

20   for individual plaintiffs to prosecute their TCPA claims."  (Motion at p. 22).  But

21   this argument proceeds on a false assumption — i.e., that only a handful of calls

22   would be at issue for each putative class member, meaning his or her potential relief

23   would be "small."  (Motion at p. 23).  However, Henderson herself testified at

24   deposition that she received calls so often that she could not recall how many there

25   were.  (Deposition of Shryiaa Henderson ("Henderson Dep.") 21:19-21).  In fact,

26   she testified that, at one point, she was receiving calls "every 30 minutes to 40

27   minutes."  (Henderson Dep. 18:24-25).  If this is true (which USAF does not

28

concede), Henderson's claims, if proven, would be worth a substantial amount of damages.  Assuming that Henderson proved 50 or more calls in violation of the TCPA, at the highest amount of statutory damages, her claim alone might be worth as much as $75,000.00.  This is certainly enough to justify an individual suit, and argues strongly against superiority here.  See, e.g., Andrews v. Chevy Chase Bank, 545 F.3d 570, 577 (7th Cir. 2008) (holding that a class action was not superior to an individual Truth In Lending Act rescission action because a prevailing debtor with a typical loan could receive over $50,000).

## IV.    CONCLUSION

For the foregoing reasons, USAF respectfully requests that the Court deny the Motion.


Dated:   July 25, 2016                      VEDDER PRICE (CA), LLP


                                            By:   */s Lisa M. Simonetti*
                                                  Lisa M. Simonetti

                                            Attorneys for Defendant
                                            UNITED STUDENT AID FUNDS,
                                            INC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATION**

I hereby certify that on July 25, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's EM/ECF System.

*/s  Lisa M. Simonetti*
Lisa M. Simonetti

LOS_ANGELES/#19012.1

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

- 26 -

13-CV-1845