Ronald A. Marron (SBN 175650)
ron@consumersadvocates.com
Alexis Wood (SBN 270200)
alexis@consumersadvocates.com
Kas Gallucci (SBN 288709)
kas@consumersadvocates.com
LAW OFFICES OF RONALD A. MARRON
651 Arroyo Drive
San Diego, California 92103
Tel: 619.696.9006
Fax: 619.564.6665

Benjamin H. Richman (Admitted *pro hac vice*)
brichman@edelson.com
J. Dominick Larry (Admitted *pro hac vice*)
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHYRIAA HENDERSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STUDENT AID FUNDS, INC. D/B/A UNITED STUDENT AID FUNDS,<br><br>Defendant. | CASE NO. 3:13-cv-1845-JLS-BLM<br>CLASS ACTION<br><br>**[REDACTED] PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing date:   February 8, 2017<br>Time:                1:30 p.m.<br>Courtroom:      4A – 4th Floor |

# TABLE OF CONTENTS

I.      **INTRODUCTION** ................................................................1

II.     **BACKGROUND** ...............................................................2

     A.     **An Overview of the Relationship Between USAF, NSI, and the Collectors**................................................................2

     B.     **The Calls Made on Behalf of USAF Are Governed by the TCPA** ................................................................5

     C.     **Plaintiff Henderson Never Consented to Receive Autodialed Calls Featuring Prerecorded Messages on Behalf of USAF**...........7

III.    **ARGUMENT**................................................................8

     A.     **The Budget Act Amendment Does Not Exempt the Calls at Issue in this Case**................................................................9

     B.     **USAF Is Vicariously Liable for Its Collectors' TCPA Violations**................................................................10

          1.     **A jury could find that the Collectors are USAF's subagents**................................................................10

               a.     *NSI is USAF's agent for the purpose of hiring Collectors*................................................................11

               b.     *The Collectors are NSI's agents for purposes of collecting on defaulted loans*...........................................13

               c.     *The Collectors are USAF's subagents* ...........................14

          2.     **The Collectors are USAF's agents under an implied actual authority theory** ................................................19

i

**3.    USAF ratified the Collectors' conduct**................................20

    *a.    USAF unreasonably failed to investigate the Collectors' conduct*.........................................................21

    *b.    USAF knowingly benefitted from the Collectors' conduct*............................................................................24

**IV.   CONCLUSION** ..................................................................25

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES:**

*Anderson v. Liberty Lobby, Inc.*,
　　477 U.S. 242 (1986).................................................................8

*Burlington Indus., Inc. v. Ellerth*,
　　524 U.S. 742 (1998)...............................................................11

*Meyer v. Holley*,
　　537 U.S. 280 (2003)...............................................................10

**UNITED STATES COURT OF APPEALS CASES:**

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
　　722 F.3d 1229 (10th Cir. 2013) ...........................................17

*AT&T Co. v. Winback & Conserve Program, Inc.*,
　　42 F.3d 1421 (3d Cir. 1994) .................................................24

*Bridgeview Health Center, Ltd. v. Clark*,
　　816 F.3d 935 (7th Cir. 2016) ...............................................19

*Cabrera v. Jakabovitz*,
　　24 F.3d 372 (2d Cir. 1994) ..................................................10

*Consumer Fin. Protection Bureau v. Gordon*,
　　819 F.3d 1179 (9th Cir. 2016) .............................................11

*Corns v. Laborers Int'l Union of N. Am.*,
　　709 F.3d 901 (9th Cir. 2013) .................................................8

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
　　76 F.3d 259 (9th Cir. 2006) .................................................24

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
　　771 F.3d 1119 (9th Cir. 2014) ...............................................8

*Friedman v. Live Nation Merch., Inc.*,
   --- F.3d ---, 2016 WL 4394585 (9th Cir. Aug. 18, 2016)..............................22

*Furnace v. Sullivan*,
   705 F.3d 1021 (9th Cir. 2013) ......................................................................8

*Gomez v. Campbell-Ewald Co.*,
   768 F.3d 871 (9th Cir. 2014) ...............................................................10, 20

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
   896 F.2d 1542 (9th Cir. 1989) ....................................................................21

*Harris v. Itzhaki*,
   183 F.3d 1043 (9th Cir. 1999) ...............................................................8, 10

*LaLonde v. Cnty. of Riverside*,
   204 F.3d 947 (9th Cir. 2000) ........................................................................8

*Miller v. Glenn Miller Prods., Inc.*,
   454 F.3d 975 (9th Cir. 2006) ........................................................................8

*Nat'l Liability & Fire Ins. Co. v. Fiore*,
   187 Fed. App'x 733 (9th Cir. 2006) ...........................................................16

*Novato Fire Protection Dist. v. United States*
   181 F.3d 1135 (9th Cir. 1999) ....................................................................11

*Soremekun v. Thrifty Payless, Inc.*,
   509 F.3d 978 (9th Cir. 2007) ........................................................................8

*United States v. Gosselin World Wide Moving, N.V.*,
   411 F.3d 502 (4th Cir. 2005) ......................................................................21

**UNITED STATES DISTRICT COURT CASES:**

*Am. Bullion, Inc. v. Regal Assets, LLC*,
   No. 14-cv-01873, 2014 WL 6453783 (C.D. Cal. Nov. 17, 2014).................13

iv

*Aranda v. Caribbean Cruise Line, Inc.*, No. 12-cv-4069,
    2016 WL 1555576 (N.D. Ill. Apr. 18, 2016) .......... 13, 15, 16, 19, 20, 24, 25

*Charvat v. Valente*,
    No. 12-cv-5746, 2015 WL 3575636 (N.D. Ill. June 8, 2015) ................19, 20

*Henderson v. USAF*,
    No. 13-cv-1845, 2015 WL 4742346 (S.D. Cal. July 28, 2015) ...................18

*Hudson v. Sharp Healthcare*,
    No. 13-cv-1807, 2014 WL 2892290 (S.D. Cal. June 25, 2014).....................9

*Johansen v. GVN Michigan, Inc.*,
    No. 15-cv-00912 (N.D. Ill. June 5, 2015) ....................................................22

*Johansen v. HomeAdvisor, Inc.*,
    No. 16-cv-121, 2016 WL 6432821 (S.D. Ohio Oct. 31, 2016)...................20

*Long v. Nationwide Legal File & Serve, Inc.*,
    No. 12-cv-03578, 2013 WL 5219053 (N.D. Cal. Sept. 17, 2013) ...............10

*Lushe v. Verengo, Inc.*, No. 13-cv-07632,
    2014 WL 5794627 (C.D. Cal. Oct. 22, 2014) ...........................14, 16, 17, 21

*Makaron v. GE Sec. Mfg.*,
    No. 14-cv-1274, 2015 WL 3526253 (C.D. Cal. May 18, 2015) ..................18

*Moriarty v. Hitzeman Funeral Home, Ltd.*,
    No. 98-cv-3563, 1999 WL 286077 (N.D. Ill. Apr. 29, 1999) .....................19

*Smith v. State Farm Mut. Auto. Ins. Co.*,
    30 F. Supp. 3d 765 (N.D. Ill. 2014)............................................................11

*Sturm v. Daylyn Investments, Inc.*,
    No. 12-cv-7305, 2013 WL 8604661 (C.D. Cal. Nov. 6, 2013)....................11

*Thomas v. Taco Bell Corp.*,
    879 F. Supp. 2d 1079 (C.D. Cal. 2012)......................................................18

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**FEDERAL COMMUNICATIONS COMMISSION ORDERS:**

*In re Joint Petition Filed by Dish Network, LLC*,
　　　28 FCC Rcd. 6574 (May 9, 2013) ..........................................*passim*

*In re Rules and Regulations Implementing the TCPA of 1991*,
　　　23 FCC Rcd. 559 (2008)..............................................................5, 6

*In re Rules and Regulations Implementing the TCPA of 1991*,
　　　31 FCC Rcd. 9074 (2016)................................................1, 6, 9, 10

**STATUTES:**

47 U.S.C. § 227 ......................................................................1, 5, 6

**MISCELLANEOUS:**

Restatement (Third) of Agency ......................................................*passim*

## I.   INTRODUCTION

Plaintiff Shyriaa Henderson took out two student loans from private lenders under the Federal Family Education Loan Program ("FFELP") that were guaranteed and later purchased by Defendant United Student Aid Funds, Inc. ("USAF"). After she defaulted on her FFELP loans several years later, she began to receive incessant, unauthorized debt collection calls on behalf of USAF to collect on the loans in violation of the TCPA on a cellular telephone number she never provided to USAF or its agents. All told, Plaintiff received dozens of unlawful calls made by or on behalf of USAF, its servicer, and their debt collectors. In response, Plaintiff filed suit against USAF, on behalf of herself and the millions of other student loan borrowers who were subjected to a similar barrage of unlawful collection calls on USAF's behalf. After more than two years of discovery, Plaintiff moved to certify a proposed class of those borrowers, and Defendant has now moved for summary judgment on Plaintiff's individual TCPA claim.

In support of its bid for summary judgment, USAF makes two arguments. The first is a legal one: that the 2015 Budget Act amendments to the TCPA absolve USAF of any liability for the calls to Plaintiff Henderson. That argument is, to put it mildly, specious. The Budget Act amendment exempts calls made to collect loans *owed to* or *guaranteed by* the U.S. government from liability under the TCPA, *see* 47 U.S.C. § 227(b)(1)(A)(iii), but it specifically does not apply to loans that are only *insured by* the government, like Plaintiff's FFELP loan here. *See In re Rules and Regulations Implementing the TCPA of 1991*, 31 F.C.C. Rcd. 9074, ¶ 19 n. 54 (2016) ("2016 FCC Order") ("[D]ebts *insured* by the United States are not included in the language of the Budget Act amendments; only debts *owed to or guaranteed by* the United States are included in the language of the Budget Act amendments.") (emphasis added). That USAF makes this argument despite admitting the federal government only *insured* Plaintiff's loans is bad enough. That it does so without even citing controlling FCC authority on the issue is arguably improper. In any event, because

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's loans were not guaranteed by or owed to the federal government, the Budget Act exemption offers USAF no refuge and its request for summary judgment on this basis must be denied.

USAF's second argument is factual: that it cannot be held vicariously liable for the calls placed on its behalf because it lacked sufficient control over its agents' calling practices. As an initial matter, the weight of controlling case law makes clear that vicarious liability is an issue too rife with material factual inquiries to be decided on summary judgment. And that's especially so here, where the evidence shows the existence of a contract-based agency relationship between USAF, its loan servicer Navient Solutions, Inc. ("NSI"), and the collection agencies (the "Collectors") who were hired by NSI to place calls to Plaintiff (and the proposed class) on USAF's behalf. Specifically, the evidence—that, *inter alia*, USAF audits the Collectors and their debt-collection practices, USAF has directed NSI and its vendors to cease contact with specific borrowers, USAF limits account placement and payment with Collectors based on their performance, and the contract between USAF and NSI sets strict performance standards the Collectors must meet—shows that the Collectors were agents of NSI and subagents of USAF under a classic agency theory of liability. Moreover, USAF ratified the Collectors' TCPA violations by turning a blind eye to their conduct and nonetheless accepting the benefit of their calls. A jury could therefore easily find that USAF is vicariously liable for the calls received by Plaintiff.

For these reasons, and as discussed further below, the Court should deny USAF's motion for summary judgment in its entirety.

## II.   BACKGROUND

### A.   The Relationship between USAF, NSI, and the Collectors.

USAF is a "guarantor on the FFELP program," meaning that "in the event that the loan defaults, [USAF] will pay that default claim to the lender, and then . . .

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

assume responsibility for that loan." (*See* Marron Decl.,[1] Tharp Dep., Exh. 1, 12:5-16; Verbrugge Dep., Exh. 2, 15:8-16; Defendant United Student Aid Funds, Inc.'s Statement of Material Facts ("USAF Facts") ¶¶ 1-2.) ████████████████████████████

███████████████████████████. (USAF Facts ¶ 8.) NSI, previously known as Sallie Mae, Inc., has been USAF's exclusive servicer of defaulted FFELP loans for well over a decade. (Plaintiff Shyriaa Henderson's Response to Defendant United Student Aid Funds, Inc.'s Statement of Material Facts and Additional Statement of Material Facts in Opposition to Summary Judgment ("Pl. Facts"), ¶ 26.) █████████

█████████████████████████████████████████████████████████████████████

███████████████████████████. (USAF Facts ¶ 4.)

   ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

   █████. (*See generally* USAF Agreement[2]; USAF Facts ¶¶ 8-10.)[3] ██████████

███████████████████████████████████████, (*id.*; USAF Agreement Art. III(M)), through which NSI delegates its efforts to collect on defaulted FFELP loans by "contract[ing] with outside collection agencies to pursue those loans for payment." (Tharp Dep., Exh. 1, 15:8-14; *see also* Verbrugge Dep., Exh. 2, 15:6-16; USAF Agreement Art. III(B), (M); USAF Facts ¶ 11.) Specifically, the USAF

---

[1]    All references to numerical exhibits refer to the exhibits attached to the Declaration of Ronald A. Marron ("Marron Decl.") filed contemporaneously herewith.

[2]    Attached to the Declaration of Lisa M. Simonetti in Support of Defendant's Motion for Summary Judgment as Exh. A, Tharp Depo., Exh. 2, Fifth Restated and Amended Guarantee Service Agreement for United Student Aid Funds, Inc., hereinafter referred to as the "USAF Agreement".

[3] ██████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████.

3

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Agreement states: ███████████████████████████████████

██████████████████████████ (USAF Agreement Art. III(B).)[4]

███████████████

████████████████████████. (*See* Pl. Facts ¶¶ 17, 47; USAF

Agreement Ex. A.) ██████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████. (*See* USAF Agreement Art. III(B); *see also* ECF. No. 142-29 through 142-39 (filed under seal) (Exhs. 27-37, sample NSI Collector contracts).) As of January 2015, NSI had 17 total Collectors under contract collecting on defaulted FFELP loans for USAF.[5] (Pl. Facts ¶ 27.) When a Collector receives payment on a defaulted loan, it remits that payment to NSI, who in turn transfers the payment to USAF. (*Id.* ¶ 37.)

To maximize collections on billions of dollars in defaulted loans, NSI requires the Collectors to engage in skip tracing, "another term for locating" new numbers, which can include calling relatives and known acquaintances or using third party lookup services. (Pl. Facts ¶ 28.) Other than requiring do-not-call requests to be honored and noting when a telephone number belongs to a deceased individual, neither NSI nor USAF place restrictions on the use of telephone numbers obtained

---

[4] ████████████████████████

████████████████. (USAF Agreement Art. III(M).) Prior to the yearly meeting, NSI must provide USAF with a "Portfolio Management Plan." (Pl. Facts ¶ 31.) ██████████████████████████████. (USAF Agreement Art. III(M).)

[5] ████████████████████████████

████████████████. (USAF Facts ¶ 16.)

4

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

through skip tracing, such as requiring prior express consent before calling, or prohibiting calling those numbers with predictive dialers. (Pl. Facts ¶ 29.)

NSI regularly audits the Collectors in accordance with a yearly audit guide provided by USAF, and it produces daily, weekly, and monthly reports to USAF regarding the Collectors' performance. (Pl. Facts ¶ 38.) ███████████████████
████████ (*Id.* ¶ 39) ████████████████████████████████████████████
███████████ (*Id.*; USAF Facts ¶ 18; *see also* USAF Agreement Art. III(B) ("█████████████████████████████████████████████████████
██████████████████████████████").)
███████████████████████████████████████████████████████████
███████████████████████████████. (Pl. Facts ¶ 40.)
███████████████████████████████████████████████████████████
███████████████████████████ (*Id.* ¶ 40.)
███████████████████████████████████████████████
████████████████████████████ (Pl. Facts ¶ 51.) ████████████
███████████████████████████████████████████████████████ (USAF Agreement Art. VII(B); USAF Facts ¶ 12.)

## B.    The Calls Made on Behalf of USAF Are Governed by the TCPA.

In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, it prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii).

On January 4, 2008, the FCC released a declaratory ruling wherein it confirmed that autodialed and prerecorded calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party. *In re Rules and Regulations Implementing the*

5

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*TCPA of 1991*, 23 FCC Rcd. 559, 564-65 (2008) ("2008 FCC Order"). The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." 2008 FCC Rcd, 23 FCC Rcd. at 565.

On May 9, 2013, the FCC issued a new declaratory ruling discussing the scope of liability under the TCPA, holding that "while a seller does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6585 (May 9, 2013) ("*Dish Network* Order").

The Bipartisan Budget Act of 2015 amended the TCPA to exempt from the prior express consent requirement all calls made to collect on loans owed to or guaranteed by the federal government. *See* 47 U.S.C. § 227(b)(1)(A)(iii) ("It shall be unlawful for any person to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . unless such call is made solely to collect on a debt owed to or guaranteed by the United States.") Recently, the FCC clarified that only "debts owed to or guaranteed by the United States are included in the Budget Act amendments[,]" to the exclusion of "debts insured by the United States[.]" *In re Rules and Regulations Implementing the TCPA of 1991*, 31 F.C.C. Rcd. 9074, ¶ 19 n. 54 (2016).

USAF maintains a TCPA compliance guide for its own purposes (Pl. Facts ¶ 52), but despite knowing that NSI and the Collectors place calls to borrowers to collect on defaulted loans, USAF's representative stated that it does not have any proactive measures in place to ensure compliance with the TCPA. (*Id.* ¶ 53.)

6

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### C. Plaintiff Henderson Never Consented to Receive Autodialed Calls Featuring Prerecorded Messages on Behalf of USAF.

Plaintiff took out a student loan from Signet Bank in January of 1993 in order to attend Prairie View A&M University. (Pl. Facts ¶ 78; USAF Facts ¶ 5.) ████████ ██████████████████████████████████████████████████████████████████████. (USAF Facts ¶ 6.) Plaintiff took out a second student loan guaranteed by USAF in April of 2007 to attend the University of Phoenix. (Pl. Facts ¶ 79; USAF Facts ¶ 6.) She ultimately defaulted on that loan as well. (*Id.*) █████████████████████ ████████████████████████████. (USAF Facts ¶ 7.)

USAF, as the guaranty agency, purchased the claims to Plaintiff's defaulted loans in 2010. (Pl. Facts ¶ 54.) USAF hired NSI (then known as Sallie Mae) to service and collect on Plaintiff's student loans under its defaulted portfolio management service. (*Id.*) NSI, as required by its contract with USAF, hired several Collectors, including GC Services Limited Partnership, National Enterprise Systems, Pioneer Credit Recovery, Inc., General Revenue Corporation, and NCO Group, to collect on Plaintiff's student loans by making phone calls to Plaintiff's cellular phone on behalf of USAF. (*Id.* ¶ 55.)

Beginning in 2010 and through approximately June 2013, Plaintiff received a number of unsolicited phone calls, featuring artificial or prerecorded voices, to her wireless phone made on behalf of USAF, attempting to collect payments on her student loans. (*Id.* ¶ 56). Plaintiff did not give USAF or any of the third party Collectors prior express consent to call her cellular telephone number with the use of an autodialer and/or prerecorded message. (*Id.* ¶ 57.)

Plaintiff filed her putative class action on August 8, 2013, alleging that USAF and its Collectors violated the TCPA's restriction on using an autodialer to call her without consent. (ECF No. 1.)

7

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## III.    ARGUMENT

Summary judgment is appropriate only "when, viewing the evidence in the light most favorable to the non-moving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Corns v. Laborers Int'l Union of N. Am.*, 709 F.3d 901, 907 (9th Cir. 2013). In considering whether summary judgment should be entered, courts "do[] not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court must determine whether the record "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. "If conflicting inferences may be drawn from the facts, the case must go to the jury." *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000). In other words, summary judgment is inappropriate if "as to any given material fact, evidence produced by the moving party . . . conflicts with evidence produced by the nonmoving party." *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013).

Under federal common law, "the question of agency," in particular, "should be submitted to the jury unless the facts are clearly insufficient to establish agency or there is no dispute as to the underlying facts." *Harris v. Itzhaki*, 183 F.3d 1043, 1054 (9th Cir. 1999). "Summary judgment is improper 'where divergent ultimate inferences may reasonably be drawn from the undisputed facts.'" *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (quoting *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006)).

Here, USAF asserts two equally flawed bases for summary judgment. ██████ ██████████████████████████████████████████████████████████████ ███████████████████████████. That argument fails because the exemption does not apply to debts that are only *insured* by (rather than guaranteed by or owed to)

the federal government, like the loans of Plaintiff and each putative Class member here. ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████. That argument, too, is mistaken. USAF had an agency relationship with NSI and a subagency relationship with each of the Collectors. In any event, USAF ratified the Collectors' conduct by knowingly accepting and retaining the benefits of their unlawful calls (in the form of loan payments). Accordingly, the Court should deny USAF's motion for summary judgment.

### A. The Budget Act Amendment Does Not Exempt the Calls at Issue in this Case.

████████████████████████████████████████████████████████████

██████ (MSJ at 13.) But as the FCC recently explained, "debts *insured* by the United States are not included in the language of the Budget Act amendments; only debts *owed to or guaranteed by* the United States are included in the language of the Budget Act amendments." 2016 FCC Order, 31 F.C.C. Rcd. at ¶ 19 n. 54 (2016) ("2016 FCC Order") (emphasis added).[6] ████████████████████████████

██████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████

████████████████████ *See also* 2016 FCC Order, 31 F.C.C. Rcd. at ¶ 19 n. 54.

Indeed, USAF explains that it ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ (MSJ at 5.) ████████████████

---

[6]     The FCC's rulings regarding the TCPA are binding on this Court. *See Hudson v. Sharp Healthcare*, No. 13-cv-1807, 2014 WL 2892290, at *3 (S.D. Cal. June 25, 2014) ("The FCC's interpretations of TCPA are controlling unless invalidated by a court of appeals.") (quotations omitted).

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1　█████████████████████████████████ (*Id.*; Pl. Facts ¶ 59.) In

2　other words, ████████████████████████████████████████

3　███████████████, the TCPA's sovereign-debt exception does not apply

4　here. *See* 2016 FCC Order, 31 F.C.C. Rcd. at ¶ 19 n. 54 ("Congress specified that

5　the debt should be 'owed to or guaranteed by the United States.'") (quoting the

6　Budget Act § 301(a)(1)(A)).

7　　**B.　USAF Is Vicariously Liable for Its Collectors' TCPA Violations.**

8　██████████████████████████████████████████

9　████████████████████████████████████████████

10　███████████████. (MSJ at 16.) But "the question of agency should be submitted to

11　the jury unless the facts are *clearly insufficient* to establish agency or there is no

12　dispute as to the underlying facts." *Harris*, 183 F.3d at 1054 (emphasis added) (citing

13　*Cabrera v. Jakabovitz*, 24 F.3d 372, 386 n.13 (2d Cir. 1994)). Here, the material facts

14　preclude summary judgment because they show that (i) the Collectors were agents

15　and subagents of USAF (and agents of NSI), and (ii) USAF's ratification of the

16　Collectors' conduct supports a finding of vicarious liability. Thus, the existence of

17　an agency relationship between USAF, NSI, and the Collectors raises a disputed

18　issue of material fact incapable of resolution before trial. *See Long v. Nationwide*

19　*Legal File & Serve, Inc.*, No. 12-cv-03578, 2013 WL 5219053, at *9 (N.D. Cal. Sept.

20　17, 2013) (denying summary judgment on vicarious liability when plaintiff raised

21　"triable issue of fact").

22　　　**1.　A jury could find that the Collectors are USAF's subagents.**

23　　USAF does not dispute that the TCPA provides for vicarious liability under

24　classical agency principles. Indeed, the Ninth Circuit has found "that the TCPA

25　imposes vicarious liability where an agency relationship, as defined by federal

26　common law, is established between the defendant and a third-party caller." *Gomez*

27　*v. Campbell-Ewald Co.*, 768 F.3d 871, 877 (9th Cir. 2014) (quoting *Meyer v. Holley*,

28　537 U.S. 280, 285 (2003)). "The classical definition of agency contemplates the

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control," *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6585 (May 9, 2013) ("*Dish Network* Order") (internal quotations omitted), but a "person may be an agent although the principal lacks the right to control the full range of the agent's activities, how the agent uses time, or the agent's exercise of professional judgment." Restatement (Third) of Agency § 1.01, cmt. c.[7] "A principal's failure to exercise the right of control does not eliminate it, nor is it eliminated by physical distance between the agent and principal." *Id.*

When an agent is authorized to hire subagents, a principal is liable for the acts of those subagents. *Id.* § 3.15, cmt. b; *see also Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 775 (N.D. Ill. 2014). "A person appointed by an agent to act on behalf of the agent's principal is a subagent if the appointing agent has agreed with the principal that the appointing agent shall be responsible to the principal for the agent's conduct." Restatement (Third) of Agency § 3.15, cmt. b.

Here, the facts readily support the existence of an agency relationship between the Collectors and USAF.

         *a.*     *NSI is USAF's agent for the purpose of hiring Collectors.*

USAF does not and cannot dispute that NSI acted as its agent when it hired the Collectors to call about loans in default.[8] The evidence clearly shows that USAF

---

[7]     "To ascertain whether an agency relationship exists . . . , the federal courts look to the Restatement . . . of Agency[.]" *Sturm v. Davlyn Investments, Inc.*, No. 12-cv-7305, 2013 WL 8604661, at *3 (C.D. Cal. Nov. 6, 2013); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 755 (1998) (identifying the Restatement as "a useful beginning point for a discussion of general agency principles"); *Consumer Fin. Protection Bureau v. Gordon*, 819 F.3d 1179, 1191 (9th Cir. 2016).

[8]     By failing to dispute the agency relationship between USAF and NSI, or between NSI and the Collectors, USAF waives that argument. *See Novato Fire Protection Dist. v. United States*, 181 F.3d 1135, 1141 n.6 (9th Cir. 1999).

---

exercised control over NSI in a number of ways. First, as USAF stated in its motion, ███████████████████████████████████████. (MSJ at 6-8.). ████████████████████████████████████████████████████████████████████████.” (USAF Facts ¶ 11 (citing USAF Agreement Exhibit A).) The USAF Agreement ██████████████ ███████████████████████████. For example, █████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████ ████ █ ████ ███ ████ ████ ████ █ ████████ ███████████ (*Id.* Art. III(M).) ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████ (*Id.*) And NSI's corporate representative indicated that, in practice, NSI keeps USAF abreast of developments far more often than annually or quarterly. (Pl. Facts ¶ 38.)

Second, ████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████. (USAF Agreement, Art. III(B).) █████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ (*Id.*) ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ (*Id.* Art. IV(2).) ███████████████.) ████████████████████████████████████ ██████████████████████████. (*Id.* Art. V.) ████████████████ ████████████████████████████████████████████████████████

1  ████████ (*Id.*)

2      Thus, there is ample evidence for a jury to find USAF has manifested assent

3  to NSI that NSI shall act on its behalf and subject to its control.[9] *See Dish Network*

4  Order at 6585; *see also Aranda v. Caribbean Cruise Line, Inc.*, No. 12-cv-4069, 2016

5  WL 1555576, at *12 (N.D. Ill. Apr. 18, 2016) ("An agent has express actual authority

6  when the principal expressly grants the agent the authority to perform a particular

7  act").[10]

8          *b.    The Collectors are NSI's agents for purposes of collecting*

9              *on defaulted loans.*

10      Second, there is a significant amount of evidence showing that the Collectors

11  were NSI's agents for the purpose of collecting on USAF defaulted student loans.

12  Just as USAF contracts with NSI, so too does NSI contract with the Collectors to

13  pursue loans in default for payment. (Pl. Facts ¶ 67; *see also* ECF No. 142 (Exhs.

14  27-37, sample contracts between NSI and Collectors).) NSI also regularly audits the

15  Collectors regarding metrics like performance quality, compliance with federal and

16  state law, and the review of customer complaints lodged against the Collectors. (Pl.

17  Facts ¶ 68.)

18      NSI further controls the Collectors' manner and methods for placing the calls

19  ────────────────────

20  [9]  ████████████████████████████████████

21  ███████████. "[T]he substance of the parties' relationship, not the label they give it, determines the existence of agency." *See Am. Bullion, Inc. v. Regal*

22  *Assets, LLC*, No. 14-cv-01873, 2014 WL 6453783, at *3 (C.D. Cal. Nov. 17, 2014)

23  (quotation omitted). Consistent with the evidence above, a factfinder would likely deduce that an agency relationship exists between USAF and NSI.

24  [10]  Even USAF's and NSI's actions throughout this litigation are indicative of

25  the agency relationship between the two. For example, USAF and NSI commingled document productions in this action, which—in conjunction with their

26  other conduct—further highlights the agency relationship between the two. (*See*

27  ECF No. 136 at 1-2.) Moreover, USAF's expert, Jerry Kaufman, was actually retained by NSI, (*see* Pl. Facts ¶ 76), and USAF has submitted documents in this

28  case signed by its attorneys as "counsel for NSI." (*Id.* ¶ 77.)

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

at issue. To start, NSI can and does review and modify Collectors' call scripts as needed for compliance purposes. (Pl. Facts ¶ 71.) NSI also reviews the Collectors' collection notes to check for indications of prior express consent to be called, and for whether the Collectors use automated dialing systems. (*Id.* ¶ 72.) And not only does NSI require the Collectors to skip trace[11] to collect new telephone numbers for debtors, it places no restrictions on the Collectors' ability to contact numbers obtained by skip tracing. (Pl. Facts ¶¶ 28, 29.) Moreover, NSI is permitted to and has instructed vendors to change their collection practices, and to stop collection efforts with respect to specific customers, including at USAF's request. (*Id.* ¶ 45.)

In other words, the evidence shows that NSI has control over not only *how* the Collectors call class members, but whether they do so at all. That is more than sufficient to support a finding of agency between NSI and the Collectors. *See Lushe v. Vereng, Inc.*, No. 13-cv-07632, 2014 WL 5794627, at *5 (C.D. Cal. Oct. 22, 2014) (finding triable issue of a fact regarding agency when evidence showed that party "provided input for the scripts" used by third party telemarketers and "provided performance-related feedback."); *Dish Network* Order at 6585 ("The classical definition of agency contemplates … that the agent shall act on the principal's behalf *and subject to the principal's control*.") (emphasis added).

> c.    The Collectors are USAF's subagents.

With that, the next question becomes whether the Collectors, as agents of NSI, are also subagents of USAF. They unquestionably are. "An agent who appoints a subagent delegates to the subagent power to act on behalf of the principal that the principal has conferred on the agent. A subagent acts subject to the control of the appointing agent, and the principal's legal position is affected by action taken by the

---

[11]    Skip tracing is "another term for locating" new contact information for borrowers. (Pl. Facts ¶ 28.) This typically takes the form of "pulling a credit bureau report for that given borrower, utilizing an outside skiptracing firm for support, [or] phoning up references that might be available." (*Id.*)

subagent as if the action had been taken by the appointing agent." Restatement (Third) Of Agency § 3.15 (2006), cmt. b. "An agent has actual authority to create a relationship of subagency when the agent reasonably believes, based upon a manifestation from the principal, that the principal consents to the appointment of a subagent." Restatement (Third) of Agency § 3.15, cmt. c.

Here, ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████. (*See* USAF Facts ¶ 8.) ████████████████████████████████████████ ████████████████████████████████████████ (USAF Agreement Art. III (B).) In other words, NSI had actual authority from USAF to hire the Collectors as subagents.

NSI reports to USAF upon hiring and firing a collection vendor. (Pl. Facts ¶ 74.) Although NSI sets the performance standards for the Collectors, USAF still provides input and comments regarding the same. (*Id.* ¶ 75.) ████████████ ████████████████████████████████████████. (USAF Facts ¶ 18; *see also* USAF Agreement Art. III(B).) Pursuant to these audits, USAF can—and has—reviewed Collectors' account notes and calling notes if it takes issue with the Collectors' calling practices. (Pl. Facts ¶ 41.) Accordingly, USAF's vicarious liability extends to any actions taken by the Collectors, just as it would to NSI in its capacity as agent. *See* Restatement (Third) of Agency § 3.15 cmt. d (2006). ("As between a principal and third parties, it is immaterial that an action was taken by a subagent as opposed to an agent directly appointed by the principal.").

The facts and evidence in this case are strikingly similar to those discussed in *Aranda v. Caribbean Cruise Line, Inc.*, No. 12-cv-4069, 2016 WL 1555576, at *12 (N.D. Ill. Apr. 18, 2016). In *Aranda*, each of the three defendants sought summary judgment on the issue of vicarious liability for an aggressive timeshare sales and marketing campaign that allegedly violated the TCPA, run by a third party company

called ESG. *Id.* at * 1. Defendants argued that there was insufficient control over ESG to support a finding of vicarious liability. *Id.* Plaintiffs, on the other hand, argued that the evidence showed that ESG was the agent of two defendants (CCL and VOMT), and the subagent of defendant Berkley Group, Inc. *Id.* at * 2. The court agreed and denied the defendants' motion, finding:

> [A] reasonable jury could conclude from the evidence that Berkley impliedly authorized VOMT to act as its agent and enlist the subagents that carried out the call campaign. The evidence permits the reasonable conclusion that Berkley expressly authorized VOMT to seek out vendors to generate leads for its timeshare products, . . . and that CCL expressly authorized ESG to make phone calls offering a free cruise. Even considering the fact that all of the contracts expressly prohibited agents and subagents from violating the law, a reasonable jury could find vicarious liability based on grants of actual authority.

*Id.* at *12.

In this case, the Court should similarly find that the evidence before it raises a triable issue with regards to vicarious liability. Like in *Aranda*, USAF expressly authorized NSI to "seek out vendors" to effectuate debt collection on defaulted loans in USAF's portfolio. *See id.* Additionally, there can be no question that both USAF and NSI authorized the Collectors to make phone calls to borrowers for that purpose. On top of all those listed above, these facts suggest the existence of agency, and precludes summary judgment. *See Nat'l Liability & Fire Ins. Co. v. Fiore*, 187 Fed. App'x 733, (9th Cir. 2006) (finding material issue of fact as to whether purported agent or subagent had authority from principal precluded summary judgment); *Lushe*, 2014 WL 5794627 at *5 (denying summary judgment in TCPA action due to questions of fact regarding defendant's agency relationship with its contractor and subcontractor, who placed the calls at issue).

For its part, ████████████████████████████████████████ ████████████████████████████████. (MSJ at 16-20.) But its argument fails to recognize that a "subagent can [] act as an agent for the principal even though the

principal's control is indirect." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1251 (10th Cir. 2013) (citing Restatement (Third) of Agency § 3.15); *see also Lushe v. Verengo, Inc.*, No. 13-cv-07632, 2014 WL 5794627, at *5 (C.D. Cal. Oct. 22, 2014) (holding that defendant who knew that contractor was using subcontractor to carry out marketing could be held liable for subcontractor's TCPA violations). In fact, contrary to USAF's contention, there is actually more than enough evidence to support a finding of vicarious liability by a jury. For example:

- USAF has "reached out to NSI to inform . . . [a collection] agency that holds [a borrower] account to potentially cease conversations." (Pl. Facts ¶ 44.)

- In response to a lawsuit, USAF has directed NSI or its vendors to cease contact. (*Id.*, ¶ 49.)

- USAF has requested call logs from vendors through NSI, and NSI has produced them back to USAF in the past. (*Id.*, ¶ 50.)



- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (USAF Agreement Art. III(M).)

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*Id.*)

- USAF can and has directed NSI to ensure that Collectors cease collection efforts with respect to specific accounts. (Pl. Facts, ¶ 45.)

- USAF audits have directly led to suspension of placements with Collectors. (*Id.* ¶ 46.)

Moreover, although USAF's corporate representative testified that NSI (not USAF) sets performance standards for the Collectors (Pl. Facts, ¶ 75), ▮▮▮▮▮▮ ▮▮▮▮▮▮▮ ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ ▮▮▮ ▮▮▮▮. (*See* USAF Agreement Art. III(M).) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17

███████████████████████. (*Id.*)[12] NSI's representative also confirmed that USAF's audits of the Collectors can and do affect those Collectors acquisition and retention of accounts for collection. (Pl. Facts, ¶ 48.)

Not surprisingly then, the cases relied upon by USAF—principally *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079 (C.D. Cal. 2012) and *Makaron v. GE Sec. Mfg.*, No. 14-cv-1274, 2015 WL 3526253 (C.D. Cal. May 18, 2015)—are factually distinguishable. In *Thomas*, the plaintiff argued that the defendant was vicariously liable for telemarketing text messages sent by an advertising association run by owners of the Defendant's local franchise restaurants. The plaintiff argued the defendant had control over whether it would provide funding for the telemarketing campaign at issue. *Thomas*, 879 F. Supp. 2d at 1081–83. The Court found that insufficient to establish an agency relationship. Crucially, the Court noted, the defendant could not control the manner and means of the telemarketing campaign, or even stop it from proceeding; rather, the defendant could only refuse to fund it. *Id.* at 1085–86. The franchise owners were still free to self-fund the campaign. *Id.* The facts in *Makaron* are similar. There, "the only evidence that [defendant] ha[d] control of the sales tactics of its third-party distributors and/or authorized dealers it that it licensed the use of [defendant's trademarks to its authorized dealers." *Makaron*, 2015 WL 3526253, at *7. That control, however, had nothing to do with the defendant's ability to control the specific telemarketing practices at issue. *Id.* Here, by contrast, USAF audits the Collectors' debt-collection practices, including a review of their account notes, and has suspended placements where Collectors have engaged in improper collection efforts. (Pl. Facts, ¶ ¶ 39, 41, 46, 48, 65; *see also*

---

[12]   Even the Court has recognized—albeit in a different context—that USAF exercises sufficient "legal custody and control over a substantial variety of documents created and/or maintained by [NSI] and collection vendors hired by [NSI] to collect on USA Funds' debts" so as to require USAF to compel production of certain documents. *Henderson v. USAF*, No. 13-cv-1845, 2015 WL 4742346, at *3 (S.D. Cal. July 28, 2015).

18

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

USAF Agreement Art. III(B).)

Thus, there are more than sufficient facts to show a subagency relationship between USAF and the Collectors (with NSI as an intermediary), and summary judgment must be denied as a result.

### 2. The Collectors are USAF's agents under an implied actual authority theory.

Next, the undisputed facts also show that the Collectors could reasonably have believed that they had authority to act on USAF's behalf—that they had actual authority. "Actual authority may be express or implied." *Aranda*, 2016 WL 1555576, at *11 (citing *Bridgeview Health Center, Ltd. v. Clark*, 816 F.3d 935 (7th Cir. 2016)). "While express actual authority is proven through words, implied actual authority is established through circumstantial evidence." *Bridgeview*, 816 F.3d at 939. "A principal grants implied actual authority to an agent when the principal's reasonably interpreted words or conduct would cause an agent to believe that the principal consents to have an act done on her behalf." *Aranda*, 2016 WL 1555576, at *11. "Thus, implied actual authority is created 'through words or conduct of the principal which, reasonably interpreted, cause . . . an agent . . . to believe that the principal consents to have an act done on his behalf.'" *Charvat v. Valente*, No. 12-cv-5746, 2015 WL 3575636, at *2 (N.D. Ill. June 8, 2015) (quoting *Moriarty v. Hitzeman Funeral Home, Ltd.*, No. 98-cv-3563, 1999 WL 286077, at *7 (N.D. Ill. Apr. 29, 1999)).

Here, in addition to making calls on USAF's behalf, the Collectors were permitted to accept payments on its behalf, and even to offer extensions on payment deadlines on its behalf—they actually do both. (Pl. Facts, ¶ ¶ 60, 61.) Similarly, the Collectors administer the loan rehabilitation program for USAF loans, which involves "[e]stablishing a repayment arrangement with the borrower so that the borrower is able to make nine consecutive on-time payments within a ten-month window." (Tharp Dep., Exh. 1, 35:20–36:2.) And if there were any doubt that the

19

Collectors could reasonably believe they had authority to act on USAF's behalf, it is removed by USAF's audit process. That is, at least once a year (and frequently more often), USAF audits each vendor and, assuming no issues arise, it *approves* of the Collector's processes, procedures and collection efforts. (Verbrugge Dep., Exh. 2, 39:16–20.)

Accordingly, there is at the very least an issue of material fact sufficient to prevent summary judgment as to whether the vendors had implied actual authority to place the calls on USAF's behalf. *See Aranda*, 2016 WL 1555576, at *11; *Charvat*, 2015 WL 3575636, at *2.

### 3.   USAF ratified the Collectors' conduct.

USAF's motion also fails to recognize that vicarious liability can arise outside the realm of a classical agency theory of recovery. Namely, even if the Collectors were not in an agency relationship with USAF (or were acting outside its scope), a jury could easily find that USAF ratified their conduct nonetheless. *See, e.g.*, *Dish Network* Order, 28 FCC Rcd. At 6584 ("[A] seller may be liable for violations by its representatives under a broad range of agency principles, including . . . ratification."); *Gomez*, 768 F.3d at 878 ("[A]gency may be established by . . . ratification."); *Johansen v. HomeAdvisor, Inc.*, No. 16-cv-121, 2016 WL 6432821, at *5 (S.D. Ohio Oct. 31, 2016) ("[T]he FCC made clear that . . . . defendants may be held vicariously liable for TCPA violations under a broad range of federal common-law agency principles, including . . . ratification.") (quotation omitted). Under the Restatement, "[r]atification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) of Agency § 4.01. The principal-agent relationship can be created by the principal's ratification of the agent's act; there need not be a pre-existing agency relationship. *Id.* cmt. b.

Although ratification can occur if a principal knows of its agent's or subagent's conduct, a principal may even "ratify the action of an agent or other actor

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*without knowing* material facts." *Id.* § 4.06, cmt. d (emphasis added); *see also id.* § 3.15, cmt. d. "[W]hen the principal is shown to have had knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation," the principal is vicariously liable for the underlying act. *Id.* § 4.06, cmt. d; *see also Lushe*, 2014 WL 5794627 at *4. In such a case, "the fact that the principal had knowledge may be inferred, as may the principal's assumption of risk of lack of knowledge." *Id.* In short, USAF cannot escape liability by intentionally avoiding knowledge of its Collectors' unlawful conduct.

> a.   *USAF unreasonably failed to investigate the Collectors' conduct.*

"As [a] sophisticated business operating in a regulatory regime, [USAF is] properly charged with knowledge of [a] statute that applies to [its] behavior." *United States v. Gosselin World Wide Moving, N.V.*, 411 F.3d 502, 513 (4th Cir. 2005) (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1548 (9th Cir. 1989)). Where placing telephone calls to collect on defaulted loans is concerned, that includes the TCPA. To determine whether USAF ratified the debt collection calls placed without call recipients' prior express consent, therefore, requires a fact-intensive inquiry as to whether it knew enough about the nature of the calling scheme that a reasonable person would have investigated it further. Because a reasonable person involved in debt collection calls would know that the TCPA regulates those calls, the guaranty agency that knows its servicer is placing or overseeing the calls should make sure those calls are being placed legally.

██████████████████████████████████████

████████████████████████████████ (MSJ at 17.) ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████ (*See* USAF Agreement Art. III(B), (M).) USAF cannot now escape liability for the resulting TCPA violations by claiming lack of knowledge or control

21

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

over the unlawful calls. As Judge Posner (sitting by designation in a district court) recently reminded a TCPA defendant who attempted to subcontract its liability: "You are responsible to the victims of calls made on your behalf by companies which you have contracts," whether those calls were placed by "contractors, [] subcontractors, [or] sub-subcontractors." Exh. 8, Transcript of Proceedings at 7, *Johansen v. GVN Michigan, Inc.*, No. 1:15-cv-00912 (N.D. Ill. June 5, 2015). "[I]t would be ridiculous otherwise, ridiculous." *Id.*

Despite USAF's contention that it lacked sufficient knowledge to be held accountable for the Collectors' illegal calls, the facts paint a different picture. To start, there is compelling evidence that NSI (whose conduct USAF was responsible for as its principal) knew enough about the Collectors' calling practices to make its failure to investigate unreasonable. As discussed at length *supra*, NSI regularly audits Collectors, both as a matter of course and in response to customer complaints. (Pl. Facts, ¶ 69.)  NSI's audits of the Collectors' calling practices also evaluate vendor performance and to ensure compliance with applicable regulations and statutes, like the TCPA. (*Id.*) NSI has also taken affirmative steps in the past to correct any subpar collection practices by, for example, directing vendors to changing calling scripts that do not follow state or federal law, like the TCPA (Pl. Facts, ¶ 71) and reviewing collection notes to check for notations of borrowers' consent to be called. (Pl. Facts, ¶ 72.)

There is also plenty of circumstantial evidence that USAF, for its part, unreasonably failed to investigate the calling practices of the Collectors. *Cf. Friedman v. Live Nation Merch., Inc.*, --- F.3d ---, 2016 WL 4394585, at *7 (9th Cir. Aug. 18, 2016) ("This court has long recognized that circumstantial evidence can be used to prove any fact.") (quotation omitted). For example:

- ███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT



- ███████████████████████████████████████
  ███████████████████████████████████████
  ██████████████████ (Pl. Facts, ¶ 34; USAF Agreement Art. III(M).)

- USAF also knew that some of the Collectors had and used autodialers. (Pl. Facts, ¶ 35.)

- ███████████████████████████. (USAF Facts ¶ 12.) ██
  ███████████████████████████████████████
  ████████████████ (Pl. Facts, ¶ 40.)

- ███████████████████████████████████████
  ███████████████████████████████████████
  ██████ █ ██████ ███████ ██████ █ █████ █.'' (MSJ at 10 (citing USAF Facts ¶ 18).)

- As a result of at least one such audit, USAF found improper collection efforts on behalf of a collection vendor. (Pl. Facts, ¶ 42.)

- Despite the fact that USAF has found improper collection efforts in at least one audit, USAF admits that it "wouldn't really do anything" if it discovered that one of the Collectors was sued for violating the TCPA. (Pl. Facts, ¶ 43.)

- Moreover, USAF has also indicated that it receives borrower complaints at times regarding collection efforts, but opts to turn a blind eye and forwards those complaints to NSI. (Pl. Facts, ¶ 69.)

- Although it has a TCPA compliance policy of its own, USAF does not investigate NSI's or the Collectors' TCPA compliance in audits (Pl. Facts, ¶ 52), and its corporate representative admits that it "does not know" whether NSI or the Collectors have TCPA compliance policies of their own. (Tharp Dep., Exh. 1, 106:12-20.)

- And, finally, USAF confirmed that there is not "anything that USA Funds does proactive[ly] to ensure compliance with the TCPA." (Pl. Facts, ¶ 53.)

Worse still, USAF's representative stated that even if it were made aware of potential TCPA violations by Collectors acting on its behalf, it would simply look the other away. (*See* Tharp Dep., Exh. 1, 68:21–69:15 (stating that USAF has not

23

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ever investigated its Collectors' collection practices in response to a lawsuit (including this one) or governmental inquiry); *id.* at 113:2–7 ("Q. Do you know what would happen if USA Funds was notified that one of the vendors was sued for violating the TCPA? We would just take it as being informed of a particular activity. I'm not – we wouldn't really do anything with it.").)

A jury could easily find that the above facts reasonably should have prompted an investigation into the calling practices of the Collectors, or at the *very* least, into the policies NSI had in place to ensure that the vendors they hired were complying with the TCPA. Instead, USAF stood passively by while simultaneously accepting the benefits of the Collectors' unlawful conduct.

> ### b.   *USAF knowingly benefitted from the Collectors' conduct.*

USAF's retention of the benefits derived from the Collectors' calling practice further supports a finding of agency by ratification. A principal ratifies the actions that a subagent takes on its behalf when it "knowingly chooses to accept the benefits of unauthorized actions" taken by that subagent. *Aranda*, 2016 WL 1555576, at *13. The federal common law of agency simply does not permit principals to shield their eyes to their agents' (or subagents') practices, while reaping the benefits of the unlawful conduct. *Cf. Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263 (9th Cir. 2006) (refusing to allow the operators of a "swap meet" for counterfeit music recordings to escape vicarious liability for infringement, even though the operators were not themselves selling counterfeit recordings). It requires them to *at least* investigate to avoid vicarious liability. As the FCC has recognized, this is the very *purpose* of vicarious liability under the TCPA, without which "the [principal] . . . would benefit from undeterred unlawful acts[.]" *Dish Network* Order, 28 FCC Rcd. at 6588 (citing *AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1434 (3d Cir. 1994)).

A jury could certainly find that USAF benefitted from the Collectors' TCPA violations, and then knowingly retained that benefit. Indeed, USAF itself has

acknowledged that it retained the benefit of the Collectors' unlawful calls. (Pl. Facts, ¶ 60.) ███████████████████████████████████████████████ ████████████████████████████████ (*Id.*; Pl. Facts, ¶ 34.) ███████ ███████████████████████████████████████████████████ █████████████████████. (*Id.*) Even where a Collector is not paid because it is determined to have used improper collection practices, USAF nonetheless retains the payments collected as a result of those practices. (Pl. Facts, ¶ 61 (stating that USAF would never refund money to a borrower in that situation).)

Given these facts, a jury could find this constitutes ratification of the Collectors' acts. *See, e.g.*, *Aranda*, 2016 WL 1555576, at *13 (finding a jury could reasonably conclude agency by ratification when the defendants were aware of the call campaign, were "aware of the possibility that some or all of the calls being made were unlawful under the TCPA," and "that each of them continued to accept business flowing from the campaign.").

## IV. CONCLUSION

For the reasons stated above, Plaintiff Shyriaa Henderson respectfully requests that the Court (i) deny Defendant's motion for summary judgment, and (ii) enter any such other relief as the Court deems reasonable and just.

Respectfully submitted,

**SHYRIAA HENDERSON**, individually and on behalf of all others similarly situated,

Date: November 30, 2016      By: */s/ Ronald A. Marron*
                                      One of Plaintiff's Attorneys

Ronald A. Marron (SBN 175650)
ron@consumersadvocates.com
Alexis Wood (SBN 270200)
alexis@consumersadvocates.com
Kas Gallucci (SBN 288709)
kas@consumersadvocates.com

*Henderson v. United Student Aid Funds, Inc. d/b/a USA Funds*, No. 13-cv-1845
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LAW OFFICES OF RONALD A. MARRON
651 Arroyo Drive
San Diego, California 92103
Tel: 619.696.9006
Fax: 619.564.6665

Benjamin H. Richman (Admitted *pro hac vice*)
brichman@edelson.com
J. Dominick Larry (Admitted *pro hac vice*)
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378