Vedder Price (CA), LLP
Lisa M. Simonetti (State Bar No. 165996)
lsimonetti@vedderprice.com
1925 Century Park East, Suite 1900
Los Angeles, California 90067
T: +1 (424) 204 7700
F: +1 (424) 204 7702

Vedder Price P.C.
Andrew Barrios (Ill. Bar No. 6317042)
(admitted *pro hac vice*)
abarrios@vedderprice.com
Bryan K. Clark (Ill. Bar No. 6296090)
(admitted *pro hac vice*)
bclark@vedderprice.com
222 N. LaSalle Street
Chicago, IL 60601
T: + (312) 609-7500
F: + (312) 609-5005

Attorneys for Defendant
UNITED STUDENT AID FUNDS, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHYRIAA HENDERSON,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>UNITED STUDENT AID FUNDS, INC.,<br><br>　　　　　Defendant. | Case No. 3:13-cv-1845<br><br>**DEFENDANT UNITED STUDENT AID FUNDS, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Hon. Janis L. Sammartino<br><br>Hearing date: February 8, 2017<br>Time: 1:30 p.m.<br>Location: Courtroom 4A |

**TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|
| I. | Introduction | | 1 |
| II. | Argument | | 1 |
| | A. | The Budget Act Amendment Squarely Applies Here, And Henderson's Claims Fail. | 1 |
| | B. | Nevertheless, Even If The Calls Were Actionable, USAF Is Not Vicariously Liable Under The TCPA. | 5 |
| | | 1. The Collectors Are Not Subagents Of USAF. | 6 |
| | | 2. Henderson's Implied Actual Authority Theory Is Defeated. | 8 |
| | | 3. Henderson's Theory Of Ratification Likewise Fails. | 9 |
| III. | Conclusion | | 10 |

Vedder Price (CA), LLP
Attorneys at Law
Los Angeles

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Anderson v. Badger,
  191 P.2d 768 (Cal. App. 1948) .......................................................................... 6, 7

Aranda v. Caribbean Cruise Line, Inc.,
  179 F. Supp. 3d 817 (N.D. Ill. 2016) ................................................................ 8, 10

Bowen v. Georgetown Univ. Hosp.,
  488 U.S. 204 (1988) ................................................................................................ 4

Chae v. SLM Corp.,
  593 F.3d 936 (9th Cir. Cal. 2010) .......................................................................... 3

Charbot v. Wash. Mut. Bank,
  369 B.R. 1 (Bankr. D. Mont. 2007) ........................................................................ 5

City of Arcadia v. EPA,
  265 F. Supp. 2d 1142 (N.D. Cal. 2003) .................................................................. 2

Figi Graphics, Inc. v. Dollar Gen. Corp.,
  33 F. Supp. 2d 1263 (S.D. Cal. 1998) ..................................................................... 6

Fresno Motors, LLC v. Mercedes Benz USA, LLC,
  771 F.3d 1119 (9th Cir. 2014) ................................................................................. 5

Gill v. Paige,
  226 F. Supp. 2d 366 (E.D.N.Y. 2002) ..................................................................... 2

Haas v. Tucson,
  84 Fed. Appx. 921 (9th Cir. 2003) .......................................................................... 5

Harris v. Itzhaki,
  183 F.3d 1043 (9th Cir. 1999) ................................................................................. 5

Landgraf v. USI Film Products,
  511 U.S. 244 (1994) ................................................................................................ 4

Makaron v. GE Sec. Mfg.,
  No. CV-14-1274-GW, 2015 WL 3526253 (C.D. Cal. May 18,
  2015) ................................................................................................................ 6, 7, 9

Oklahoma Firefighters Pension & Ret. Sys. v. Student Loan Corp.,
  951 F. Supp. 2d 479 (S.D.N.Y. 2013) ..................................................................... 2

Penthouse International, Ltd. v. Barnes,
  792 F.2d 943 (9th Cir. 1986) ................................................................................... 8

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| Thomas v. Taco Bell Corp.,<br>879 F. Supp. 2d 1079 (C.D. Cal. 2012) | 6, 7 |
| U.S. Bank Nat. Ass'n v. Education Loans, Inc.,<br>No. 11–1443, 2011 WL 5520437 (D. Minn. Nov. 14, 2011) | 3 |
| United States v. Emanuel,<br>No. 09–cv–185–SM, 2009 WL 4884482 (D.N.H. Dec. 10, 2009) | 3 |
| Weber v. Great Lakes Educational Loan Services, Inc.,<br>No. 13–cv–00291–wmc, 2013 WL 3943507 (W.D. Wis. July 30, 2013) | 2 |

**Statutes**

| | |
|---|---|
| 20 U.S.C. § 1078(c)(1)(A) | 2 |

**Other Authorities**

| | |
|---|---|
| 34 C.F.R. § 682.410(b) | 7 |
| In re Rules & Regulations Implementing Telephone Consumer Protection Act of 1991, (FCC 16-99) | 1, 4 |
| Restatement 3d of Agency, § 3.15 | 6 |
| Restatement 3d of Agency, § 4.03, Comment b | 9 |
| Restatement 3d of Agency, § 4.06(b) | 9 |

## I. INTRODUCTION

Very simply, USAF is entitled to summary judgment here, and Henderson's Opposition does nothing to persuade otherwise.[1] For instance, Henderson attempts to create a distinction between "insured" federal student loans and "guaranteed" federal student loans in order to argue that the Budget Act Amendment does not exempt the calls in this case from liability under the TCPA. However, in so doing, Henderson relies only on a single footnote from a recent FCC ruling, which is neither dispositive nor in accord with other authority (much less with Congress' intent in enacting the Budget Act Amendment).[2]

Further, Henderson cannot avoid the straightforward application of the law of agency here. While it is true, as Henderson notes, that questions of agency often are fact-intensive, this case presents the exception to the rule. As demonstrated in the Motion, USAF's loan servicing relationship is with NSI, NSI retained the Collectors and the Collectors made the telephone calls at issue. Against this background, and as a matter of settled law, no theory of agency supports Henderson's claims against USAF.

## II. ARGUMENT

### A. The Budget Act Amendment Squarely Applies Here, And Henderson's Claims Fail.

As noted above, in attempting to avoid the effect of the Budget Act Amendment, Henderson purports to draw a distinction between "federally insured" loans and "federally guaranteed" loans. According to Henderson, the Budget Act Amendment would apply to a guaranteed loan, but not to an insured loan, and ED supposedly is only an insurer of FFELP loans. Notably, this is Henderson's <u>only</u> argument against the Budget Act Amendment in this action. Henderson does not

---

[1] Terms shall be used herein as defined in the Motion, unless otherwise noted.
[2] <u>In re Rules & Regulations Implementing Telephone Consumer Protection Act of 1991</u> (FCC 16-99), issued on August 11, 2016 (the "FCC Rulemaking").

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

dispute that her loans were originated under the FFELP, nor does she dispute that the Budget Act Amendment applies retroactively. Accordingly, Henderson has waived these and any other arguments that might exist. See, e.g., City of Arcadia v. EPA, 265 F. Supp. 2d 1142, 1154 n. 16 (N.D. Cal. 2003) ("[T]he implication of this lack of response is that any opposition to the argument is waived.").

In any event, Henderson's proffered distinction is one without a difference – i.e., the terms "insured" and "guaranteed" are used interchangeably to describe ED's role after a defaulted student loan has been paid by a guaranty agency, like USAF here. Thus, the supposed distinction does not exist as a matter of law, nor would it make sense anyway.

Indeed, the FFELP is comprised of a complex statutory and regulatory scheme that, in addition to ED's guarantee, contains an insurance component. See Gill v. Paige, 226 F. Supp. 2d 366, 369 (E.D.N.Y. 2002) ("Under the [FFELP], the federal government provides a public guarantee and insurance system."). Moreover, a defining feature of the FFELP is the federal government's entry "into a guaranty agreement with . . . a guaranty agency, whereby the [Secretary of ED would] undertake to reimburse it . . . with respect to losses (resulting from the default of the student borrower)." 20 U.S.C. § 1078(c)(1)(A) ("The guaranty agency shall be deemed to have a contractual right against the United States, during the life of such loan, to receive reimbursement according to the provisions of this subsection."). Thus, no matter how ED's role is described, it is ultimately responsible for repayment of defaulted FFELP loans. That is the point here, which courts frequently have noted. See, e.g., Weber v. Great Lakes Educational Loan Services, Inc., No. 13–cv–00291–wmc, 2013 WL 3943507, at *3 (W.D. Wis. July 30, 2013) ("the federal government committed to guarantee student loans issued by private lenders"); Oklahoma Firefighters Pension & Ret. Sys. v. Student Loan Corp., 951 F. Supp. 2d 479, 484 (S.D.N.Y. 2013) (stating that, under the

program, "[s]tudents were required to meet strict [ED] criteria to qualify to receive [FFELP] loans" and, in turn, "the federal government guaranteed . . . [FFELP] loans"); U.S. Bank Nat. Ass'n v. Education Loans, Inc., No. 11–1443 (RHK/JJG), 2011 WL 5520437, at *1 (D. Minn. Nov. 14, 2011) ("loans . . . are guaranteed and subsidized by the federal government under the [FFELP]"); United States v. Emanuel, No. 09–cv–185–SM, 2009 WL 4884482, at *1 (D.N.H. Dec. 10, 2009) (explaining that certain "notes secured repayment of student loans authorized by the [FFELP]," and that "the United States guaranteed repayment of the notes."); Chae v. SLM Corp., 593 F.3d 936, 944 (9th Cir. Cal. 2010) ("By covering student loans with layers of insurance and guarantees, Congress encourages private lenders to help fund higher education.").

Thus, not only is Henderson's argument (based entirely on the single footnote) unsupported by law, it runs counter to Congress' very purpose in enacting the exception — to reduce credit risk and financial losses to ED and enhance the ability to collect what is, at the end of the day, taxpayers' money. Again, in the lead-up to the Bipartisan Budget Act's passage, ED issued a report calling on Congress to "change the law to ensure that servicers [of student loans could] contact borrowers using modern technology." See "Strengthening the Student Loan System to Better Protect All Borrowers," U.S. Department of Education, October 1, 2015, at p. 16 (last viewed Dec. 13, 2016).[3] In the report, ED argued that:

> If servicers are able to contact a borrower, they have a much better chance at helping that borrower resolve a delinquency or default. Many student loan borrowers, especially those that may just be graduating, move frequently in addition to no longer having landline phone numbers. As such, it can be difficult for servicers to find a borrower except by using a cell phone number. Current Federal law prohibits servicers from contacting borrowers on a cell phone number using an auto-dialer unless the borrower has provided explicit consent

---

[3] Available at: http://www2.ed.gov/documents/press-releases/strengthening-student-loan-system.pdf.

to be contacted at that number. With phone numbers changing or being reassigned on a regular basis, it is virtually impossible for servicers to use auto-dialing technology. <u>The President's 2016 Budget proposed amending this law to allow the use of automated dialers to contact borrowers to inform them of their federal repayment obligations and benefits</u> like Pay As You Earn, or Rehabilitation, in the case of a defaulted borrower.

<u>Id.</u> (emphasis added.)

In addition, Plaintiff makes too much of the footnote in the FCC Rulemaking. The footnote states that "[c]ommenters who advocate for including 'insured' debts within the language of the Budget Act amendments do not explain how the statutory terms 'owed to or guaranteed by' encompasses the term 'insured,' so we do not include 'insured' debts within the scope of the terms 'owed to or guaranteed by' in our interpretation of the statutory language." FCC 16-99, p. 9 n. 54. This is not a statement that the FCC examined and decided the issue. To the contrary, this is a statement that the issue was not examined at all.[4]

Furthermore, even if the FCC's footnote could be considered a meaningful examination of this issue, it was issued on August 11, 2016 — after the actions at issue in this case — and unlike the Budget Act Amendment itself, the footnote does not have retroactive effect. An agency rule does not have retroactive effect where it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." <u>Landgraf v. USI Film Products</u>, 511 U.S. 244, 280 (1994). Here, the FCC Rulemaking imposes additional burdens on loan servicers. The FCC Rulemaking, then, could only be applied retroactively if Congress expressly conferred that power on the FCC and the FCC clearly intended the rules to have retroactive effect. See <u>Bowen v. Georgetown Univ. Hosp.</u>, 488 U.S. 204, 208-09

---

[4] Henderson's suggestion that USAF engaged in "improper" conduct by not citing "controlling FCC authority" (Opposition, p. 1) is absurd. As discussed, this footnote is hardly controlling.

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

(1988). No such power was conferred by Congress, however. Instead, the Bipartisan Budget Act simply states that the FCC shall prescribe regulations to implement the amendments to the TCPA. It does not confer any authority to promulgate retroactive rules. Similarly, even if such power was conferred by Congress through the Bipartisan Budget Act, the FCC Rulemaking still would not have retroactive effect because the FCC did not clearly state its intent for the FCC Rulemaking to be applied retroactively. The FCC Rulemaking therefore is not applicable here.

### B. Nevertheless, Even If The Calls Were Actionable, USAF Is Not Vicariously Liable Under The TCPA.

As noted above, in her Opposition, Henderson states that agency issues involve a fact-based inquiry, which cannot be resolved at summary judgment. This is an overstatement, of course. Courts have long held that summary judgment on the existence of an agency relationship is still appropriate when the plaintiff fails to meet her burden to show that a genuine issue of material fact exists. See Haas v. Tucson, 84 Fed. Appx. 921, 922 (9th Cir. 2003) (granting summary judgment where plaintiff failed to present proof of an agency relationship); Charbot v. Wash. Mut. Bank, 369 B.R. 1, 20 (Bankr. D. Mont. 2007) ("The burden of proof to establish an agency was on [plaintiff], and she failed her burden. . . . A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). Such is the circumstance here.

Indeed, as an initial matter, Henderson has not demonstrated the existence of a dispute of material fact, and cites two decisions that are easily distinguishable. (Opposition, p. 8). In Harris v. Itzhaki, 183 F.3d 1043, 1054 (9th Cir. 1999), the determination at issue related to the very specific definition of agency set forth in regulations promulgated by the Department of Housing and Urban Development, meaning that a specific, factual analysis was critically important. Likewise, Fresno

Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119 (9th Cir. 2014), is not even an agency case — it discusses general summary judgment standards.

Moreover, Henderson's further arguments are equally unavailing. As discussed below, summary judgment is appropriate for USAF here because (1) the Collectors are not "subagents" of USAF; (2) no theory of implied actual authority lies against USAF; and (3) USAF did not ratify the Collectors' actions.

### 1. The Collectors Are Not Subagents Of USAF.

As a threshold matter, the Collectors cannot be USAF's subagents unless NSI is USAF's agent for purposes of the disputed collection calls. See Restatement 3d of Agency, § 3.15.[5] Importantly, NSI is not a defendant here, and Henderson will secure no binding rulings against it in this action. Moreover, as a matter of law, the key element of a principal-agent relationship is control. "If the one who is to perform the service is . . . not subject to control but is engaged to produce a certain result by means and in a manner of his own choosing he is an independent contractor." Anderson v. Badger, 191 P.2d 768, 771 (Cal. App. 1948); see also Thomas v. Taco Bell Corp., 879 F. Supp. 2d 1079, 1085 (C.D. Cal. 2012); Figi Graphics, Inc. v. Dollar Gen. Corp., 33 F. Supp. 2d 1263, 1266 (S.D. Cal. 1998). Very clearly, there is no evidence in this record demonstrating that USAF controls NSI with respect to the Collectors' calls.

Further, in attempting to distinguish this case from Thomas and Makaron v. GE Sec. Mfg., No. CV-14-1274-GW (AGRx), 2015 WL 3526253 (C.D. Cal. May 18, 2015), Henderson acknowledges that those courts found a lack of agency because "the defendant could not control the manner and means of the telemarketing campaign" or "control the specific telemarketing practices at issue."

---

[5] Henderson's contention that USAF waived the argument that no agency relationship exists between USAF and NSI (Opposition, n. 8) is without merit. USAF clearly argues in its Motion that USAF has no direct or vicarious liability here, and now properly addresses the points raised by Henderson in the Opposition.

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

(Opposition, p. 18). However, Henderson then claims that this case is different because "USAF audits the Collectors' debt-collection practices . . . and has suspended placements where Collectors have engaged in improper collection efforts." (Opposition, p. 18). ███████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████.[6] Accordingly, just like the plaintiffs in Thomas and Makaron, Henderson has not cited a single example of USAF exercising control over the "manner and means of the telemarketing campaign" or the "specific telemarketing practices at issue." (Opposition, p. 18). ███████████████████████████████████
███████████████████████████████████████████████████████████
█████████████████████ Default loan servicing is an extremely complicated task that is governed by numerous regulations and statutes, some of which require oversight by USAF. See, e.g., 34 C.F.R. § 682.410(b). But the TCPA is not one of those statutes. That is why, in terms of calling practices, NSI is an independent contractor who "is not subject to control but is engaged to produce a certain result by means and in a manner of [its] own choosing," as are the Collectors, in turn. Anderson, 191 P.2d at 771.

In addition, Henderson contends that the numerous and various requirements in the contract between USAF and NSI somehow indicate that NSI is USAF's agent. (See, e.g., Opposition, pp. 12, 17). Again, none of those requirements has anything to do with the manner and means of the Collectors' calling practices.

---

[6] ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████ However, this relies on the false assumption that the "improper collection efforts" had anything to do with the TCPA. (See USAF's Response to Plaintiff's Facts ("USAF's Response"), ¶ 43).

Moreover, as set forth in the Motion, there are many, demonstrated ways in which USAF had no control over NSI. (Motion, pp. 9-10).[7]

But, even if there was any legitimate doubt as to whether NSI was USAF's agent, this case is clearly distinguishable from Aranda v. Caribbean Cruise Line, Inc., 179 F. Supp. 3d 817 (N.D. Ill. 2016), which Henderson says is "strikingly similar." In Aranda, the relevant contracts specifically provided that the alleged subagent "would solicit[] survey takers by transmitting or causing to be transmitted prerecorded survey messages using an autodialer." Id. at 821 (emphasis added). The subagent also was required to provide the defendant with "an exact telephone script along with an exact audio file of each survey." Id. at 832 (emphasis added). There was even evidence that one of the defendant's attorneys proposed edits to the script before use. Id. Thus, the defendant not only controlled, but specifically dictated the means by which calls would be made and what the content would be. That is not the situation here. USAF retained NSI as an independent contractor to service defaulted FFELP loans, and there is no evidence suggesting that USAF controlled or dictated the manner of making, or the content of, calls through NSI (or the Collectors, for that matter).

### 2. Henderson's Implied Actual Authority Theory Is Defeated.

The fundamental factor in an implied actual authority analysis is the alleged agent's state of mind. See Penthouse International, Ltd. v. Barnes, 792 F.2d 943, 947 (9th Cir. 1986) (holding that implied actual authority exists where the alleged agent believed he had authority, and that belief was reasonable). Thus, for the Collectors to be agents of USAF here, the Collectors would have to reasonably

---

[7] Henderson's suggestion that actions in this litigation demonstrate agency are similarly without merit — for instance, that USAF's expert was retained by NSI. (Opposition, n. 10). As with every other aspect of this case (including NSI's status as an independent contractor, rather than an agent of USAF), the agreement between NSI and USAF governs. Under the agreement, NSI is required to indemnify USAF in this action.

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

believe that they had authority to act as agents for USAF. Put simply, Henderson has not presented <u>any</u> evidence so much as even suggesting such a belief (and, indeed, she has not taken the depositions of any of the Collectors). Further, based on the express terms of the governing contracts, such a belief would be more than unreasonable; it would be irrational. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Thus, no reasonable Collector could have believed that it was USAF's agent here.

### 3. Henderson's Theory Of Ratification Likewise Fails.

Initially, Henderson's ratification theory of agency fails because there is no principal-agent relationship in place here. "Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." <u>Makaron</u>, 2015 WL 3526253 at *10; <u>see also</u> Restatement 3d of Agency, § 4.03, Comment b. As explained above, there is no principal-agent relationship between USAF and the Collectors (or NSI), so Henderson does not meet this prerequisite.

Even if such a relationship existed, USAF could not be found to have ratified the Collectors' calling activities here because USAF lacked the requisite knowledge. "A person who has ratified is not bound by the ratification if it was made without knowledge of material facts about the act of the agent or other actor." Restatement 3d of Agency, § 4.06(b). Henderson contends that the requisite knowledge should be inferred because USAF unreasonably failed to investigate the Collectors' conduct. However, there is no evidence establishing that USAF had reason to believe that the Collectors were making calls in violation of the TCPA (and USAF does not concede any such violations at this time, either). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Thus, Henderson improperly seeks to foist this supposed responsibility to investigate on USAF.

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

In addition, Henderson identifies various "facts" that she claims are evidence that USAF knew, or should have known, about the nature of the Collectors' calling practices. But Henderson's assertions of "fact" are misleading, inaccurate or have nothing to do with calling practices. For example, Henderson cites her statement of material facts to contend that NSI takes steps to ensure compliance with state and federal laws "like the TCPA." (Opposition, p. 22). Obviously, what NSI would have done proves nothing as to USAF. However, this also is misleading because <u>nothing</u> in the record indicates that the TCPA was a focus of NSI's actions. Rather, Henderson adds the phrase "like the TCPA," without an evidentiary basis. (<u>See</u> Pl. Facts, ¶¶ 69, 71.) Similarly, Henderson's assertion that USAF would "simply look the other way" if faced with a borrower complaint about telephone calls is particularly inflammatory. (Opposition, p. 23). USAF testified — very clearly — that it would refer borrower complaints to NSI for handling, per the servicing agreement in place between them. (<u>See</u> USAF Response, ¶ 69.)

Finally, Henderson's citation to <u>Aranda</u> to support the argument that USAF "knowingly" benefited from the Collectors' supposedly improper conduct is incorrect. In <u>Aranda</u>, the court found that "[t]here is even evidence that all three of these defendants became aware of the possibility that some or all of the calls being made were unlawful under the TCPA and that each of them continued to accept business flowing from the campaign." 179 F. Supp. 3d at 833. No such evidence exists here, and Henderson's ratification theory fails.

### III. CONCLUSION

For the foregoing reasons, and those set forth in the Motion, USAF respectfully requests that the Court grant the Motion.

Dated: December 23, 2016　　　　　　　　　VEDDER PRICE (CA), LLP

　　　　　　　　　　　　　　　　　　　By: _/s Lisa M. Simonetti_
　　　　　　　　　　　　　　　　　　　　　Lisa M. Simonetti
　　　　　　　　　　　　　　　　　　　Attorneys for defendant USAF

## CERTIFICATION

I hereby certify that on December 23, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's EM/ECF System.

*/s  Lisa M. Simonetti*
Lisa M. Simonetti

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES